# EXHIBIT A

1.10.00 First Amendment Activity Support and Management PPD Policy

| | FIRST AMENDMENT ACTIVITY SUPPORT AND MANAGEMENT | Operations Order **1.10.00** |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT    New 12/15/25 | PAGE 1 |

## 1. PURPOSE

A.  This policy establishes guidelines for officers during First Amendment activities. This policy is also applicable to incidents that escalate into civil disturbances.

## 2. POLICY

A.  The Department supports and respects the rights of people to peaceably assemble. The Department recognizes each assembly is unique, and a large and visible presence of law enforcement may impact the demeanor and behavior of a crowd. As such, it is the policy of the Department to respond according to the nature, size, and behaviors of the crowd in an efficient and equitable manner.

B.  During an assembly, the Department shall allow the assembly to continue for participants lawfully exercising their First Amendment rights, while being mindful of enforcement action, de-escalation, officer safety, and community safety.

C.  Decisions about crowd dispersal and strategies about crowd control or planned uses of force, are to be made at the level of the Incident Commander (IC) or above.

## 3. GENERAL DIRECTION

A.  The Department is committed to ensuring the rights guaranteed by the First Amendment of the United States Constitution and Article II, 5 and 6 of the Arizona State Constitution, are protected for all individuals, while also preserving the peace, preventing crime, protecting life and preventing the destruction of property.

B.  All employees shall respect these fundamental rights:

(1)  **The Right to Free Speech and Expression**, including sharing social or political views through various forms of communication.

(2)  **The Right to Free Press,** which protects the media's ability to operate independently and without censorship, allowing them to observe, record, document, and report events in public forums.

(3)  **The Right to Freely Organize and Participate in Lawful Assemblies and Protest** in parks, on sidewalks, and other public forums near the object of the assembly or protest.

(4)  **The Right to Observe and Record the Actions of Law Enforcement** officers in the discharge of their public duties in all public spaces (including sidewalks, parks, and other locations for lawful public protest), as well as all other areas in which persons have legal right to be present (including a person's home or business and common areas of public and private facilities and buildings), without being subject to retaliation.

**NOTE:** If an individual is recording from a position that impedes access for emergency services, endangers public safety, or interferes with an officer's duties or safety, officers may direct these individuals to a reasonable safety zone.

## 4. DEFINITIONS

| A. Civil Disturbance | • For the purposes of this policy, an individual, group, or crowd that engages in disruptive behavior in public, often, but not always, to make a political statement or respond to a current event. These disruptions involve criminal acts that require law enforcement intervention to restore order. |
|---|---|
| B. Crowd Control | • Techniques used to address unlawful public assemblies, including a show of force, crowd containment, dispersal equipment and tactics, and arrest procedures. |

| | FIRST AMENDMENT ACTIVITY SUPPORT AND MANAGEMENT | Operations Order **1.10.00** |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT | New 12/15/25 | PAGE 2 |

4. **DEFINITIONS** (continued)

| C. | Crowd Management | • Techniques used to manage lawful assemblies before, during, and after the event to maintain lawful status through event planning, pre-event contacts with event organizers, information gathering, personnel training, and other means. |
|---|---|---|
| D. | First Amendment Assembly | • An assembly of persons engaging in First Amendment-protected activity. These may be scheduled events or spontaneous gatherings, including but not limited to, demonstrations, marches, protests, and other assemblies. |
| E. | Incident Commander (IC) | • A supervisor responsible for conducting the overall operation of an event, including the development of strategies and the ordering and allocation of resources. |
| F. | Irritants | • Oleoresin capsicum (OC) spray, 2-chlorobenzylidene malononitrile (CS), pepper spray/PepperBall®, MK-9 pepper fogger, smoke, OC Vapor, REPULS®, and other approved substances that cause temporary discomfort. |
| G. | Media | • Any individual who gathers, produces, and disseminates news to the public in any form. This includes, but is not limited to, an employee of a news organization, as well as self-employed individuals, independent contractors, or freelancers. These individuals must comply with orders issued by law enforcement. |
| H. | Planned First Amendment Assembly | • A First Amendment demonstration that the Department becomes aware of in advance, allowing sufficient time to dedicate appropriate resources and develop a plan. |
| I. | Public Safety Response Team (PSRT) | • A unit of specially trained officers assembled to provide a rapid, organized, and disciplined response to:<br>＊ Civil disturbances and crowd control<br>＊ Large crowds with a potential for civil disturbance<br>＊ Other tactical situations involving large crowds |
| J. | Riot | • A person commits a riot if, with two or more other persons acting together, such person recklessly uses force or violence or threatens to use force or violence, if such threat is accompanied by immediate power of execution, which disturbs the public peace. (See ARS 13-2903) |
| K. | Spontaneous Event/Gathering | • An event or incident that is not anticipated and for which the Department does not have adequate time to develop a plan or otherwise prepare for the event. |
| L. | Unlawful Assembly | • A breach of the peace by a gathering of persons where there is violence or a threat of collective violence, destruction of property, or other unlawful acts. (See ARS 13-2902 Unlawful Assembly) |

5. **PUBLIC SAFETY RESPONSE TEAM (PSRT) RESPONSIBILITIES**

A. The Department shall maintain a specially trained and equipped Mobile Field Force known as the Public Safety Response Team (PSRT) to maintain public order and effectively manage large crowds and/or riotous behavior to:

- Preserve life
- Protect property
- Allow safe ingress and egress throughout the city
- Restore and maintain civil order

B. Sworn personnel in the following units will be required to maintain PSRT certification:

- Downtown Operations Unit (DOU)
- Tactical Training Detail (TTD)
- Transit Enforcement Unit (TEU)
- Precinct resource teams
- Select detectives from the Violent Crimes Bureau (VCB)

C. Each precinct will maintain an extra contingency of PSRT trained personnel in addition to their resource teams.

D. Overall PSRT operations will be at the direction of an Assistant Chief.

| | **FIRST AMENDMENT ACTIVITY SUPPORT AND MANAGEMENT** | **Operations Order** **1.10.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT** | New 12/15/25 | PAGE 3 |

6. **PROCEDURES**

    A. <u>Planned Events</u>

        (1) Planned events are those the Department is aware of in advance, either through a permit request or other means which allow for the planning of resources and response procedures.

        (2) When large-scale, planned, or permitted events are anticipated:

            (a) The Community Engagement Unit (CEU) and Homeland Defense Bureau (HDB) will conduct an assessment of the event to identify the specific groups or individuals who will participate.  This is to ensure the event is conducted safely, lawfully, and without significant disruption to the public.

            (b) CEU detectives will make every effort to contact the event leader or organizer prior to the event to gather information needed to assign personnel and allocate resources. This information will be provided to the CEU Commander or their designee.

                **NOTE**:  Information gathered about participants, or an event, shall be obtained in accordance with Department policy.

            (c) CEU personnel will act as a liaison establishing and maintaining contact and communication with the event leader and/or organizer before, during, and after the event.

        (3) The Department is not responsible for approving or denying permit applications.

        (4) For information on permits – whether to close a City street or reserve a City park, visit the Street Transportation or Parks and Recreation department pages.

    B. <u>Unplanned Events</u>

        (1) An unplanned event is an occurrence the Department does not know about beforehand. Such events may consist of spontaneous gatherings or demonstrations.  A plan shall be prepared in case the event rises to a level that requires law enforcement support.

        (2) The initial response to unplanned public events, which remain in a lawful state, is carried out by an assembly of patrol officers who have completed basic crowd control training.

            (a) The first unit to arrive on scene **will**:

- Notify a supervisor.
- Evaluate the scene and determine if the gathering is peaceful, violent, or has the potential to turn violent.
- Attempt to identify a leader or representative of the event and communicate any safety issues or concerns.

            (b) The on-duty supervisor will notify their precinct commander and CEU to determine if additional resources are needed.

        (3) If the assembly has escalated to the level of a civil disturbance or unlawful assembly, reasonable efforts will be made to restore order.  If order cannot be restored, PSRT resources will respond to the incident.

| | **FIRST AMENDMENT ACTIVITY SUPPORT AND MANAGEMENT** | **Operations Order** **1.10.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT** | New 12/15/25 | PAGE 4 |

6.  B.  (4)  If escalation continues or is imminent, the Downtown Operations Unit (DOU)/PSRT Commander, or designee, shall be requested to respond to the scene and assume command of the event as the IC.  At this stage, Law and Fire Departments should be notified for response.

C.  Response to Areas of Civil Disturbance

(1)  Civil disturbances are public disruptions often, but not always, sparked by reactions to current events.  The Department will tailor its response according to behavior and dynamics observed, intervening or providing support as needed to restore order.

(2)  It is the Department's policy to make reasonable attempts to gain compliance, when it is safe and feasible to do so.

(3)  Before declaring an unlawful assembly, the IC or designee shall determine whether lesser alternatives may be effective to bring the situation under control.  These alternatives **may** include:

(a)  An initial attempt to gain voluntary compliance by imposing reasonable restrictions on time, place, and manner of assembly.  These restrictions shall be narrow and designed to provide access to traditional public forums and ensure safety for all.

(b)  Provide safe exit instructions for those who wish to avoid enforcement of an unlawful assembly.  These warnings shall be communicated by reasonable and available methods (*e.g.*, speech, amplified device, bullhorn, etc.)

(c)  Inform the crowd of all applicable state and local offenses being committed (*e.g.*, trespass, disorderly conduct, blocking traffic, etc.) and instruct them to stop.

(d)  Remove individuals engaged in unlawful behavior and allow peaceful participants to continue exercising their First Amendment rights, when safe and practicable.

(e)  Individuals in the affected area, including members of the media, are required to comply with law enforcement orders.

(4)  Declare an unlawful assembly if the crowd does not comply.

D.  Declaration of Unlawful Assembly

(1)  Unlawful Assemblies/Dispersal Orders

(a)  Declaration of unlawful assembly is rare and should only be made when the assembly threatens collective violence, destruction of property, or disruption of public order.

(c)  The decision to declare an unlawful assembly can only be made by the IC or above.

(d)  Dispersal orders shall be issued by a lieutenant or their designee, and only after the declaration of an unlawful assembly.

| | **FIRST AMENDMENT ACTIVITY SUPPORT AND MANAGEMENT** | **Operations Order** **1.10.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT** | New 12/15/25 | PAGE 5 |

6.   D.   (1)   (d)   ARS 13-3804 establishes a duty for officers to disperse an unlawful assembly. To accomplish this requirement, the dispersal order **will** include:

- Repeated announcements given in a manner reasonably believed to be heard and understood by the participants.
- Department approved warnings administered in English and Spanish.
- Documentation on body-worn camera or other audio/video recording device.
- Warnings about the intent to deploy irritants and less-lethal weapons.

(e)   Safe exit routes and reasonable time to leave the area will be provided.

(f)   Dispersal orders are unique to each site of assembly and must be re-issued if the site of assembly changes.

(2)   Approved Crowd Control and Dispersal Methods

(a)   At the direction of the IC, officers shall employ approved dispersal methods to move a non-compliant crowd toward desired exit routes. These methods **may** include, but are not limited to:

- Police formations
- Deployment of OC irritants
- Use of less-lethal launchers
- Arrests

(b)   Use of CS gas requires authorization from the Police Chief, or their designee.

**NOTE**: In exigent circumstances **AND** when its use is in the best interest of public safety, the IC may approve the use of CS gas without prior authorization.

E.   <u>Use of Force</u>

(1)   The use of force or threat of force should be avoided whenever possible to prevent a chilling effect on individuals' willingness to participate in First Amendment activities.

(2)   Force may be necessary to extract officers and individuals in danger, and individuals committing crimes.

(3)   Force **will only** be used against a crowd after an unlawful assembly has been declared and a dispersal order has been given.

(4)   Less-lethal and lethal weapons **will not** be used against an individual operating a moving vehicle, including a motorcycle or other personal transportation device (*e.g.*, standard or electric bicycle, scooter, etc.), unless the officer reasonably believes there is an immediate threat of death or serious physical injury to the public, another officer, or themselves.

(5)   This policy does not prevent officers from using force against individuals engaged in criminal behavior as set forth in the Department's Use of Force Policy (see Operations Order 1.5.00, Use of Force).

(6)   Use of Force incidents that occur during PSRT operations will be reviewed by the Force Evaluation and Review Unit (FERU) (see Operations Order 1.5.02, Use of Force Reporting and Administrative Review).

| | **FIRST AMENDMENT ACTIVITY SUPPORT AND MANAGEMENT** | **Operations Order** |
|---|---|---|
| | | **1.10.00** |
| | **PHOENIX POLICE DEPARTMENT** | New 12/15/25 | PAGE 6 |

6. F. <u>Arrest Procedures</u>

   (1) The Department is committed to employing alternative tactics and strategies as the primary means of restoring order to the community.

   (2) When applicable, subjects will be cited in lieu of detention (CLD) for misdemeanor offense/s that qualify for a CLD (see Operations Order 7.6.00, Arizona Traffic Ticket and Complaint (ATTC), for ineligible offenses).

   (3) A City legal representative may be consulted to ensure processes are managed effectively and in compliance with the law.

   G. <u>After-Action Reporting</u>

   (1) A report will be completed at the conclusion of any event involving the use of force or other police actions.  Reports **will** be completed as follows:

   (a) An executive summary will be completed by the PSRT Commander, or their designee, if police action was taken.

   - This summary must be completed within **7 calendar days** after the conclusion of the event.
   - If additional time is required, a request must be submitted through Department approved correspondence and approved by the appropriate Assistant Chief.

   (b) An After-Action Report (AAR) will be completed by the Organizational Integrity Bureau (OIB), after a significant event, where PSRT was deployed.

   (2) Reports documenting use of force will be reviewed by the Police Chief, or their designee, and City Executives.

| **Last Organizational Review:** |
|---|
| New 12/2025 |

# EXHIBIT B

Declaration of  Lt. Brian Thatcher

## DECLARATION OF LT. BRIAN THATCHER

I, Lt. Brian Thatcher, declare under penalty of perjury under the laws of the State of Arizona that the following is true and correct:

1. I am over the age of 18 and competent to make this declaration. I make this declaration based upon my personal knowledge and review of relevant records.

2. I am a Lieutenant with the Phoenix Police Department and currently serve as the Vice President as well as the Discipline and Grievance Chairman for the Phoenix Police Sergeants and Lieutenants Association (PPSLA). I am also a member of the Arizona Conference of Police and Sheriffs (AZCOPS).

3. I am personally familiar with the internal investigation involving Sgt. Dusten Mullen arising from the January 30, 2026 incident in Chandler, Arizona. I was present for Sgt. Mullen's PSB interview on March 3, 2026, and have reviewed the materials that PSB provided to him. As part of this materials review, I learned that PSB had interviewed Sgt. Mullen's supervisor on February 11, 2026.

4. After Sgt. Mullen's March 3, 2026 interview, there were no further updates on the PSB investigation until after the media reported on this incident on April 8, 2026.

5. Prior to media coverage, PSB investigators communicated to me that the investigation was originally intended to be classified in a manner that would result in discipline less than termination. It was clear from my interactions with PSB that Sgt. Mullen was not facing termination.

6. On April 17, 2026, PSB set a follow-up interview with Sgt. Mullen for April 21, 2026. On the morning of Monday, April 20, 2026, PSB canceled that interview.

7. On the afternoon of April 20, 2026, on behalf of Sgt. Mullen, I personally provided additional exonerating and mitigating materials to PSB. These materials included Sgt. Mullen's cellphone video that captured all of his verbal statements while interacting with the protestors and other evidence corroborating that Sgt. Mullen had a 7-minute phone call with an appropriate supervisor within 90 minutes of Sgt. Mullen being the victim of an assault that resulted in the Chandler Police arrest of a protestor.

8. I specifically requested that PSB provide all body-worn camera footage related to the incident. PSB declined to provide the footage.

9. I have reviewed dozens of PSB investigations over the course of my career and am intimately familiar with the timelines and procedures PSB typically follows. I have also reviewed the types of conduct that typically result in Class III discipline, such as commission of felonies, knowingly submitting false reports, on-duty sexual conduct, and out-of-policy use of deadly force. Classifying off-duty protest or counter-protest activity as a Class III violation — and thereby bypassing the standard Investigative Review Process — is highly unusual and excessive based on my training and experience as Discipline and Grievance Chairman.

10. PSB provided me with a limited portion of the body-worn camera footage. I have personally reviewed that footage. Nowhere in the footage does Sgt. Mullen engage in any incitement of the protestors, use inappropriate language, or utter fighting words.

1

11. I also reviewed the evidence showing that Sgt. Mullen made a timely phone call to his supervisor on January 30, 2026, approximately 90 minutes after he was the victim of an assault. The supervisor was interviewed as part of the PSB investigation and confirmed that he timely notified his commander on the day of the protest, including details about Sgt. Mullen's attire, attendance at the protest, and that he had been assaulted.

12. To the best of my knowledge, PSB has not adequately analyzed the additional materials I provided on April 20, 2026, and has not conducted the re-interview of Sgt. Mullen that was originally contemplated.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of April, 2026, in Maricopa County, Arizona.

Lt. Brian Thatcher

**STATE OF ARIZONA**

**County of Maricopa**

Subscribed and sworn to before me on April 27, 2026, by Lt. Brian Thatcher.

Notary Public

My Commission Expires: _12-14-2026_

JOSEPH AWANIS
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 642717
Expires December 14, 2026

2

# EXHIBIT C

2.2.00 Misconduct Investigations PPD Policy

| | **MISCONDUCT INVESTIGATIONS** | **Operations Order** **2.2.00** | |
|---|---|---|---|
| | **PHOENIX POLICE DEPARTMENT** | Rev. 04/18/25 | PAGE 1 |

1. **POLICY STATEMENT**

   A. To ensure the integrity of the Department, all alleged or suspected personnel misconduct observed or suspected by supervisors, Department employees, or citizens will be thoroughly investigated.

   (1) Minor violations of policy not specifically listed in Operations Order, 2.1.01, Policy Violations Index, may be classified as a performance issue incident rather than a disciplinary issue.

   (2) Supervisors who classify an allegation of misconduct or a minor policy violation as a performance issue or supervisory counseling, documented on the Supervisory Counseling Form 80-582D, are not required to complete a misconduct investigation.

   - These incidents will be entered into Blue Team as an administrative inquiry by the investigating supervisor and forwarded through his/her chain of command.

   B. Bureau/precinct commanders/administrators will be responsible for ensuring all complaints involving minor policy violations being investigated by subordinates are completed within 30 days from the time the complaint was made.

   - A review of the complaint status should be conducted on a seven (7) day interval.

   C. All citizen complaints, not rising to the level of a misconduct investigation, will be entered into Blue Team as an administrative inquiry and forwarded through his/her chain of command.

2. **DEFINITIONS**

| A. | Administrative Inquiry | • Documents an allegation of misconduct by an employee of the Department which is unfounded or deemed a performance issue/minor policy violation that does not result in discipline of a written reprimand or higher |
|---|---|---|
| B. | Citizen Complaint | • An allegation of an employee misconduct or wrongdoing<br>• This includes the following:<br>   * Conduct that amounts to a violation of a City ordinance, a state, county, or federal law, or a Department regulation and such violation, if sustained, could result in disciplinary action against the employee<br>   * The commission of any prohibited act or the omission of any act that is required |
| C. | Internal Investigation Material List Form 80-58.1DB | • A list documenting the materials the investigating supervisor or Professional Standards Bureau (PSB) investigator provides to an involved employee prior to interviewing the employee<br>   * The involved employee will initial each item received/reviewed in the space provided and sign the bottom of the form. |
| D. | Minor Policy Violation:<br><br>Performance Issue Incident | • An act that does not involve malicious intent, repeat offenses, or a reckless/willful disregard for policy<br>• A minor policy violation: performance issue incident is corrected using non-disciplinary measures such as coaching, supervisory initiated training, and Performance Management Guide (PMG) goal setting.<br>• Minor policy violations: performance issues incidents are incidents that are not listed in Ops 2.1.01 Policy Violations Index, Discipline Policy and Review Boards.<br>• An internal investigation is not required for performance issue incidents. |
| E. | Misconduct | • An employee commits misconduct by non-compliance with or by knowingly or intentionally violating any rule or procedure in a Memorandum of Understanding/Agreement (MOU/MOA), Employees Association Agreements, Operations Manual, other departmental or City orders, Administrative Regulations (AR), or City Personnel Rules which may result in disciplinary action. |
| F. | Notice of Findings (NOF) | • A written notice listing the allegations investigated and the "Findings" listed in the Body-Worn Camera Investigation Short form or the "Conclusion" section of the Internal Investigation Report form. |

2. **DEFINITIONS:** (Continued)

| | MISCONDUCT INVESTIGATIONS | | Operations Order 2.2.00 |
|---|---|---|---|
| | PHOENIX POLICE DEPARTMENT | Rev. 04/18/25 | PAGE 2 |

| G. | Notice of Investigation (NOI) Form 80-58DB | • A written notice informing the employee of the specific nature of the investigation and the employee's status in the investigation<br>• An NOI is not required if the policy violation is deemed to be a performance issue incident or supervisory counseling. |
|---|---|---|
| H. | Recording Performance Issues for Future Review | • Supervisors responsible for providing or recommending coaching, supervisor initiated training, or completion of the employee's PMG, are required to record the nature of the incident, date of the incident, and required remediation (mentoring, training, etc.) in the supervisor notes.<br>• The employee will be notified a notation has been made in the supervisor notes and the notes will be provided to the employee to review and sign on a monthly basis. |
| I. | Supervisor Initiated (SI) Investigation | • An investigation in which the supervisor has observed or suspects a violation of law, City ordinance, or Department regulations<br>• This includes alleged or suspected misconduct which another employee has brought to the attention of a supervisor |
| J. | Work History | • May be included in memorandum form as an attachment to the Internal Investigation Report Form 80-58DA<br>• Includes commendations, performance evaluations, and discipline history (time tables as outlined in Operations Order 2.1.00, Discipline Policy and Review Boards) |

3. **RESPONSIBILITIES IN MISCONDUCT INVESTIGATIONS**

    A. <u>Employee Responsibilities</u>

        (1) When an employee is accused of any misconduct or witnesses another employee's misconduct, the employee will call their immediate supervisor to the scene.

        (2) Employees under investigation for misconduct or who are witnesses to the misconduct must cooperate with the administrative investigation.

        (3) When an employee is the subject of a criminal investigation, they are entitled to Fifth Amendment or "Garrity" rights when applicable.

        (4) <u>Discussion of the Investigation</u>

            (a) If an employee is told not to speak to anyone regarding an investigation, the employee will abide by this order with the following exceptions:

                • Conversations with an attorney functioning within the attorney-client relationship
                • Conversations with a unit representative who may discuss the matter only with the grievance chair or the unit president
                • Spouse
                • Employee's clergy

            (b) Employees will not jeopardize or interfere with criminal investigations, administrative investigations, or prosecutions.

                • This includes employees who are witnesses or suspects in any criminal or traffic-related investigation.

            (c) When the employee is presented with the Notice of Findings (NOF) or when the employee has received authorization from the investigating supervisor or Professional Standards Bureau (PSB) investigator, the admonishment against discussing the case is no longer applicable.

| | MISCONDUCT INVESTIGATIONS | Operations Order 2.2.00 |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT     Rev. 04/18/25 | PAGE 3 |

3.   B.   Responsibilities of the Investigating Supervisor   -   When an employee is suspected of misconduct, the employee's immediate supervisor will conduct the investigation.

**EXCEPTION**:   Supervisors working in an off-duty capacity will be responsible for investigating alleged incidents of misconduct concerning officers working off-duty under their supervision (an on duty supervisor will not be called to handle the complaint).

   (1)   General Responsibilities

   (a)   Supervisors will immediately investigate all alleged or suspected incidents of misconduct observed or suspected.

   - This includes alleged misconduct observed or suspected by other departmental employees and citizens

   (b)   Supervisors will not look to a higher authority to initiate investigations when the employee involved is within the scope of their own authority and responsibility.

   (c)   Employees under investigation will be notified in writing every three (3) months as to the current status of the investigation which will include:

   - The number of known witnesses left to be interviewed.
   - Any remaining investigative processes to be completed.
   - The estimated date of completion.

   (2)   Employees of Equal or Higher Rank   -   If the alleged misconduct involves another employee of equal or higher rank, a superior officer will be called to investigate the matter.

   (3)   Employees From Multiple Precincts/Bureaus   -   If employees from multiple precincts or bureaus are involved, the incident will be investigated by PSB at the discretion of the Police Chief.

   C.   Professional Standards Bureau (PSB)

| (1) Requesting Assistance From PSB | In cases where employees may be subject to discipline on its face value resulting in suspension without pay, dismissal, or demotion, supervisors will request assistance from PSB. <br><br> • PSB may provide functional supervision of the investigation or may assume full responsibility at the direction of the Police Chief or request of the affected assistant chief. |
|---|---|
| (2) Reinvestigating Complaints | • PSB has the authority to reinvestigate a matter believed to be incomplete with the concurrence of the Police Chief or affected assistant chief. <br> • In all instances, PSB will have full authority to question any employee/s who may have knowledge that will assist in the investigation. |
| (3) Complaints Received at PSB | • If PSB receives a direct complaint or information regarding an alleged violation, the matter will be referred to the proper assistant chief/bureau commander or the Police Chief if it is deemed necessary by PSB |
| (4) Investigation Authority | • During the course of conducting internal investigations, PSB investigators acting on behalf of the Police Chief may issue NOIs in addition to compelling statements and/or tests. <br> • PSB investigators may give admonishments not to speak about the investigation and/or interview/s to any employee regardless of the employee's rank. |

| MISCONDUCT INVESTIGATIONS | Operations Order 2.2.00 |
|---|---|
| PHOENIX POLICE DEPARTMENT    Rev. 04/18/25 | PAGE 4 |

3.  C.  Professional Standards Bureau   (continued)

| (5) Information Received Six (6) Months After Alleged Misconduct Occurrence | If an allegation of misconduct occurred more than six (6) months prior to the date of the original complaint, the supervisor receiving the complaint will document the information in a memorandum<br><br>• The memorandum will be sent through the chain of command to PSB<br>• PSB will review the circumstances and determine if a formal investigation should be initiated<br>• If an investigation is merited, PSB will assume the investigation, unless otherwise directed by the assistant chief or Police Chief. |
|---|---|

4.  **SPECIFIC PROCEDURES FOR CITIZEN COMPLAINTS**

   A.  Receipt of a Citizen Complaint

   (1)  General Procedures

   (a)  All complaints will be immediately referred to an on-duty supervisor.

   (b)  The supervisor will discuss the matter with the complainant.

   • The discussion **should be** audio or audio and video recorded.

   (c)  If the complainant does not know the name or serial number of the involved employee, every effort will be made to determine the identity of the accused employee.

   (d)  If the identity of the employee can be determined and the complaint meets the definition of a citizen complaint as set forth in section 2 of this order, the supervisor will forward the complainant's contact information, a brief summary of the complaint, and the audio/video recording (if available) to the involved employee's immediate supervisor.

   • If the involved employee's immediate supervisor is discussing the matter with the complainant, the employee's immediate supervisor will commence an investigation as outlined in this order.

   (e)  If the identity of the employee cannot be determined and/or the complaint does not meet the definition of a citizen complaint, the incident (and audio/video recording, if available) will be entered into Blue Team as an administrative inquiry by the supervisor who received the original complaint and forwarded through his/her chain of command.

   (2)  Serious Complaints Against Employees (Aggravated Assault, Theft, etc.)

   • Serious complaints will be directed to a lieutenant or higher during normal business hours or the duty commander during non-business hours, who will evaluate the complaint to determine if requesting immediate assistance from PSB is warranted (see section 3.C of this order for more information).

   B.  Previous Complaints  -  The investigating supervisor will contact PSB to determine:

   • If the complainant has filed previous complaints about Department employees
   • If any similar previous complaints have been filed against the involved employee/s

| | | Operations Order |
|---|---|---|
| **MISCONDUCT INVESTIGATIONS** | | **2.2.00** |
| **PHOENIX POLICE DEPARTMENT** | Rev. 04/18/25 | PAGE 5 |

4.    C.    Contacting the Complainant

| (1) | When the Complaint is Received | • Upon receipt of the complaint, the investigating supervisor will send a letter to the complainant verifying the complaint was received.<br>• The complainant will be sent the original letter, which has been reviewed and signed by the bureau/precinct commander/administrator. |
|---|---|---|
| (2) | Periodic Status Reports of Investigation | • Periodic status reports may be provided depending on the investigation's circumstances and length. |
| (3) | At the Conclusion of the Investigation | • Upon the completion of the entire investigation process, the bureau/precinct commander/administrator or designee will send a notification of findings letter to the complainant.<br>• The letter will contain the following:<br><br>  ∗ Allegations and findings of the investigation<br>  ∗ Brief definition of the various terms (unfounded, exonerated, etc.)<br>  ∗ Investigating supervisor's name and the contact phone number<br>  ∗ Complaint control number and statement that the complaint will be filed in the PSB for a minimum of five (5) years should any future questions or concerns arise |

5.    **STEPS IN CONDUCTING MISCONDUCT INVESTIGATIONS**

| STEP | DESCRIPTION | SECTION FOUND |
|---|---|---|
| 1 | If the misconduct only involves a violation of Operations Order 5.1.00, Body-Worn Video Technology, section 4.C, initiate a "Draft" Body-Worn Camera Investigation Short Form 80-58.1DA.  For all other investigations, initiate a "Draft" Internal Investigation Report Form 80-58DA | 6.A |
| 2 | Interview complainants and witnesses | 6.B |
| 3 | Serve any required NOI/s | 6.C |
| 4 | Interview the involved employee/s (ensure a completed Internal Investigation Material List Form 80-58.1DB is provided to each involved employee prior to the interview) | 6.D |
| 5 | Gather information | 6.E & 6.F |
| 6 | Complete the "Draft" Internal Investigation Report/Body-Worn Camera Investigation Short form and issue Notice of Findings | 7 |
| 7 | Investigative Review Process (IRP)* | 8 |
| 8 | Complete the "Final" Internal Investigation Report/Body-Worn Camera Investigation Short form | 7 |
| **\*NOTE**: | An IRP **will not** be conducted if a Loudermill Hearing is conducted (see Operations Order 2.1.00, Discipline Policy and Review Boards, for more information). | |

6.    **CONDUCTING MISCONDUCT INVESTIGATIONS**

A.    General Information

(1)    When an investigation may result in discipline of a written reprimand or above, as determined by Operations Order 2.1.01, Policy Violations Index , an Internal Investigation Report form will be completed.

**EXCEPTION**:    If the investigation only involves a violation of Operations Order 5.1.00, Body-Worn Video Technology, section 4.C, a Body-Worn Camera Investigation Short form will be completed.

**NOTE**:    For supervisor initiated (SI) investigations, ensure an administrative investigation number is obtained from PSB within five (5) days of notification of the incident and documented on the Internal Investigation Report/Body-Worn Camera Investigation Short form.

| | **MISCONDUCT INVESTIGATIONS** | **Operations Order**<br>**2.2.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT** — Rev. 04/18/25 | PAGE 6 |

6.   A.   (2)   The investigating supervisor is responsible for the completion of the Internal Investigation Report/Body-Worn Camera Investigation Short form.

**NOTE**:   For SI investigations, the Internal Investigation Report/Body-Worn Camera Investigation Short form must be completed within 60 days of notification of the incident.

(3)   Upon completion of the IRP, the "Final" Internal Investigation Report/Body-Worn Camera Investigation Short form, and any other attachments/supporting documentation, will be forwarded to PSB to be retained in accordance with record retention policies and/or laws.

B.   Interviewing Complainants and Witnesses  -  Whenever possible, statements will be taken from witnesses and complainants.

(1)   Audio or audio and video record all interviews with complainants and non-employee witnesses when practical.

(2)   This will be done unless such audio/video recordings would obstruct the interview and the obtaining of information.

(3)   Complainants and involved employees will be notified in writing every three (3) months as to the current status of the investigation.

C.   NOI Procedures

(1)   Criteria for Service of an NOI  -  An NOI will be given to an employee under the following circumstances:

(a)   When an employee is under investigation by PSB or a Department supervisor for a matter that may lead to a written reprimand, suspension, and/or demotion, or termination, and is being interviewed, interrogated, or requested to produce any documentation (financial disclosure statements, memorandums, etc.)

(b)   See the appropriate Memorandum of Understanding (MOU)/Memorandum of Agreement (MOA) for more information.

(2)   Procedures for Completion of an NOI

- A synopsis of the incident under investigation, outlining the specific nature of the investigation, the employee's status in the investigation and all known allegations of misconduct that the employee will be interviewed about, will be included in the space provided.

∗   The synopsis will include the date, time, and location, if known.

(3)   Procedures for Serving an NOI

(a)   The investigating supervisor or PSB investigator will complete and provide an NOI to the employee **prior** to interviewing or interrogating the employee.

- This does not include preliminary fact finding questions to determine the scope of allegations or if an investigation is necessary.

(b)   The employee will review the NOI, sign it, and be provided a copy of the signed and dated form, prior to any interview or interrogation.

| | MISCONDUCT INVESTIGATIONS | Operations Order **2.2.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT**    Rev. 04/18/25 | PAGE 7 |

6.    C.    (3)    (c)    Additional NOIs will be served at any time throughout the investigation when new allegations are established, and further interview or interrogation of the employee is required.

- If, for example, a rude conduct complaint is being investigated and new information from the employee establishes the employee is untruthful, the supervisor/investigator should stop the interview until a new NOI can be prepared and served.
- Interview questions specific to the allegation of misconduct will be limited to the scope of the NOI.
- Supervisors/investigators will not rely on a "blanket statement" for putting the employee on notice that other issues of misconduct will also be investigated.

D.    Interviewing Employees Under Investigation

(1)    General Information

(a)    Prior to interviewing an involved employee, an Internal Investigation Material List form documenting what materials the investigating supervisor or PSB investigator provided to the involved employee will be completed.

(b)    Investigating supervisors or PSB investigators may either record the statement of an accused employee or accept a written statement from the employee.

(c)    Investigating supervisors or PSB investigators may require each employee participating in the investigation to prepare and submit an individual written report of all facts of the incident known to the employee.

(d)    When there is an allegation of explicit bias in violation of policy, relevant questions will be asked.  (See Operations Order 1.4.00, Prohibition of Bias-Based Policing for definitions.)

(e)    Investigating supervisors or PSB investigators will record reactions and statements of those present when statements are read to the accused in the presence of complainants and witnesses.

(f)    If body-worn camera video is being used as the basis for an allegation of misconduct against an employee, the employee will have access to the video prior to the employee's administrative interview.

(2)    Unit Representation  -  The employee, who has been served with an NOI, may ask that a unit representative be present during any investigative interview.

(a)    The interview will be delayed for a reasonable period of time to allow for the arrival of the representative.

(b)    The representative may participate in the interview as permitted by the appropriate MOU/MOA.

(3)    Garrity Rights

(a)    Any employees under investigation for possible misconduct will be informed that when an employee is compelled to respond to questioning by the Department, such statements and any evidence derived from such statements cannot be used against the employee in a criminal matter.

| MISCONDUCT INVESTIGATIONS | **Operations Order** **2.2.00** |
|---|---|
| PHOENIX POLICE DEPARTMENT Rev. 04/18/25 | PAGE 8 |

6.   D.   (3)   (b)   Any such required statements could be used against an employee in civil proceedings.

(c)   Voluntary statements may be admissible in subsequent criminal action.

(4)   Audio/Video Recording the Interview

(a)   The employee, the representative, and the investigating supervisor/PSB investigator may mechanically record the interview.

(b)   The Department reserves the right to transcribe any mechanically recorded interview for the purpose of verifying the accuracy of such interview.

- If requested, the employee shall sign the transcription if it is accurate.

(c)   The employee may request and receive an audio/video copy of the interview.

(d)   Overtime is not authorized for the purpose of dropping off or picking up audio/video recordings by the affected employee or representative.

E.   Submission of Information

| (1) Line Ups | <ul><li>Supervisors may require an employee involved in a misconduct investigation to participate in a line-up for identification purposes.</li><li>The procedure will only be used when absolutely necessary and with the approval of the involved employee's assistant chief.</li></ul> |
|---|---|
| (2) Financial Disclosure Statements | <ul><li>An employee may be required to submit financial disclosure statements at the direction of the Police Chief when such information is material to an administrative investigation of misconduct.</li><li>Financial disclosure will only be required when it is determined the information is critical to the conclusion of a misconduct investigation.</li></ul> |
| (3) Substance Abuse Allegations | When there are indications an employee is involved in substance abuse, investigating supervisors may require the employee to submit to the following:<ul><li>A field sobriety test and/or a chemical test for intoxication and the results will be recorded in an Incident Report (IR) and Impaired Driver Report (IDR)</li><li>A medical or laboratory examination to test for the presence of drugs. Such medical or laboratory tests will require the prior approval of the employee's bureau/precinct commander/administrator</li></ul> |
| (4) Photographs | Supervisors may require each employee involved in an investigation to submit to being photographed if those currently on file with the Department are:<ul><li>Unsuitable</li><li>Do not reasonably depict the current appearance of the employee</li></ul> |

F.   Polygraph Examinations

(1)   General Information

(a)   Employees may be required to take a polygraph examination when serious allegations are made against them in regard to their truthfulness.

(b)   When serious allegations are made against an employee, the employee may request a polygraph examination.

(c)   The Department recognizes that, for the purposes of criminal prosecution, employees do not automatically waive any constitutional privileges concerning questioning pursuant to this order.

| | MISCONDUCT INVESTIGATIONS | Operations Order 2.2.00 |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT    Rev. 04/18/25 | PAGE 9 |

6.  F.  (2)  Approval for Polygraph Examinations - All polygraph examinations for internal investigation purposes must be approved by the Police Chief.

   (3)  Requirements - Employees will not be required to submit to a polygraph examination except when the employee is suspected of:

   • Committing a criminal offense
   • Misconduct that would be grounds for termination, suspension, or other disciplinary action
   • Concealing information regarding their qualifications for continued employment with the Department
   • Withholding or concealing pertinent information regarding any matter under official investigation by the Department

   (4)  Examination Guidelines

   (a)  Questions used in a polygraph examination will be pertinent to the subject of inquiry, except the polygraph examiner may ask control questions as necessary to validate an examination within the scope of acceptable polygraph procedures.

   (b)  The right to assistance of counsel does not exist when required to submit to a polygraph examination in the employee-employer relationship.

   (c)  Polygraph examinations will be performed within a reasonable time of the request and by qualified examiners.

   (d)  Employees will tell the truth at all times, will answer pertinent questions to the best of their knowledge, and will not refuse to answer or knowingly give a false or misleading answer to any question before, during, or after a polygraph examination.

   (e)  A labor representative may monitor the polygraph interview and examination from the monitoring room and will be allowed to be present during post exam interviews.

   (5)  Cooperation

   (a)  Employees will cooperate with supervisors and investigators when involved in any incident requiring the use of the polygraph.

   (b)  An employee who refuses to take a polygraph when so ordered by a superior will be dismissed at the discretion of the Police Chief.

   G.  Joint Criminal and Administrative Investigations

   (1)  Interviews

| (a) Employee Served a Notice of Investigation (NOI) | • An employee who has been, or under the circumstances is likely to be, issued an NOI shall not be interviewed jointly by a criminal and administrative investigator.<br>• This order shall apply to any interview of an employee who was directly involved in a response to resistance incident, traffic collision, or an in-custody death. |
|---|---|
| (b) Employees Not Served a Notice of Investigation (NOI) | • An employee who has not been, and under the circumstances is not likely to be, issued an NOI, may be interviewed jointly by a criminal and administrative investigator.<br>• If during the joint interview it appears there may be serious criminal liability on the part of the employee, the administrative investigator should leave the interview. |

| | **MISCONDUCT INVESTIGATIONS** | | **Operations Order**<br>**2.2.00** |
|---|---|---|---|
| | **PHOENIX POLICE DEPARTMENT** | Rev. 04/18/25 | PAGE 10 |

6.   G.   (2)   <u>Crime Scene Walk-Through</u>  -  Administrative investigators shall not accompany criminal investigators during a crime scene walk-through with an employee who was directly involved in a response to resistance incident, traffic collision, or an in-custody death.

- Exceptions may be made on a case-by-case basis.

(3)   <u>Disclosure of Information</u>

(a)   Administrative investigators shall not disclose to criminal investigators any information obtained **<u>during or after</u>** compelled interviews unless and until approved by the Legal Unit.

- The purpose of this order is to prevent the intentional or inadvertent use, directly or indirectly, of an employee's compelled statement in criminal prosecution against the employee (Garrity Rights).

(b)   Criminal investigators may disclose to administrative investigators any information discovered during their investigation unless otherwise prohibited by law: for example, grand jury proceeding and wiretap investigation.

H.   <u>Procedures for Specific Types of Investigations</u>

(1)   <u>Excessive Force Complaints</u>  -  When excessive force complaints are received, the investigating supervisor will ensure the following procedures are completed:

(a)   Interviews with complainants, witnesses, and employees are audio or audio and video recorded.

(b)   Photographs are taken of all the areas of the body where there has been an allegation of injury.

- The photographs will be taken utilizing a Department-approved camera and color bar.
- Photographs will be obtained whether or not the injury is visible.
- Employees of the same sex as the complainant will be utilized to obtain these photographs when appropriate.
- Laboratory Services Bureau (LSB) personnel will not be utilized for taking photographs unless the incident is unusual.

(2)   <u>When an Employee Has Committed a Crime</u>

(a)   When there are reasonable grounds to believe an employee has committed a crime, the on-scene supervisor will immediately notify their chain of command.

(b)   The bureau/precinct/duty commander or administrator will then contact the commander of the Family Investigations Bureau (FIB).

(c)   The commander of FIB, in consultation with PSB, will determine the proper course of action to be taken as follows.

- The Special Investigations Detail (SID) of FIB and/or PSB personnel may respond to the scene for disposition.
- At the direction of SID/PSB, the incident may be documented by another sworn employee in an IR and forwarded to SID/PSB for follow-up.
- The internal investigation will be conducted by PSB.

(d)   Specific investigative procedures concerning criminal investigations of employees are outlined in the affected bureau's manual.

| | **MISCONDUCT INVESTIGATIONS** | **Operations Order**<br>**2.2.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT**    Rev. 04/18/25 | PAGE 11 |

6.  I.  <u>Body-Worn Camera Video</u>

   (1)  An employee who is the subject of an ongoing criminal investigation, including an officer involved shooting or in-custody death, will not access or view body-worn camera video relating to the criminal investigation until the video is released by the criminal investigators.

   (2)  In accordance with <u>Arizona Revised Statute (ARS) 38-1116</u>, an employee involved in an incident resulting in an administrative investigation will have access to body-worn camera video prior to the completion of the administrative investigation.

   J.  <u>Reassignment of Employees Under Investigation</u>

   (1)  An employee under investigation may be reassigned until the completion of the investigation, see <u>Operations Order 4.1.00, Employee Related Administrative Procedures</u>, for more information.

   (2)  Employees may:

   - Be placed on administrative leave
   - Work the same position until the investigation is concluded
   - Be reassigned to a non-enforcement position for the duration of the investigation

   (3)  Some guidelines for consideration are:

   - Potential for violence and/or misuse of police authority
   - Pending termination
   - Substance abuse
   - Under investigation for a serious crime

   (4)  Commanders who place employees on administrative leave or reassignment will notify PSB and the Fiscal Management Bureau (FMB) of the assignment at the beginning of the next business day.

   (5)  The employee's immediate supervisor will remain responsible for all appropriate/required Department paperwork and activities.

7.  **COMPLETION OF THE INTERNAL INVESTIGATION PACKET**

   A.  <u>General Guidelines</u>

   (1)  The investigating supervisor will initially complete the Internal Investigation Report/Body-Worn Camera Investigation Short form in "Draft" form.

   - A diagonal "Draft" custom watermark will be inserted on the document by clicking on "Design" and then "Watermark."

   (2)  To determine a recommendation for discipline, supervisors will refer to <u>Operations Order 2.1.01</u>, Policy Violations Index.

   - A statement of the discipline recommendation will be included in the **CONCLUSION** of the Internal Investigation Report form.

   (3)  The "Final" Internal Investigation Report/Body-Worn Camera Investigation Short form will only be completed after the IRP.

   **NOTE**:  Ensure the "Draft" custom watermark is removed.

| | MISCONDUCT INVESTIGATIONS | | Operations Order |
|---|---|---|---|
| | | | **2.2.00** |
| | PHOENIX POLICE DEPARTMENT | Rev. 04/18/25 | PAGE 12 |

7.   A.   (4)   An Investigative Review Control (IRC) Form 80-58DD will be prepared and included as part of the Internal Investigation packet.

- This form will be placed immediately behind the Internal Investigation Report/Body-Worn Camera Investigation Short form.

(5)   PSB investigations will be completed in accordance with the procedure/format outlined in the PSB Manual.

(6)   Background Checks

(a)   The investigating supervisor will check all complainants and witnesses through the Strategic Information Bureau (SIB) and PSB.

(b)   The results will be listed in the **DETAILS OF INVESTIGATION** section of the Internal Investigation Report/Body-Worn Camera Investigation Short form.

(7)   Findings of the Investigation   -   In the "Findings" section of the Body-Worn Camera Investigation Short form or the space marked "Findings" and in the **CONCLUSION** section of the Internal Investigation Report form, the investigating supervisor will list/select one of the following:

| (a) Unfounded | • It is found the reported misconduct did not occur or did not occur as alleged. |
|---|---|
| (b) Exonerated | • The incident occurred, but the conduct was lawful and proper. |
| (c) Unresolved | • There is insufficient evidence to either prove or disprove the allegation.<br>• The inquiry into this allegation is inactivated pending development of further information. |
| (d) Sustained | • The allegation is supported by sufficient evidence to justify a reasonable conclusion the alleged misconduct occurred. |

B.   Internal Investigation Report Form   -   The form consists of the following main components: **SUMMARY OF INVESTIGATION**, **DETAILS OF INVESTIGATION**, **CONCLUSION**, and **CLOSING**.

**NOTE**:   Bolding, highlighting, underlining, italicizing, and other font effects will not be used when completing the form.

(1)   **SUMMARY OF INVESTIGATION**

- List names of complainant and any witnesses
- List all attachments
- Provide a synopsis of the allegation/s (conveys to the reader the concise facts surrounding the investigation)
- Provide a findings

(2)   **DETAILS OF INVESTIGATION**

| (a) General Information | • List the events of the supervisor's entire investigation in chronological order<br>• Briefly describe the facts and then explain details of the investigation |
|---|---|
| (b) Memoranda From Employees | • The investigation will include memoranda from employees containing direct statements about the allegation against them.<br>• Employee memoranda should be summarized.<br>   ∗ This summary should only include pertinent information relative to the allegation.<br>   ∗ It is not necessary to completely restate what the employees involved already stated in their memoranda. |

| | **MISCONDUCT INVESTIGATIONS** | **Operations Order**<br>**2.2.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT**    Rev. 04/18/25 | **PAGE 13** |

7.    B.    (2)    <u>Details of Investigation</u>    (continued)

| (c) **Interviews** | • Interviews of employees, complainants, or witnesses will be audio/video recorded, and the information/statement will be accurately paraphrased. |
|---|---|
| | ∗ Interviews will not be transcribed and/or quoted unless they have specific merit and bearing on an issue of fact in the investigation. |
| | ∗ Audio/video recordings will be forwarded with the original report. |
| | • Interviews with the complainant will be listed by date, time, name, and location where the interview was conducted. |

(3)    **CONCLUSION**

- The conclusion, based on evidence, will have a concise summary paragraph with a recommendation of exonerated, sustained, unfounded, or unresolved.
- For each sustained allegation of misconduct, the investigator should identify the most applicable policies the employee's actions violated based on the totality of the circumstances and cite those policies.
- If the investigation sustains a violation/s of misconduct, the conclusion will contain a description of the policy violation listed within Operations Order 2.1.01, Policy Violations Index, to make a discipline recommendation.
- Any investigation with a sustained violation of misconduct will have a statement regarding the final disposition (discipline resulting in suspension, demotion, or termination, will be listed according to current MOU/MOA guidelines).

(4)    **CLOSING**

(a)    For the "Draft" Internal Investigation Report form, include the below closing:

- This draft investigation is complete and will be forwarded to the involved employee/s for review. If desired, an Investigative Review Process (IRP) meeting will be held with Commander (insert name) to discuss the findings of the investigation.

(b)    For the "Final" Internal Investigation Report form, include the below closing:

- This investigation is complete and was reviewed and approved by the involved employee/s. This investigation will be retained in the Professional Standards Bureau (PSB) in accordance with record retention policies and/or laws.

C.    <u>Attachments</u>    -    The following documents will be included as "Attachments" to the Internal Investigation Report/Body-Worn Camera Investigation Short form when applicable.

(1)    <u>Work History Memorandum</u>

- In cases where the complaint is sustained, the employee's past record of discipline (according to the time tables in the MOU/MOA or Operations Order 2.1.00, Discipline Policy and Review Boards), commendations, and performance evaluations for the preceding five (5) years will be listed in chronological order.

    **NOTE**:    The <u>employee's supervisor</u> will complete the work history memorandum for all misconduct investigations (SI investigations <u>and</u> PSB investigations).

(2)    <u>Medical Records</u>   -   When medical records, as defined by Arizona Revised Statute (ARS) 12-2291.6, are involved in a PSB or other administrative investigation, the information will <u>not</u> be included in the main Internal Investigation Report form.

| | MISCONDUCT INVESTIGATIONS | **Operations Order**<br>**2.2.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT**    Rev. 04/18/25 | PAGE 14 |

7.    C.    (2)    (a)    All files containing medical records will be clearly marked **Confidential:  Do Not Release** and will be stored in PSB.

- Medical records will be maintained in files separate from the regular PSB files or reports.
- No medical records will be kept with the work unit copy of the investigation.
- Medical records will not be released as public records and may only be released internally with the permission of the PSB commander, after consulting the Department legal advisor.

(b)    Any reference to medical records or medical history in the main Internal Investigation Report form will be reviewed by the legal advisor prior to releasing the "Draft" Internal Investigation Report form to the employee or the designated unit representative.

(c)    For additional information, see the PSB manual.

(3)    <u>Supervisory Counseling Form or Written Reprimand Form 14-8D</u>  -  Must identify what rule or regulation was violated (this information should be the last sentence in the Nature and Specific Details of Infraction section of the Written Reprimand form).

**EXAMPLE**:    In the case of tardiness, "Your conduct violates Operations Order 4.7.00, Rules and Regulations, which requires employees to be punctual in reporting for duty."

(a)    Supervisory Counseling Form Routing

- For Unit 4 employees [Phoenix Law Enforcement Association (PLEA)], the original Supervisory Counseling form will be forwarded to FMB for placement in the employee's Department file and a copy of the form will be retained by the employee's supervisor for one (1) year.
- For employees not in Unit 4, the original Supervisory Counseling form will be retained by the employee's supervisor for one (1) year.

(b)    Written Reprimand Form Routing

- The original Written Reprimand form will be forwarded to FMB for placement in the employee's Department file.
- A copy of the Written Reprimand form will be included in the Internal Investigation Report packet and forwarded to PSB for filing and a copy will be placed in the employee's division/bureau/precinct file

8.    **NOTICE OF FINDINGS (NOF)**  -  A Notice of Findings will be prepared listing the allegations investigated and the Findings listed in the Body-Worn Camera Investigation Short form or the Conclusion section of the Internal Investigation Report form.

9.    **INVESTIGATIVE REVIEW PROCESS (IRP)**  -  The IRP process will not exceed 21 calendar days with the following exceptions:

- If a time extension is needed, it must be requested in writing prior to the end of the 21 calendar day period.
- If the matter involves an Equal Employment Opportunity Department (EOD) investigation and the employee files an EOD appeal, the IRP will be scheduled in coordination with the EOD appeal process.

A.    <u>Investigating Supervisor or PSB Investigator Responsibilities</u>  -  The "Draft" Internal Investigation packet and Notice of Findings will be forwarded to the affected employee's bureau/precinct commander or administrator for review.

| | | |
|---|---|---|
| **MISCONDUCT INVESTIGATIONS** | | **Operations Order 2.2.00** |
| **PHOENIX POLICE DEPARTMENT** | Rev. 04/18/25 | PAGE 15 |

9. B. Providing a Copy of the "Draft" Internal Investigation Packet and Notice of Findings to the Affected Employee

| (1) Sustained Allegations | A copy of the "Draft" Internal Investigation packet and Notice of Findings will be provided to the affected employee/s and/or representative upon the review and approval of the employee's bureau/precinct commander/administrator. |
|---|---|
| (2) Unresolved, Exonerated, or Unfounded Allegations | The "Draft" Internal Investigation packet may be reviewed by the employee at their request. |

C. Employee Review of the "Draft" Internal Investigation Packet

(1) Time Limitations - The employee has a maximum of **21 calendar days** to review the "Draft" Investigation packet and make note of any issues in dispute.

(a) If the matter involves an Equal Employment Opportunity Department (EOD) investigation and the employee files an EOD appeal, the IRP will be scheduled in coordination with the EOD appeal process.

(b) If agreed to by both parties, the time period of 21 calendar days for review may be reduced or extended.

- If the full 21 calendar day period is to be used for review, an extension will be necessary and in writing prior to the end of the 21 calendar day IRP time period.
- If an extension is agreed upon, Section 1 of the IRC form will be completed to reflect the agreed-upon extension date.

(c) The employee and/or representative will then return all copies of the "Draft" Internal Investigation packet to the investigating supervisor or PSB investigator.

**EXCEPTION**:  Employees may keep one (1) copy of the "Draft" Investigation packet until the "Final" Investigation packet is completed for comparison.

(2) Restrictions

(a) Employees **will not**:

- Make copies of the "Draft" Internal Investigation packet.
- Provide copies of the "Draft" Internal Investigation packet to the media.
- Make the "Draft" Internal Investigation packet available to the public.

(b) Commanders/administrators will advise the employee of these restrictions when the copy is released to the employee.

D. Investigative Review Meeting

(1) Scheduling

(a) The affected employee's bureau/precinct commander/administrator will schedule a meeting to review the investigation upon completion of the review by the employee.

- Overtime for the involved employee is not authorized for this meeting.
- Meetings reference investigations conducted by PSB will be scheduled through PSB.

(b) This meeting is not necessary for unresolved/unfounded/exonerated complaints unless requested by either party.

| | | |
|---|---|---|
| **MISCONDUCT INVESTIGATIONS** | **Operations Order** | |
| | **2.2.00** | |
| **PHOENIX POLICE DEPARTMENT** | Rev. 04/18/25 | PAGE 16 |

9.    D.    (2)    <u>Attendance</u>

   (a)    The following people **will** attend the meeting:

   - Affected employee's bureau/precinct commander/administrator or designee.
   - Investigating supervisor or PSB investigator.
   - PSB commander (if the investigation was conducted by PSB.)

   (b)    The following people **may** attend the meeting:

   - Affected employee and unit representative
   - Affected employee's immediate supervisor
   - Anyone else as deemed necessary by the bureau/precinct commander/ administrator

   (3)    <u>Purpose of the Meeting</u>   -   The affected employee, investigating supervisor or PSB investigator, and the affected employee's chain of command shall attempt to seek agreement regarding the specific allegations and findings of the investigation.

   (4)    <u>Responsibility of the Affected Employee</u>

| (a)  **If the Employee Agrees with the Investigation** | If the employee agrees with the content of the investigation, the employee or representative will be requested to sign and date the IRC form indicating agreement. |
|---|---|
| (b)  **If the Employee Disagrees with the Investigation** | If the employee disagrees with the content of the investigation, an attempt will be made to resolve the differences.<br><br>• Once a consensus is reached, a new draft will be created and, if necessary, an amended Notice of Findings will be issued.<br>• Issues remaining in dispute will be noted on the IRC form.<br>• In the absence of agreement, the process will continue as outlined in this order. |

   (5)    <u>Conclusion of the Meeting</u>

   (a)    At the conclusion of the meeting, the bureau/precinct commander/administrator or PSB commander will do the following:

   - Review the circumstances of the findings
   - When reasonable, a specific, single policy that was violated during a single act or related series of events should be enumerated in the investigation
   - Other policies, however, may be used in support of the specific allegation
   - Ensure a "Final" Internal Investigation Report/Body-Worn Camera Investigation Short form is prepared and forwarded to the effected assistant chief if necessary
   - Ensure the IRC form is completed, and a copy is sent to the appropriate labor association

   (b)    A copy of the "Final" Internal Investigation packet will be given to the employee at their request.

   (c)    The "Final" signed/dated Internal Investigation packet will be retained in PSB in accordance with current file retention policies.

   (d)    A copy of the completed IRC form will be forwarded to the appropriate labor association.

| MISCONDUCT INVESTIGATIONS | | Operations Order<br>**2.2.00** |
|---|---|---|
| **PHOENIX POLICE DEPARTMENT** | Rev. 04/18/25 | PAGE 17 |

| Last Organizational Review: |
|---|
|  |

# EXHIBIT D

Media Advisory Message from the Chief, Officer Conduct



# Phoenix Police Department
## Public Affairs Bureau
### 620 West Washington Street, Phoenix, Arizona 85003



# M E D I A   A D V I S O R Y

## Statement From Chief Giordano

(April 10, 2026) – "I wanted to address a recent incident involving an off-duty officer in a neighboring city.

As law enforcement professionals, we are held to higher standards of conduct – both in and out of uniform. Our community expects integrity, accountability, and sound judgment from every member of this Department, and I expect the same. When we fall short, we must be accountable, and we will not tolerate actions which undermine the trust the community has placed in the Department.

The incident is under investigation and that process will soon conclude. The completed investigation report will ultimately come to me for review and action after a thorough and fair assessment of the facts. In the meantime, the employee has been placed on administrative leave.

As the Chief of the Phoenix Police Department, I remain committed to building and maintaining community trust, transparency, and accountability. I am taking this matter very seriously and I will communicate my findings publicly as soon as they are made."


Matthew Giordano
Chief of Police
Phoenix Police Department

# EXHIBIT E

2.1.01 Policy Violation Index

| | POLICY VIOLATIONS INDEX | Operations Order 2.1.01 |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT    Rev. 02/18/25 | PAGE 1 |

## 1. GENERAL INFORMATION

A. Recommendations for discipline regarding Sustained policy violations by Department employees will be based upon this order.

B. The Police Chief, or the Police Chief's designee, has the authority to deviate from prescribed discipline levels under the conditions specified below.

- Deviation from this order's recommendations for discipline at the **Written Reprimand** level will require the written approval of the Involved Employee's Division Chief, in the form of a Deviation From Standard Corrective Action memorandum, which will include a justification statement and be attached to the Misconduct Investigation.

    **NOTE**: Anytime there is a Plausible Allegation of Misconduct at the Written Reprimand level, an intention by the affected chain of command to deviate from a Written Reprimand to a non-disciplinary corrective action outcome, such as a Supervisory Counseling or a coaching, in the event of a Sustained finding, does not negate the need for a Misconduct Investigation to be conducted.

- Deviation from this policy's recommendations for discipline at the **Class I Violation** level will require the written approval of the Executive Assistant Police Chief of the Administration, Accountability, and Transparency Section, in the form of a Deviation From Standard Corrective Action memorandum, which will include a justification statement and be attached to the Misconduct Investigation.

- Deviation from this policy's recommendations for discipline at the **Class II or III Violation** levels, **or** from recommendations made by either the Discipline Review Board will require the written approval of the Police Chief, in the form of a Deviation From Standard Corrective Action memorandum, which will include a justification statement and be attached to the Misconduct Investigation.

    **NOTE**: The City Manager must separately approve any deviation from recommendations made by the Discipline Review Board.

## 2. DEFINITIONS

| | | |
|---|---|---|
| A. | Aggravated Force Not Within Policy | • Not Within Policy force that is willfully used on a Subject by an employee, when that force is determined to be **both** egregiously unnecessary **and** egregiously disproportionate based on the Totality of the Circumstances |
| B. | Allegation | • Any accusation, originating internally or externally, that a Department employee may have violated existing City or Department policies, standard procedures, or the law |
| C. | Failure To Properly Attempt De-Escalation Strategies | • This Allegation applies when an opportunity to do so is objectively available, and an Involved Employee does not properly attempt the use of any de-escalation strategies trained by the Department<br>• This Allegation should not be used for approved or improvised de-escalation tactics and techniques that were attempted by an employee, but were unsuccessful in resolving an incident or preventing a Use of Force |
| D. | Failure To Properly Request Medical Aid After Use of Force | • This Allegation applies when an Involved Employee uses Level 2 or Level 3 force during a police incident, but fails to properly request medical aid for the Subject the force was used upon<br>• For Level 1 Uses of Force, this Allegation applies if medical evaluation is requested by the Subject or otherwise reasonably needed to evaluate potential Injuries or Minor Wounds to the Subject resulting from applied police force, but the Involved Employee(s) fail to properly request medical aid |
| E. | Force Not Within Policy | • Force used by an employee that is determined to be unnecessary and/or disproportionate, based on the Totality of the Circumstances |
| F. | Force Within Policy | • Force used by an employee that is determined to be both necessary and proportionate, based on the Totality of the Circumstances, and therefore **objectively reasonable** |

## 2. DEFINITIONS (continued)

| | | |
|---|---|---|
| | **POLICY VIOLATIONS INDEX** | **Operations Order**<br>**2.1.01** |
| | **PHOENIX POLICE DEPARTMENT** | Rev. 02/18/25 — PAGE 2 |

| G. | Force-related Decision Making | • The process of an employee choosing a course of action, or failing to choose a course of action, relating to tactics or techniques leading up to the Use of Force, or to a potential Use of Force, during a police incident<br>• Force-related Decision Making does **not** include the actual application of force upon a Subject by an employee; rather, it concerns the actions or inactions by an employee that immediately precede a Use of Force<br>• An Allegation of Improper Force-related Decision Making is applicable to actions or inactions which unjustifiably deviate from clearly established and documented training, or supervisory directives, received by an Involved Employee<br>• For the purposes of this policy only, Improper Escalation and Failure to Properly De-escalate are considered as individual allegations separate from Force-related Decision Making |
|---|---|---|
| H. | Improper Escalation | • Tactics and techniques that **unduly and unjustifiably** escalate a police incident by objectively increasing the likelihood of an employee's need to use force and decreasing potential opportunities for a Subject's voluntary compliance.<br>• The concept of Improper Escalation is **not** intended to prevent or preclude **justifiable** police actions that are intended to resolve a police incident in a manner consistent with the Safety Priorities and the Department's public safety responsibilities.<br>• An Allegation of Improper Escalation may include instances of potential Officer-Created Jeopardy. |

3. **MINOR POLICY VIOLATIONS – SUPERVISORY COUNSELING**

   A. Policy violations requiring a minimum of a supervisory counseling:

   (1) Failure to attend court as directed (first incident within a 12 consecutive month period)

   (2) Failure to attend training as directed (first incident within a 12 consecutive month period)

   (3) Operating a City Vehicle

   (a) Out of policy traffic collision resulting from a *minor* moving violation (backing, on private property, minor roadway collision, etc.) as determined by the Driving Analysis Committee (DAC) (no injury/Minor Wound)

   **NOTE**: See Operations Order 2.1.00.12.B.(10) for a possible exclusion.

   (b) Failure to adhere to driver qualifications as listed in Administrative Regulation (AR) 2.96

   (4) Unprofessional Conduct

   (a) Inappropriate Language, as defined in Operations Order 4.7.00, Rules and Regulations, section 6.B

   (b) Violation of AR 2.35, Equal Opportunity Policy: Anti-Discrimination, Harassment, and Retaliation

   (5) Duty To Intervene

   (a) Failure to intervene or attempt to intervene as required when another employee is known to be involved in misconduct, unethical behavior, or other violations of policy or law

   **NOTE**: The Duty to Intervene violation level will match the classification level of the original policy violation or misconduct that required intervention.

   B. Unless otherwise listed within this order, any acts not involving repeat offenses or a reckless disregard for policy, may be issued a supervisory counseling.

| | POLICY VIOLATIONS INDEX | Operations Order 2.1.01 |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT    Rev. 02/18/25 | PAGE 3 |

4. **DISCIPLINE**

    A. **Written Reprimand Violations** – Severity of the violation and disregard for policy require a minimum of a Written Reprimand.

        (1) General Requirements/Job Performance

            (a) Failure to complete an Incident Report (IR), Incident Supplement, Arizona Crash Report (ACR), or other paperwork when required

            (b) Failure to complete a Subject Contact Data (SCD) Form when required (third incident within a 12 consecutive month period)

            (c) Failure to obey a lawful order from a supervisor

            (d) Derogatory, inflammatory, or unprofessional remarks over the Mobile Data Computer (MDC)/Computer Aided Dispatch (CAD)

            (e) Excessive use of leave/unscheduled leave ("excessive" as defined by City policy)

            (f) Failure to notify the Department of a medical condition that might inhibit job performance

            (g) Failure to respond to emergency radio traffic when available to do so

            (h) Failure to properly request or render medical aid for a subject during a police incident (non-Use of Force)

            (i) Providing medical assistance beyond the scope of training or certification

            (k) Improper political activity while on duty or in a City uniform

            (l) Actions resulting in minor damage or impact to Department vehicles (excluding non-criminal traffic accidents)

            (m) Failure to attend court as directed (second incident within a 12 consecutive month period; calculated by date of the Notice of Investigation (NOI) or notification of missed court)

            (n) Failure to attend training as directed (second incident within a 12 consecutive month period; calculated by date of the NOI or notification of missed training)

            (o) Neglect of duty

            (p) Violation of Immigration Enforcement rules and regulations

            (q) Failure to adhere to driver qualifications as listed in AR 2.96

            (r) Failure to adhere to body-worn camera (BWC) audio/video recording requirements/guidelines

            (s) As defined in the Classification Guidance Criteria, section 4, of this order

| | **POLICY VIOLATIONS INDEX** | **Operations Order**<br>**2.1.01** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT** · Rev. 02/18/25 | **PAGE 4** |

4. A. (2) <u>Firearms and Equipment</u>

    (a) Improper storage/security of police equipment and items identifiable as police equipment (Department issued or personally owned)

    (b) Failure to secure a weapon in an appropriate location

    (c) Unauthorized modification/s to a Departmental weapon

    (d) Negligent discharge of a firearm without injury (excluding bullet trap incidents)

    (e) Carrying non-approved/unauthorized impact weapons

    (f) Not qualified and/or did not attempt to qualify as directed by AzPOST rules/Training Bureau policy

    (g) Negligent loss of or damage to a City owned radio

(3) <u>Use of Force – Force Not Within Policy</u>

    (a) Striking another person (Hard Empty Hand Techniques/Expandable Baton/Improvised Impact Weapon) (No Injury, Minor Wound)

    (b) Use of a TASER Energy Weapon (TEW) (No Injury, Minor Wound)

    (c) Use of Direct Impact Munitions (40mm/PepperBall®/37mm) (No Injury, Minor Wound)

    (d) Use of TEW (On-Duty or Off-duty in a police capacity) (No Injury, Minor Wound)

    (e) Use of Irritants (No Injury, Minor Wound)

(4) <u>Force-related Policy Violations</u>

    • The Force-related policy violation levels for the allegations *Improper Escalation* and *Failure to properly attempt De-escalation strategies* will be equivalent to the potential policy violation level of the related Use of Force applied, regardless of whether there is an actual Use of Force policy violation allegation or not.

    (a) Improper Escalation by involved employee prior to Use of Force during a police incident

    (b) Failure to properly attempt De-escalation strategies prior to Use of Force during a police incident

    (c) Improper Force-related Decision Making during a police incident

    (d) Failure to properly request or render medical aid for a subject after force was used during a police incident

(5) <u>Use of Force – Reporting</u>

    (a) Failure of employee to properly and promptly report a Level 1 Use of Force incident to a supervisor

    (b) Failure of a supervisor to properly and promptly submit or review a required Level 1 Use of Force

| | **POLICY VIOLATIONS INDEX** | **Operations Order 2.1.01** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT**    Rev. 02/18/25 | PAGE 5 |

4.    A.    (6)    <u>Show of Force Policy Violations</u>

(a)    Undue firearm Show of Force by an employee while on-duty or off-duty in a police capacity

(b)    Undue less-lethal Show of Force by an employee while on-duty or off-duty in a police capacity

(c)    Failure of employee to properly or promptly report a Show of Force incident to a supervisor

(d)    Failure of an employee to complete or properly submit a Show of Force Notification Form when directed by a supervisor

(e)    Failure of a supervisor to properly submit a Show of Force report, or failure to ensure a Show of Force Notification Form is properly submitted by an employee

(7)    <u>Property</u>

(a)    Inappropriate release of property without proper authorization

(b)    Failure to impound, control, and/or secure property or improper destruction of property as outlined by policy (includes prisoner's property but does not apply to evidentiary items)

(8)    <u>Operating a City Vehicle</u>

•    If an employee commits two or more violations listed below, during the same driving incident, the violations will be combined and elevated to a single Class 1 Violation (as outlined in this order, 3.18.4.B.(7))

(a)    "Emergency Driving" in a vehicle not meeting the definitions of an emergency vehicle

(b)    Failure to immediately notify a supervisor of a City vehicle (owned, leased, or rented) involved in a traffic collision

(c)    Illegal parking violations; scofflaw designation

(d)    Without authorization or authority, excessive speed violation as defined in Arizona Revised Statute (ARS) Title 28

(e)    Pursuit Driving - Out-of-Policy pursuit as determined by the Driving Analysis Committee.

(f)    Failure to wear a seatbelt while operating or riding in a City vehicle (owned, leased, or rented) involved in a traffic collision or photo technology Traffic Violation Notice (TVN)

(g)    Out of policy traffic collision resulting from a *significant* moving/policy violation (unsafe lane change, speed, failure to yield, etc.) as determined by the DAC (no injury/Minor Wound)

(9)    <u>Prisoners</u>

(a)    Failure to properly search a prisoner leading to an injury to any person

(b)    Improper care of a prisoner/failure to provide medical treatment, if required

(c)    Negligent control/securing of a prisoner

| | POLICY VIOLATIONS INDEX | **Operations Order** **2.1.01** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT** | Rev. 02/18/25    PAGE 6 |

4.   A.   (10)  <u>Supervisors</u>

        (a)   Abusive or derogatory language when addressing a direct report/subordinate

      (11)  <u>Unprofessional Conduct</u>

        (a)   Sexual activity (off duty) in a Department facility and/or grounds

        (b)   Accepting a gratuity (negative impact to the Department)

        (c)   Soliciting work for an attorney and/or bail bondsman

        (d)   Verbal abuse/confrontation towards another employee

        (e)   Inappropriate Language, as defined in Operations Order 4.7.00, Rules and Regulations, section 6.B

        (f)   Violation of AR 2.35, Equal Opportunity Policy: Anti-Discrimination, Harassment, and Retaliation

      (12)  Duty To Intervene

        (a)   Failure to intervene or attempt to intervene as required when another employee is known to be involved in misconduct, unethical behavior, or other violations of policy or law

            **NOTE**: The Duty to Intervene violation level will match the classification level of the original policy violation or misconduct that required intervention.

   B.   **Class I Violations** – Increased severity of a policy violation and/or disregard of policy

      •   Class I violations will be referred to the Police Chief for an eight (8) or 24-hour suspension without pay

      (1)  <u>General Requirements/Job Performance</u>

        (a)   Abuse of leave benefits

        (b)   Intentionally missing a court appearance after proper notification/subpoena

        (c)   Intentionally missing a scheduled mandatory training after proper notification

        (d)   Obtaining any information for personal use via the record management system/s, such as MDC/CAD/National Crime Information Center (NCIC)/Arizona Crime Information Center (ACIC)

        (e)   Uncooperative and/or interfered with a traffic-related investigation (on duty, off duty, or off-duty)

        (f)   While on duty, any access to an adult/pornographic or otherwise similar inappropriate web site on any accessible computer system to include a City owned smart phone device

        (g)   Improper use of City property, another's, or personal equipment (used as part of employment), including computer, uniforms, vehicle, etc.

| | |
|---|---|
| **POLICY VIOLATIONS INDEX** | **Operations Order** <br> **2.1.01** |
| **PHOENIX POLICE DEPARTMENT**    Rev. 02/18/25 | PAGE 7 |

4.   B.   (1)   (h)   The incident resulted in major damage/loss or impact to the Department ($5,000+) (this does not apply to out of policy traffic collisions which are covered in sections 2.A.(3) and 3.A.4 of this order)

(i)   Attempt/s to convert an enforcement contact (victim, witness, suspect, investigative lead (IL), informant, traffic violator) into a social relationship (on duty contact)

(j)   Failure to impound, control, properly secure evidentiary items as directed by policy

(k)   Failure to complete multiple reports over time as required, such as IRs, Incident Supplements, ACRs, or other required paperwork

(l)   Neglect of duty

(m)   Failure to adhere to driver qualifications as listed in AR 2.96

(n)   As defined in the Classification Guidance Criteria, section 4, of this order

(2)   Firearms

(a)   Sworn employee on duty or working off duty in a police capacity or a detention officer on duty carrying/deploying with an unauthorized or unapproved firearm (handgun, shotgun, or rifle) in violation of policy

(b)   Sworn employee taking action with an unauthorized or unapproved firearm (handgun, shotgun, or rifle) while off duty and not working in a police capacity

(c)   Negligent loss of or damage to a City owned firearm

(3)   Use of Force – Force Not Within Policy

(a)   Use of a TEW (Injury)

(b)   Striking another person (Hard Empty Hand Techniques/Expandable Baton/Improvised Impact Weapon) (Injury)

(c)   Use of Irritants (Injury)

(d)   Use of Direct Impact Munitions (40mm/PepperBall®/37mm) (Injury)

(4)   Force-related Policy Violations

- The Force-related policy violation levels for the allegations *Improper Escalation* and *Failure to properly attempt De-escalation strategies* will be equivalent to the potential policy violation level of the related Use of Force applied, regardless of whether there is an actual Use of Force policy violation allegation or not.

(a)   Improper Escalation by involved employee prior to Use of Force during a police incident

(b)   Failure to properly attempt de-escalation strategies prior to Use of Force during a police incident

| | **POLICY VIOLATIONS INDEX** | **Operations Order**<br>**2.1.01** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT**    Rev. 02/18/25 | PAGE 8 |

4.    B.    (4)    (c)    Improper Force-related Decision Making during a police incident

(d)    Failure to properly request or render medical aid for a subject after force was used during a police incident

(5)    <u>Use of Force – Reporting</u>

(a)    Failure of employee to properly and promptly report a Level 2 Use of Force incident to a supervisor

(b)    Failure of a supervisor to properly and promptly submit or review a required Level 2 Use of Force

(6)    <u>Unprofessional Conduct</u>

(a)    Incident not involving an act of violence where elements of a misdemeanor crime are met, regardless of whether the employee was indicted, prosecuted, or convicted

(b)    Soliciting a gratuity

(c)    Violation of <u>AR 2.35, Equal Opportunity Policy</u>: Anti-Discrimination, Harassment, and Retaliation

(d)    Inappropriate Language, as defined in <u>Operations Order 4.7.00, Rules and Regulations</u>

(7)    <u>Operating a City Vehicle</u>

(a)    Overnight use of City vehicle without authorization

(b)    Out of policy traffic collision resulting from a *serious* moving/policy violation (serious injury/hospitalization) and/or criminal traffic behavior without due regard

(c)    Two or more violations listed in section 4.A.(6) of this policy

(8)    <u>Duty To Intervene</u>

(a)    Failure to intervene or attempt to intervene as required when another employee is known to be involved in misconduct, unethical behavior, or other violations of policy or law

**NOTE**:  The Duty to Intervene violation level will match the classification level of the original policy violation or misconduct that required intervention.

C.    **Class II Violations** – Violations that adversely affect Department operations or involve egregious unprofessional behavior

• Class II violations will be referred to the Police Chief or the Discipline Review Board (DRB) for a 24 or 40 hour suspension without pay and possible demotion.

(1)    <u>General Requirements/Job Performance</u>

(a)    Abuse of prescribed medication

(b)    Actions amounted to harassment and/or intimidation of a citizen, or a Department or City employee

| | POLICY VIOLATIONS INDEX | Operations Order **2.1.01** |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT    Rev. 02/18/25 | PAGE 9 |

4.  C.  (1)  (c)  Actions jeopardized the status of a criminal or administrative investigation or prosecution

(d)  Disseminating information obtained from the record management system/s, such as MDC/CAD/NCIC/ACIC, or other public safety databases, without authorization or not within guidelines of the Terminal Operator Certification (TOC) process

(e)  Failure to report, uncooperative, and/or interfered with an administrative and/or criminal investigation

(f)  Installing unauthorized software on the Department network

(g)  Abuse of disability benefits

(h)  Neglect of duty

(i)  Releasing confidential reports, records, and/or information to an unauthorized person

(j)  Unauthorized use of Department funds (non-criminal activity)

(k)  Refusal or failure to obey a direct order resulting in minor damage or impact to the Department

(l)  Inappropriate supervisor/direct subordinate personal relationship that includes sexual activity

(m)  Unjustified arrest or search (willful false arrest or willful illegal search)

(n)  Knowingly submitted an internal written document with false information, excluding an IR or internal investigation.

(o)  Untruthful verbal report, not related or in response to questioning pursuant to a criminal or internal investigation

(p)  Use of position to interfere with prosecution

(q)  Failure to adhere to driver qualifications as listed in AR 2.96

(r)  As defined in the Classification Guidance Criteria, section 4, of this policy

(2)  <u>Firearms</u>

(a)  Civilian employee in possession of a firearm on duty or in a police facility in violation of policy

(b)  Lending City firearm to another employee without authorization

(3)  <u>Use of Force – Force Not Within Policy</u>

(a)  Negligent discharge of a firearm with any Injury to any person

(b)  Striking another person (Hard Empty Hand Techniques/Expandable Baton/Improvised Impact Weapon) who is restrained (no Injury)

(c)  Intentional discharge of a firearm (without Injury)

(d)  Use of prohibited Impact Weapons

| **POLICY VIOLATIONS INDEX** | **Operations Order 2.1.01** |
|---|---|
| **PHOENIX POLICE DEPARTMENT**   Rev. 02/18/25 | PAGE 10 |

4.   C.   (3)   (e)   Use of a TEW on a restrained subject

(f)   Use of Irritants on a restrained subject

(g)   Use of Direct Impact Munitions (40mm/PepperBall®/37mm) on a restrained subject

(4)   <u>Force-related Policy Violations</u>

- The Force-related policy violation levels for the allegations *Improper Escalation* and *Failure to properly attempt De-escalation strategies* will be equivalent to the potential policy violation level of the related Use of Force applied, regardless of whether there is an actual Use of Force policy violation allegation or not

(a)   Improper Escalation by involved employee prior to Use of Force during a police incident

(b)   Failure to properly attempt De-escalation strategies prior to Use of Force during a police incident

(c)   Improper Force-related Decision Making during a police incident

(d)   Failure to properly request or render medical aid for a subject after force was used during a police incident

(5)   <u>Use of Force – Reporting</u>

(a)   Failure of employee to properly and promptly report a Level 3 Use of Force incident to a supervisor

(b)   Failure of a supervisor to properly and promptly submit or review a required Level 3 Use of Force

(6)   <u>Operating a City Vehicle</u>

(a)   Without authorization or authority, excessive speed violation as defined in ARS Title 28 resulting in an out of policy traffic collision (serious injury [hospitalization] and/or significant property damage)

(7)   <u>Unprofessional Conduct</u>

(a)   Violation of AR 2.35, Equal Opportunity Policy: Anti-Discrimination, Harassment, and Retaliation

(b)   Unprofessional conduct involving an act of violence where elements of a misdemeanor are met, regardless of whether the employee was indicted, prosecuted, or convicted

(c)   Physical abuse/confrontation towards another employee

(d)   Inappropriate Language, as defined in Operations Order 4.7.00 Rules and Regulations, section 6.B

| | POLICY VIOLATIONS INDEX | Operations Order **2.1.01** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT** | Rev. 02/18/25 | PAGE 11 |

4.  C.  (8)  <u>Duty To Intervene</u>

   (a)  Failure to intervene or attempt to intervene as required when another employee is known to be involved in misconduct, unethical behavior, or other violations of policy or law

   **NOTE**:  The Duty to Intervene violation level will match the classification level of the original policy violation or misconduct that required intervention.

   D.  **Class III Violations** – Violations that are so serious and malicious in nature, they may require immediate intervention by the Police Chief (or designee) for the immediate removal of all employee responsibilities.

   - Class III violations will be referred to the DRB for a possible demotion and/or 40, 80, or 240 hour suspension without pay, or termination or will be referred to the Police Chief (or designee) for a Loudermill Hearing

   (1)  <u>General Requirements/Job Performance</u>

   (a)  Bribery

   (b)  Giving false, incomplete, misleading statements, or willful omissions during an investigation

   (c)  Knowingly submitted a criminal investigation/internal investigation report with false information

   (d)  Illegal use of drugs

   (e)  Reported to work with drugs or alcohol (.02 or above) in their system

   (f)  Operated a City vehicle with drugs or alcohol (.02 or above) in their system

   (g)  Operated a vehicle while under the influence of drugs or alcohol (.08 or above) DUI (on duty, off duty, or off-duty employment)

   (h)  Non-authorized consumption of alcohol while on duty

   (i)  Consumption of alcohol or drugs while working off-duty as a peace officer

   (j)  Unable to perform essential job duties (court imposed prohibited possessor, AzPOST decertification of peace officer status)

   (k)  Racial profiling/civil rights type violations (enforcement based solely on race, color, religion/creed, sex/gender, ethnic or national origin, age, sexual orientation, gender identity or expression, disability, or economic status)

   (l)  Refusal or failure to obey a lawful direct order resulting in major damage or impact to the Department

   (m)  Refusal to take, tampering with, or failure of the substance abuse screening test

   (n)  With the intent to defraud, submitting any type of report (overtime, employee reimbursement, etc.) for monetary gain

   (o)  Neglect of duty

| ![Phoenix Police Badge] | **POLICY VIOLATIONS INDEX** | **Operations Order** **2.1.01** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT**    Rev. 02/18/25 | PAGE 12 |

4.    D.    (1)    (p)    Failure to adhere to driver qualifications as listed in AR 2.96

(q)    As defined in the Classification Guidance Criteria, section 4, of this policy

(2)    <u>Unprofessional Conduct</u>

(a)    Unprofessional conduct where elements of a felony are met, regardless of whether the employee was indicted, prosecuted, or convicted

(b)    Consensual sexual contact (on duty or off-duty employment)

(c)    Soliciting an act of prostitution

(d)    Violation of AR 2.35, Equal Opportunity Policy: Anti-Discrimination, Harassment, and Retaliation

(e)    Inappropriate Language, as defined in Operations Order 4.7.00 Rules and Regulations, section 6.B

(3)    <u>Use of Force – Force Not Within Policy</u>

(a)    Intentional Use of Deadly Force (e.g. firearm or vehicle)

(b)    Uses of Force on a restrained Person (with Injury)

(c)    Use of Restricted Deadly Force option in violation of policy, as defined by Operations Order 1.5.00.5.E

(4)    <u>Force-related Policy Violations</u>

- The Force-related policy violation levels for the allegations *Improper Escalation* and *Failure to properly attempt De-escalation strategies* will be equivalent to the potential policy violation level of the related Use of Force applied, regardless of whether there is an actual Use of Force policy violation allegation or not.

(a)    Improper Escalation by involved employee prior to Use of Force during a police incident

(b)    Failure to properly attempt De-escalation tactics or techniques prior to Use of Force during a police incident

(c)    Improper Force-related Decision Making during a police incident

(d)    Failure to properly request or render medical aid for a subject after force was used during a police incident

(5)    <u>Duty To Intervene</u>

(a)    Failure to intervene or attempt to intervene as required when another employee is known to be involved in misconduct, unethical behavior, or other violations of policy or law

**NOTE**:    The Duty to Intervene violation level will match the classification level of the original policy violation or misconduct that required intervention.

| | POLICY VIOLATIONS INDEX | Operations Order 2.1.01 |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT    Rev. 02/18/25 | PAGE 13 |

5. **CLASSIFICATION GUIDANCE CRITERIA**

A. This section identifies non-specific violations of policy not listed in this order which amount to general requirements/job performance either on duty, off duty, or off-duty employment.

B. Failure to investigate a subordinate's act of misconduct or a citizen's complaint per policy will result in disciplinary action equal to the classification level of the misconduct not investigated.

C. The following are general guidelines used for classification in each category; each point does not have to be met for placement within a specific category:

| |
|---|
| **(1)  Disregard for policy that requires a written reprimand** |
| • The employee has received prior recent discipline for the same violation |
| • The incident did not involve violent conduct |
| **(2)  Class I violation: Referral to Police Chief for an eight (8) or 24 hour suspension** |
| • The incident resulted in minor physical injury to employee/s or citizen/s |
| • Extreme disrespect or willful mistreatment of a citizen or employee beyond that of rude conduct was displayed |
| • Aggravated circumstances outweigh all other factors where conduct is egregious to the extent that a suspension is prudent |
| **(3)  Class II violation: Referral to Police Chief or DRB for a 24 or 40 hour suspension and/or demotion** |
| • The incident jeopardized the status of a criminal or internal investigation |
| • The incident involved violent conduct |
| • The incident involved the inappropriate use of police powers, authority, and privileges |
| • The incident resulted in major reputation damage or discredit to the City or Department |
| • The incident resulted in major damage/loss to City, personal, or a citizen's property |
| • The incident resulted in serious physical injury to employee/s or citizens |
| • The incident involved an integrity issue not related to a criminal or internal investigation |
| **(4)  Class III violation: Referral to DRB for a possible demotion and/or 40, 80, or 240 hour suspension, or termination or referral to the Police Chief (or designee) for a Loudermill Hearing** |
| • The conduct was so outrageous that attempts to correct performance would be fruitless |
| • The employee's actions violated the oath of office or basic Department values |
| • The incident involved an integrity issue related to a criminal or internal investigation |
| • The incident involved the intentional abuse of police powers, authority, and privileges |

| Last Organizational Review: |
|---|
|  |

# EXHIBIT F

2.1.00 Discipline Policy and Review Boards

| | DISCIPLINE POLICY AND REVIEW BOARDS | Operations Order 2.1.00 |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT    Rev. 01/20/26 | PAGE 1 |

## 1. PURPOSE/GENERAL INFORMATION

A. Under the direction of the Police Chief, it is the Department's intent to administer discipline for both sworn and civilian employees in accordance with City and Department policies in a manner which is fair, impartial, and consistent to all employees.

- Any violation of City or Department policy, whether the employee is on duty, off duty, or off-duty (working off duty in a police capacity), may result in discipline.

B. Discipline and/or coaching/supervisor initiated training is intended to correct inappropriate behavior or policy violations that have a negative impact on providing services to the community and/or police operations.

(1) If an employee is to receive discipline of a written reprimand, suspension, demotion, or termination, as defined in this order and Addendum A of this order, a supervisory investigation/citizen complaint investigation must be completed.

- Investigation procedures outlined in Operations Order 2.2.00, Misconduct Investigations, and the employee association's Memorandum of Understanding (MOU)/ Memorandum of Agreement (MOA), **will be** followed.
- Only sustained violations will be considered for discipline.

(2) An investigation **is not** required when a coaching/supervisor initiated training or supervisory counseling is conducted/issued to improve performance.

C. Repeated violations of policy may result in discipline.

D. In the case of a performance issue/minor policy violation where the employee does not have any previous performance issues/minor policy violations during the same performance rating year, documentation in the employee's Performance Management Guide (PMG) and/or coaching/supervisor initiated training may be offered by the employee's chain of command to prevent future violations of the same policy/procedure.

(1) The employee's supervisor will document the performance issue/minor policy violation and corrective action implemented in the supervisor notes.

- The employee **will be** provided a copy of the supervisor notes on a monthly basis for review and signature as a receipt.

(2) Following approval by the commander/administrator to issue coaching/supervisor initiated training rather than discipline; the affected employee will be notified of the deviation.

(3) If a performance issue/minor policy violation is documented in the employee's PMG, the employee will be given specific goals to improve their performance.

- If goals are not met, the employee will be subject to the unscheduled PMG process.
- Repeat 'Not Met' performance which has been documented in the employee's PMG may result in discipline.

## 2. DEFINITIONS/GENERAL GUIDELINES - Repeat violations are subject to progressive discipline (see Progressive Discipline Table in section 4 of this order)

| A. Minor Policy Violations | • Acts not involving repeat offenses or a reckless disregard for policy<br>• May be deemed as a performance issue<br>• Possible corrective action:<br>   * Coaching/supervisor initiated training<br>   * Documentation on the employee's PMG<br>   * Supervisory counseling |
|---|---|

| DISCIPLINE POLICY AND REVIEW BOARDS | Operations Order 2.1.00 |
|---|---|
| PHOENIX POLICE DEPARTMENT — Rev. 01/20/26 | PAGE 2 |

2.  **DEFINITIONS/GENERAL GUIDELINES** - Repeat violations are subject to progressive discipline (see Progressive Discipline Table in section 4 of this order)  (Continued)

| | | |
|---|---|---|
| **B.** | **Coaching** | • A type of "non-disciplinary" counseling designed to help the employee gain greater competence and confidence<br>• Assists in overcoming barriers to improve employee performance<br>• Used in situations where the employee needs skill development, desires to improve job performance, is not working up to standards, behavior change is needed, and/or desires career advancement |
| **C.** | **Supervisory Counseling** | • A type of "non-disciplinary" counseling conducted in a face-to-face meeting between the supervisor and the employee<br><br>    **EXCEPTION**:  Per Unit 4's [Phoenix Law Enforcement Association (PLEA)] MOU, a supervisory counseling **is** formal discipline.<br><br>• Will be documented on a Supervisory Counseling Form 80-582D which will be signed/dated by the employee to ensure the employee understands the purpose of the counseling and documentation<br>• Must be signed by the employee within two (2) weeks of being advised the supervisory counseling has been issued<br>• Does not require the issuance of an Notice of Violation (NOI) or the completion of an investigation<br>• Must be included in a Unit 4 employee's Department personnel file<br>• May also be documented in the employee's performance evaluation and in sustained misconduct investigations, in accordance with the MOU/MOAs |
| **D.** | **Written Reprimand Violations** | • Acts involving repeat offenses or a disregard for policy<br>• Listed in Addendum A of this order<br>• Possible discipline:<br><br>    ∗  Written reprimand<br>    ∗  Eight (8) or 24 hour suspension |
| **E.** | **Written Reprimand Form 14-8D** | • Disciplinary documentation detailing a policy violation which requires the authorization of a bureau/precinct commander/administrator<br>• Must be reviewed and signed by the employee and a copy given to the employee<br>• Requires the issuance of an NOI and the completion of an internal investigation<br>• Must be included in the employee's Department personnel file<br>• Information detailed in a Written Reprimand form may be documented in the current performance evaluation year.<br>• If within three (3) years of the date of NOI, information in a Written Reprimand form will be documented in sustained misconduct investigations. |
| **F.** | **Suspension** | • A mandatory temporary leave from work without pay from eight (8) to 240 hours<br>• Will be authored by the City Human Resources Department |
| **G.** | **Class I Violations** | • Acts involving an increased disregard for policy<br>• Will be referred to the Police Chief<br>• Listed in Addendum A of this order<br>• Possible discipline:<br><br>    ∗  Eight (8) or 24 hour suspension |
| **H.** | **Class II Violations** | • Acts adversely affecting Department operations or involve egregious unprofessional behavior<br>• Will be referred to the Police Chief or Discipline Review Board (DRB)<br>• Listed in Addendum A of this order<br>• Possible discipline:<br><br>    ∗  24 or 40 hour suspension<br>    ∗  Demotion |
| **I.** | **Class III Violations** | • Acts so serious and malicious in nature, they may require immediate intervention by the Police Chief (or designee) with the immediate removal of all employee responsibilities<br>• May be subject to a Loudermill Hearing or referred to the DRB<br>• Listed in Addendum A of this order |

| | | | Operations Order |
|---|---|---|---|
| | **DISCIPLINE POLICY AND REVIEW BOARDS** | | **2.1.00** |
| | **PHOENIX POLICE DEPARTMENT** | Rev. 01/20/26 | PAGE 3 |

2. **DEFINITIONS/GENERAL GUIDELINES** - Repeat violations are subject to progressive discipline (see Progressive Discipline Table in section 4 of this order) (Continued)

| I. | Class III Violations (Continued) | • Possible discipline:<br><br>    * 40, 80, or 240 hour suspension<br>    * Demotion<br>    * Termination |
|---|---|---|
| J. | Demotion | • The removal of an employee from a position in a higher pay class to a position in a lower class for which the maximum rate of pay is lower. |
| K. | Termination | • A mandatory dismissal from employment<br>• When an employee is terminated, the employee will receive:<br><br>    * A statement citing the reason for termination<br>    * A statement of the effective date of the termination<br>    * A statement of the status of fringe and retirement benefits after termination<br>    * A statement regarding the content of the employee's employment record relating to the termination |
| L. | Loudermill Hearing | • Determination of employment status by the Police Chief (or designee) without an Investigative Review Process (IRP) or referral to the DRB<br>• Probationary provisions are outline in Personnel Rule (PR) 10, Probation. |
| M. | Classification Guidance Criteria | • Unprofessional conduct violations not listed in Addendum A of this order |

**NOTE**: See the current MOU/MOA for more information

3. **OFFENSES THAT MAY RESULT IN DISCIPLINARY ACTION**

   A. Any violation of policy, on duty, off duty, or off-duty, may result in discipline, regardless of whether or not the violation is specifically listed in the Policy Violations Index.

   B. Employees may recommend, by memorandum through their chain of command to the Police Chief, a new category be created and rated into Written Reprimand Violations, Class I Violations, Class II Violations, and Class III Violations, as outlined in Addendum A of this order.

   • The memorandum will be authored in accordance with Operations Order 3.8.00, Written Directives.

4. **PROGRESSIVE DISCIPLINE**

   A. Progressive discipline is a process of review and consideration of the employee's history of discipline as a factor for a recommendation of discipline on new sustained policy violations.

   B. With commander approval, the following criteria will be used when the chain of command utilizes progressive discipline:

   (1) An employee who has received a non-disciplinary coaching/supervisory initiated training for a minor policy violation and either repeats the same minor policy violation or is found to be in violation of other minor policy violation/s within the time limits, is subject to either a supervisory counseling or written reprimand.

   (2) An employee who has received a supervisory counseling for a minor policy violation and either repeats the same minor policy violation or is found to be in violation of another minor policy violation within the time limits, is subject to either a second supervisory counseling or written reprimand.

   (3) An employee who has received a written reprimand and is found to be in violation of a minor policy violation (supervisory counseling designation) within the time limits, is subject to either a supervisory counseling or second written reprimand.

| | DISCIPLINE POLICY AND REVIEW BOARDS | Operations Order 2.1.00 |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT       Rev. 01/20/26 | PAGE 4 |

4.    B.    (4)    An employee who has received a written reprimand and either repeats the same minor policy violation or is found to be in violation of another policy violation (written reprimand designation) within the time limits, is subject to either a written reprimand or being referred to the Police Chief for an eight (8) or 24 hour suspension.

(5)    An employee who has received a suspension and is found to be in violation of a minor policy violation (supervisory counseling designation) within the time limits, is subject to either a supervisory counseling or written reprimand.

(6)    An employee who has received a suspension and is found to be in violation of another policy violation (written reprimand designation) within the time limits, is subject to either a written reprimand or being referred to the Police Chief for an eight (8) or 24 hour suspension.

(7)    An employee who has received a suspension and is found to be in violation of a Class I or Class II violation listed within the Policy Violations Index within the last five (5) years from the date of NOI, will be referred to the Police Chief or DRB for a possible demotion and/or a 24, 40, 80, or 240 hour suspension, or termination or will be referred to the Police Chief (or designee) for a Loudermill Hearing.

(8)    An employee who has two suspensions and is found to be in violation of a Class I, Class II, or Class III policy violation listed within Addendum A of this order within the last five (5) years from the date of NOI, will be referred to the Police Chief or DRB for a possible demotion and/or a 40, 80, or 240 hour suspension, or termination or will be referred to the Police Chief (or designee) for a Loudermill Hearing.

C.    Progressive Discipline Table  -  Time periods for progressive discipline are based on the date of the NOI.

| If Corrective Action/Discipline Would Be: | Corrective Action/Discipline May Become: |
|---|---|
| • Second coaching within 12 month period | • Supervisory counseling<br>• Written reprimand |
| • Second supervisory counseling within a 12 month period | • Supervisory counseling<br>• Written reprimand |
| • Supervisory counseling when the employee already has a written reprimand (within a (3) year period) | • Supervisory counseling<br>• Written reprimand |
| • Second written reprimand within a three (3) year period | • Written reprimand<br>• Police Chief suspension (eight (8) or 24 hours) |
| • Supervisory counseling when the employee already has a suspension (within a five (5) year period) | • Supervisory counseling<br>• Written reprimand |
| • Written reprimand when the employee already has a suspension (within a five (5) year period) | • Written reprimand<br>• Police Chief suspension (eight (8) or 24 hours) |
| • Second suspension within a five (5) year period | • Police Chief or DRB suspension (24, 40, 80, or 240 hours)<br>• Demotion<br>• Termination<br>• Loudermill Hearing |
| • Third suspension within a five (5) year period | • Police Chief or DRB suspension (40, 80, or 240 hours)<br>• Demotion<br>• Termination<br>• Loudermill Hearing |

| | DISCIPLINE POLICY AND REVIEW BOARDS | Operations Order **2.1.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT**    Rev. 01/20/26 | PAGE 5 |

5. **DISCIPLINE PROCESS OVERVIEW - INVESTIGATING SUPERVISOR'S RESPONSIBILITY**

| A.  **Process** | • Establish the identity of a minor policy violation, written reprimand violation, or an allegation of a Class I, Class II, or Class III violation<br>• If the alleged violation is considered a Class I, Class II, or Class III violation as defined in Addendum A of this order, immediately contact the Professional Standards Bureau (PSB) to commence an internal investigation.<br>• Research employee's prior discipline (if applicable) and work history:<br><br>   * See the Progressive Discipline Table in section 4 of this order<br><br>• Complete the Investigative Review Control (IRC) Form 80-58DD<br>• Prepare final recommendation<br>• Submit to commander/administrator for review and recommendation<br>• Prepare final documentation on appropriate form |
|---|---|

6. **DISCIPLINE OVERVIEW**

A. If a supervisory-initiated investigation or citizen complaint investigation has been completed and an allegation of misconduct is sustained, supervisors will refer to the Policy Violations Index.to determine proper recommendations for discipline.

   (1) Repeated sustained policy violations may be referred to the DRB if lesser means of discipline have not improved performance or corrected the behavior.

   (2) For employees responsible for Performance Achievement Plans (PAPs), the Police Chief is the final authority on determining discipline.

   (3) Depending on the seriousness of the sustained violation of policy or the continued repeat violations of policy, in consultation with the Police Chief, a Loudermill Hearing may be recommended.

   (4) The most serious violation among the sustained violations will be designated the primary violation.

   (5) Other sustained violation/s will be considered aggravating circumstances.

B. Placement Recommendations Based on Addendum A of this Order

   (1) When the investigation process is complete [investigation is presented to the employee to prepare for the Investigative Review Process (IRP)], the investigating supervisor will research the employee's discipline history within the following time restrictions calculated from the date that the employee received the discipline.

      • If the investigation is conducted by PSB, the chain of command will complete the work history (see Operations Order 2.2.00 for information regarding work history).

   (2) Coaching/supervisor initiated training/discipline outside the time restrictions will not be considered, see the table below for time restrictions:

| (a) **Supervisory Counseling** | • One (1) year |
|---|---|
| (b) **Written Reprimand** | • Three (3) years |
| (c) **All Suspensions** | • Five (5) years |
| (d) **Demotion** | • Five (5) years |

   **NOTE**: Employees may request a modification of time restrictions (for compounding purposes) by submitting a memorandum through their chain of command to the Police Chief.

| | **DISCIPLINE POLICY AND REVIEW BOARDS** | **Operations Order** **2.1.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT**    Rev. 01/20/26 | PAGE 6 |

6.    B.    (3)    The investigator will use the most serious of the current sustained violation/s as the primary violation within Addendum A of this order, with additional sustained violation/s listed.

7.    **PROCESS TO RECOMMEND DISCIPLINE OR NON-DISCIPLINE COACHING/SUPERVISOR INITIATED TRAINING**

A.    Minor policy violations may be treated as non-disciplinary performance issues.

(1)    In addition to coaching, supervisors may recommend remedial training as part of the non-disciplinary process.

(2)    Supervisors will document the coaching/supervisor initiated training within their supervisor notes and will provide a monthly copy to the employee for review and signature.

B.    Employees who are found to have multiple minor policy violations and have received coaching/supervisor initiated training within the same performance evaluation year, may be subject to a supervisory counseling or written reprimand.

- The employees' chain of command will take into consideration both aggravating and mitigating factors prior to the issuance of a written reprimand.

C.    Employees who are found to have sustained Class I, Class II, or Class III violations will be referred to the Police Chief or DRB as outlined within Addendum A of this order.

D.    Mitigating and Aggravating Factors

- During the DRB review process, mitigating and aggravating factors will be considered.

E.    Chain of Command Final Recommendations  -  After the internal investigation and prior discipline or non-disciplinary history processes are completed, and it is determined discipline is appropriate, the employee's chain of command will determine the course of action (see the Progressive Discipline Table in Addendum A of this order for more information).

(1)    If **extreme mitigating or aggravating factors exist** relative to the policy violation and/or the employee has a prior Class I or Class II violation, the commander/administrator may request to deviate from the standard recommended level of disciplinary action in Addendum A of this order upon approval of the Police Chief.

(a)    A memorandum will be written and forwarded through the chain of command to the Police Chief.

(b)    The affected employee will be provided a copy of the memorandum.

(c)    The Police Chief may request the commander/administrator and/or the employee (with association representation if desired by the employee) attend a meeting to discuss the deviation request.

(2)    When an employee's sustained violation of policy is considered to be a Class III violation or a repeat of any Class I or Class II violation and the employee has received a suspension within the last five (5) years, the employee's chain of command may recommend to the Police Chief that a Loudermill Hearing be scheduled.

(a)    If the option is a Loudermill Hearing, the involved employee will be given notice at least five (5) working days prior to the hearing and will be provided with a copy of all supporting documentation.

- Employees should be advised to contact the City Human Resources Department in order to make arrangements for benefits.

| | DISCIPLINE POLICY AND REVIEW BOARDS | Operations Order 2.1.00 |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT    Rev. 01/20/26 | PAGE 7 |

7. E. (2) (b)  The involved employee and a representative (if the employee requests) may attend the Loudermill Hearing.

   **NOTE**:  If a Loudermill Hearing is conducted, an IRP **will not** be conducted.

F. Consideration by the DRB

   (1)  Investigations with sustained violations which meet the criteria for a suspension, demotion, or termination will be forwarded through the employee's division chain of command to the DRB.

   **EXCEPTION**:

   (a)  A DRB is not required for a probationary employee who does not possess Civil Service appeal rights or an employee in a non-classified position, exceptions may be granted by the Police Chief or designee.

   (b)  Based upon a recommendation and approval of the Police Chief, a Loudermill Hearing will be conducted by the Police Chief or designee in lieu of a DRB in cases where the conduct of the employee is egregious in nature, or based on job performance.

   (2)  Based upon the employee's chain of command's recommended level of discipline shown within Policy Violations Index the DRB will consider a 40, 80, or 240 hour suspension and/or demotion, or termination.

   - If articulable facts that may mitigate the discipline have been presented to the DRB by the employee or the employee's representative, the DRB chairperson will make a recommendation within the range of the sustained classification.

   (3)  During the DRB executive session, board members will weigh mitigating and aggravating factors to determine the final discipline.

   (4)  The employee's commander/administrator may address the DRB and make a recommendation to the board for a level of discipline.

   (5)  The chairperson of the DRB will make a recommendation to the Police Chief, and mitigating factors may be provided for consideration in determining final level of discipline.

   (6)  Once an employee receives discipline for an allegation, they will not receive any additional discipline for the same specific allegation and/or incident of misconduct.

   (7)  The Police Chief is the final authority on discipline.

G. Serving a Suspension  -  Suspension time should begin within 30 days of the date of discipline as determined by the supervisor/operational need.

   (1)  Unit 6 employees [Phoenix Police Sergeants and Lieutenants Association (PPSLA)] may exchange up to 30 hours of vacation time while serving a suspension; however, when this benefit is elected, the employee must report for duty during the exchange hours.

   (2)  Employees who receive a suspension of 40 hours or less will serve the suspension on consecutive days.

   (3)  Employees who receive a suspension of 40 hours or more must serve a minimum of 40 hours per pay period until the suspension is completed.

| | DISCIPLINE POLICY AND REVIEW BOARDS | Operations Order 2.1.00 |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT | Rev. 01/20/26 PAGE 8 |

8. **TYPES OF REVIEW BOARDS**

| A. | Driving Analysis Committee (DAC) | • Objectively reviews police equipment accidents, pursuits, and other employee driving incidents to determine if the action was in or out of policy and to recommend corrective action |
|---|---|---|
| B. | Discipline Policy Committee | • Reviews classes of discipline as needed<br>• Makes recommendations to the Police Chief |
| C. | Disciplinary Review Board (DRB) | • Reviews all disciplinary reports that have been reviewed by an assistant chief that may lead to a suspension, demotion, or termination; probationary employees, non-classified employees, or violations in Addendum A of this order which are designated as termination<br>• Reviews all disciplinary reports that have been reviewed by an assistant chief that may result in either a suspension up to and including termination<br>• Unless directed by the Police Chief, the DRB will not review an investigation that requires termination for the purposes of recommending discipline.<br>• Reviews all use of force incidents found to be out of policy by the Critical Incident Review Board<br>• Make recommendations to the Police Chief regarding the degree and severity of disciplinary action to be taken<br>• Will not review matters involving employees responsible for a PAP |
| D. | Critical Incident Review Board | • Conducts timely reviews into employee and Fire arson investigator involved shootings and other use of force incidents<br>• Examines all related support documentation surrounding employee and Fire arson investigator involved shootings and other use of force incidents to determine if the incident was consistent with established Department/Fire Department policy<br>• Examines all related policies and procedures governing the administrative handling of employee and Fire arson investigator involved shootings and other use of force incidents<br>• Responsible for making recommendations for change necessary for maintaining Department/Fire Department policy accountability, control and integrity, or training methods |

9. **SELECTION OF REVIEW BOARD/COMMITTEE MEMBERS**

   A.   Review Board Members

| TYPE OF BOARD | SWORN EMPLOYEES | CIVILIAN EMPLOYEES |
|---|---|---|
| (1) Driving Analysis Committee (DAC) | • Traffic Bureau commander - chairperson<br>• Tactical Support Bureau (TSB) commander<br>• One (1) rotating precinct/bureau commander<br>• Driver training supervisor or designee<br>• Two (2) Traffic Bureau lieutenants (one (1) from the Traffic Unit and one (1) from the Vehicular Crimes Unit)<br>• One (1) Vehicular Crimes Unit (VCU) supervisor<br>• Representatives from each employee association [PLEA, PPSLA, American Federation of State, County, and Municipal Employees (AFSCME), and Administrative, Supervisory Professional and Technical Employee Association (ASPTEA)] | • Same as for sworn employees |
| (2) Discipline Policy Committee | • Police Chief - chairperson<br>• PSB commander<br>• Representative from City Human Resources<br>• Representative from each employee association (PLEA, PPSLA, AFSCME, and ASPTEA) | • Same as for sworn employees |

| | DISCIPLINE POLICY AND REVIEW BOARDS | Operations Order 2.1.00 |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT     Rev. 01/20/26 | PAGE 9 |

9.  A.  Review Board Members  (Continued)

| TYPE OF BOARD | SWORN EMPLOYEES | CIVILIAN EMPLOYEES |
|---|---|---|
| (3) Disciplinary Review Board (DRB) | • One (1) assistant chief - chairperson<br>• Two (2) commanders<br>• Three (3) employee peers<br>• Three (3) Phoenix citizens | • One (1) assistant chief - chairperson*<br>• One (1) civilian administrator<br>• One (1) commander<br>• Two (2) employee peers<br>• Two (2) Phoenix citizens |
| (4) Critical Incident Review Board | • One (1) executive staff member (assistant chief or director appointed chair by the Police Chief)<br>• One (1) commander for employees or one (1) deputy chief for Fire arson investigators<br>• One (1) employee peer<br>• Three (3) Phoenix citizens | • Same as for sworn employees |
| **NOTE:** *Permanent members | | |

B.  Guidelines for Selection of Board Members

(1)  General Guidelines

(a)  Members of each board will be selected on a rotating basis, except for the permanent members.

(b)  Individuals in the affected employee's chain of command will not be selected to participate in the review board.

(c)  The employee peer/s selected to serve on the board cannot be currently assigned to the affected employee's bureau/precinct.

(d)  The Police Chief may participate in the inquiry and examination of any person appearing before the Critical Incident Review Board.

(2)  Specific Guidelines for the Critical Incident Review Board

(a)  Alternates  -  The other assistant chiefs are alternate members of the Critical Incident Review Board and will be invited to participate on boards when the Police Chief is not available or a conflict of interest exists.

(b)  Advisory Members

| (i) Training Bureau Firearms Training Supervisor | • Serves in an advisory capacity to the board when the incident involves the discharge of a firearm |
|---|---|
| (ii) Training Bureau Non-Lethal Force Supervisor | • Serves in an advisory capacity to the board in selected use of force incidents |
| (iii) Legal Unit Attorney | • Shall serve with the board to provide legal assistance and advise<br>• May participate in the inquiry, however, is not a member of the board |

(c)  Specialized Assistance  -  The assistant chief who chairs the board may request the presence of additional Department personnel if specialized or technical expertise is required.

10.  **ADMINISTRATION OF REVIEW BOARDS**

A.  Notification of Involved Employee/s  -  The employee/s or Fire arson investigator involved in an incident to be brought before a review board will be notified of the board in writing at least 10 calendar days prior to the meeting.

| | DISCIPLINE POLICY AND REVIEW BOARDS | Operations Order **2.1.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT**    Rev. 01/20/26 | PAGE 10 |

10. A. (1) <u>DRB</u>  -  The notification will contain:

- Date and time of the board
- Violation/s
- Basis of each violation that has been sustained
- Name of board members and any board member substitutions
- Investigation number

(2) <u>Critical Incident Review Board</u>  -  The notification will contain:

- Date and time of the board
- Type of incident such as a shooting, animal dispatch, or accidental discharge
- Name of board members and any board member substitutions
- Investigation number

B. <u>Board Recommendations</u>

(1) <u>All Boards</u>  -  After reviewing an incident, the appropriate review board will make a recommendation and submit it to the appropriate Police Chief or Fire Chief.

(a) Such recommendations are advisory only.

(b) Recommendations of the board will be included in the permanent record of the disciplinary report.

11. **SPECIFIC GUIDELINES FOR REVIEW BOARDS**

A. <u>DRB</u>

(1) <u>Incidents for Review</u>

(a) All employee use of force incidents found to be out of policy by the Critical Incident Review Board.

(b) All other disciplinary reports involving:

- Criminal acts (for which the employee has been found guilty or has entered into a plea agreement)
- Violations of law
- Violations of the rules and regulations of the Department that are classified as a suspension, demotion, or termination

(2) <u>Incidents That May Bypass the DRB</u>  -  Cases involving serious violations of the law or rules and regulations the Department to the extent that the employee could be immediately terminated from employment may bypass the board and be referred to the Police Chief or designee for action through the chain of command.

(3) <u>Employees Appearing Before the DRB</u>

(a) Employees and their unit representative shall have the right to appear before the Department DRB when disciplinary matters involving the employee are brought before the board.

(b) The purpose of such an appearance is to give employees an opportunity to respond to any sustained assertions made against them.

(c) Employees may submit relevant written material in support of their position.

| | DISCIPLINE POLICY AND REVIEW BOARDS | Operations Order 2.1.00 |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT    Rev. 01/20/26 | PAGE 11 |

11. A. (3) (d) Any appearance before the board during employees' regular work shift shall be counted as time worked.

     (e) Employees are not eligible for overtime pay when appearing before the board during other than regular work shift hours.

  (4) Meeting With Supervisors Prior to the DRB

     (a) Employees may meet with their immediate supervisor and second level supervisor or the bureau/precinct commander/administrator to discuss the matter being reviewed by the board.

- Employees may be accompanied by an employee association/unit representative.

     (b) If the immediate supervisor conducted the investigation, employees may meet with the next supervisor in their chain of command

- Such a request shall be made in writing to the immediate supervisor.
- An employee association/unit representative may accompany the employee to the meeting.

  (5) Employee Association/Unit Representative

     (a) Employees and their employee association/unit representative may be present in the board hearing room to passively observe all presentations made to the board and to be present for all responses made to questions by board members.

     (b) If the employee desires, employee association/unit representatives are permitted to present information on the employee's behalf.

     (c) All non-board members will be excluded from the boardroom during deliberations.

B. Critical Incident Review Board

  (1) The Police Chief may direct the review by the Critical Incident Review Board (CIRB) or CIRB Chair Review of any use of force incident involving an employee or agent of the Department regardless of the specific circumstances.

  (2) Incidents for Review - The board is specifically empowered to conduct reviews of the following employee/Fire arson investigator involved use of force incidents:

| (a) Class I | Any unintentional discharge of a weapon without injury, which includes but is not limited to, firearms training, practice, or general handling of the weapon |
|---|---|
| (b) Class II | Any intentional shooting or attempted shooting of an object or animal, whether or not such object or animal is actually struck |
| (c) Class III | Any intentional or unintentional incident in which any of the following conditions occurred:<br><br>• Any time a person is injured or killed by an employee's/Fire arson investigator's firearm discharge<br>• Any time an attempt is made to injure a person by discharging a firearm<br>• Any time serious injury is inflicted upon a person by an employee/Fire arson investigator by means other than a firearm (excludes vehicular accidents)<br>• Any time a person dies while in the custody of an employee/Fire arson investigator |
| (d) Class IV | • Any intentional use of a City vehicle against a person on foot or in another vehicle |

| | **DISCIPLINE POLICY AND REVIEW BOARDS** | **Operations Order** **2.1.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT**        Rev. 05/29/25 | PAGE 12 |

11.  B.  (3)   The CIRB chairperson will review all Class I, II, and IV incidents involving vehicles before the board convenes to determine the necessity for a board review of the incident.

- If the chair determines a review is necessary, the review procedure will be used.
- If the chairperson determines a Critical Incident Review Board is not necessary, a memorandum with recommendations will be forwarded to the appropriate Police Chief or Fire Chief for approval.
- For Department employees, the employee's chain of command will be notified of the results and appropriate action will be taken.

(4)   All Class III incidents will automatically be reviewed by the CIRB.

(5)   Taser® Energy Weapon (TEWs)  -  The use of force reports involving a TEW will be forwarded through the chain of command to the involved officer's assistant chief for review.

- At the discretion of the assistant chief, the incident report may be forwarded to the CIRB chairperson for additional review.

(6)   Employees/Fire Arson Investigators Appearing Before the Critical Incident Review Board

(a)   Department employees and Fire arson investigators shall be subject to call before the CIRB.

(b)   The employee/s or Fire arson investigator involved in the use of force incident **will be** required to appear before the board.

- The purpose of such an appearance will be to give the involved employee/s or Fire arson investigator the opportunity to relate the circumstances and decision process in the use of force incident and respond to board questions.
- The employee's or Fire arson investigator's immediate supervisor (at the time of the incident) will accompany the employee/Fire arson investigator to the review board.

(c)   Unit Representation  -  A unit representative may accompany an employee/Fire arson investigator to the CIRB.

- The unit representative may make a statement at the conclusion of the employee's/Fire arson investigator's presentation to the CIRB.

(7)   Critical Incident Review Board Documentation  -  All documentation, including the CIRB recommendations, will be forwarded to the appropriate Police Chief or Fire Chief for review.

(8)   Out of Policy Use of Force Incidents

(a)   A Fire arson investigator's use of force incident found to be out of policy by the Critical Incident Review Board will be referred to the Fire Chief.

(b)   All employee use of force incidents found to be out of policy by the CIRB will be referred directly to the DRB.

(i)   A memorandum will be sent to the affected employee's bureau/precinct commander/administrator to request:

- The employee's five year discipline and commendation record
- The employee's PMG

| | DISCIPLINE POLICY AND REVIEW BOARDS | Operations Order 2.1.00 |
|---|---|---|
| | PHOENIX POLICE DEPARTMENT                 Rev. 05/29/25 | PAGE 13 |

11.  B.   (8)   (b)   (ii)   The above items will be sent to the DRB/CIRB coordinator in the Police Chief's office within five working days for inclusion in the DRB package.

12.  **DRIVING ANALYSIS COMMITTEE (DAC)**

A.   Committee Meetings

(1)   The time and location of the meetings will be announced by the chairperson.

(2)   The presence of any five members constitutes a quorum for doing business.

(3)   Representatives of the labor units are not voting members of the DAC; however, they may observe and discuss issues.

(4)   A Traffic Bureau lieutenant will provide policy guideline assistance.

(5)   In the event of a tie vote, the deciding vote goes to the DAC chairperson.

**NOTE**:    Members will make every effort to reach a consensus on DAC rulings/findings.

(6)   The chairperson may designate one of the other commanders from the committee to serve as chairperson in his/her absence.

(7)   The DAC will review Department involved traffic collisions, pursuits, and other employee driving incidents that may be of concern.

B.   DAC Driving Incident Review Process

(1)   Upon receipt of the traffic collision, pursuit, or driving incident packet by the DAC chairperson or designee, it will be logged in and then forwarded to the Vehicular Crimes Unit (VCU) supervisor for classification:

- For Review
- Not for Committee Review (clearly in policy)

(2)   After review by the VCU supervisor, the reports will be returned to the DAC chairperson or designee and the classification will be added to the log.

- This does not apply to those incidents involving serious injury or death and possible felony prosecution.

(3)   The chairperson will send those reports classified as "Not for Committee Review" to the employees bureau/precinct commander/administrator.

(4)   Reports classified as "For Review", which do not involve possible felony prosecution of the employee, will be reviewed by the DAC, who will deliberate on the following and report its recommendations to the employee's bureau/precinct commander/administrator.

- The extent of the employee's responsibility
- Whether or not the traffic collision, pursuit, or driving incident was within Department policy
- Whether or not the actions and decisions made (outside of policy) resulting in the traffic collision, pursuit, or driving incident were an acceptable deviation from policy

| | **DISCIPLINE POLICY AND REVIEW BOARDS** | **Operations Order** **2.1.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT** | Rev. 05/29/25 | PAGE 14 |

12. B. (5) Reports involving possible felony prosecution of the employee will be forwarded by the VCU supervisor to the Police Chief via the DAC chairperson.

- The Police Chief will determine whether or not to forward the report to the County Attorney's Office.
- After the report has been reviewed by the Police Chief and/or the County Attorney, it will be returned to the DAC for review.

(6) The committee's recommendation for corrective action may consist of one or more of the following:

- Training needs
- Disciplinary/corrective action

    **NOTE**: A supervisory counseling is the minimum corrective action for any out of policy traffic collision unless the option in section 12.B.(10) of this order is allowed.

- In the case of traffic collisions, the issuance of an Arizona Traffic Ticket and Complaint/s (ATTC) is an additional option.
- No corrective action is necessary

(7) Factors for Consideration by the DAC

(a) Mitigating Factors - Employee was involved in direct law enforcement activity which required prompt action, for example:

- During a pursuit
- Response to a call that justifies a rapid response
- An on-view situation requiring immediate action
- Conducting an investigation/surveillance that involves an immediate level of urgency that justifies deviating from driving regulations.

    **NOTE**: Mitigating factors require no serious or flagrant violation of law or Departmental policy.

(b) Non-Mitigating Factors - Employee was not directly involved in law enforcement related activity, for example:

- Driving to or from court
- Driving to or from meal break
- Routine patrol (not enforcement related)
- Routine investigative follow up

(8) The DAC's Recommendation to Issue an ATTC

(a) Employees involved in a traffic collision who have committed a violation that caused the collision (absent mitigating circumstances) should normally be cited for the violation.

(b) The committee may determine mitigating circumstances do exist and the issuance of an ATTC is not appropriate.

(c) The employee's bureau/precinct commander/administrator will direct a supervisor within the bureau/precinct to issue an ATTC to the employee after a review and endorsement to issue the citation is given.

- If that is not possible, the commander/administrator may request the citation be issued by VCU.

| | **DISCIPLINE POLICY AND REVIEW BOARDS** | **Operations Order 2.1.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT**       Rev. 05/29/25 | PAGE 15 |

12.  B.  (8)  (d)  If the employee's precinct/bureau commander/administrator disagrees with the DAC recommendation, the matter will be reviewed by the employee's assistant chief.

(d)  If the employee's assistant chief agrees with the DAC's recommendation, the matter will be referred back to the precinct/bureau commander/administrator for appropriate disposition in accordance with the DAC's findings/recommendations.

(f)  If the employee's assistant chief also disagrees with the DAC's recommendation, the matter, along with new information, will be referred back to the DAC.

- The DAC will further review the matter and submit their decision to change, modify, or retain the original recommendation back to the employee's bureau/precinct commander/administrator for appropriate disposition in accordance with the DAC's findings.

(g)  If the employee's bureau/precinct commander/administrator still disagrees with the DAC's recommendation following the second review process, the matter will again be reviewed by the employee's assistant chief.

(h)  If the employee's assistant chief agrees with the DAC's second review recommendation, the matter will be referred back to the bureau/precinct commander/administrator for appropriate disposition in accordance with the DAC's findings/recommendation.

(i)  If the employee's assistant chief also disagrees with the DAC's second review recommendation, the matter will be referred to the Police Chief.

- The Police Chief will review the matter and render a finding that will be final.
- The matter will then be forwarded back to the employee's bureau/precinct commander/administrator for appropriate disposition in accordance with the Police Chief's decision.

(j)  A copy of the final disposition and any discipline taken in all police vehicle traffic collisions and other investigated driving incidents will be forwarded to the DAC, which will file and maintain the records in the Transportation Bureau.

(k)  Recommendations for training will be forwarded to the driver-training supervisor who will:

- Coordinate appropriate training
- Ensure a permanent record of all remedial/refresher driver training received by an employee is maintained
- Advise the DAC and the employee's bureau/precinct commander/administrator when the training has been satisfactorily completed

(9)  If the DAC sends a case to the DRB for review, the employee, upon request, will receive a copy of the facts supporting the DAC's position.

(10) As an alternative to discipline in an out of policy City equipment traffic collision, the employee's assistant chief may allow the employee the option of reimbursing the City for a loss caused by the employee's negligence.

(a)  This option only applies to losses of up to $1,000.

(b)  If the loss incurred by the City is more than $1,000, the claim will be processed through normal channels.

| | | |
|---|---|---|
| **DISCIPLINE POLICY AND REVIEW BOARDS** | **Operations Order** | **2.1.00** |
| **PHOENIX POLICE DEPARTMENT** | Rev. 05/29/25 | PAGE 16 |

12. B. (10) (c)   If the employee opts to reimburse the City, documentation of the incident will not be placed in the employee's Department file; a notation will be made in the supervisor notes regarding that employee.

(11) Traffic Collision Review Administrative Documentation:

- The DAC chairperson or designee will collect and store the following data from traffic collision investigative reports that have been reviewed by the committee:

  | | |
  |---|---|
  | * Employee's name and serial number | * Incident number |
  | * Employee's assignment | * Cause of traffic collision |
  | * Date of traffic collision | * Was the traffic collision preventable |
  | * Time of traffic collision | * Whether or not officer was at fault |

(12) Driving Incident Review Administrative Documentation - The DAC is responsible for annually:

- Analyzing data from driving incidents that were reviewed by the committee
- Preparing reports on the trend of driving incidents, including pursuits
- Recommending changes to employee driving training
- Reviewing the vehicle pursuit policy

C. File Retention - The following filing procedures will be used by bureau/precinct personnel upon receiving notification from the DAC.

| | |
|---|---|
| **(1) In-Policy Pursuits/Driving Incidents/Traffic Collisions** | • File finding's memorandum in the employee's division file |
| **(2) Out of Policy Pursuits/Driving Incidents/Traffic Collisions** | • File only the board's memorandum of findings, a copy of the suspension notice, written reprimand, or documentation of supervisory counseling in the employee's division file<br>• Document any remedial training given in the employee's supervisory notes<br>• Forward the original Written Reprimand form and backup material to the Fiscal Management Bureau (FMB) records center for placement in the employee's Department file<br>• Forward a memorandum reference action taken regarding the traffic collision/pursuit/driving incident to the Transportation Bureau where it will be combined with the original investigation and retained for five years |

13. **CIVIL SERVICE BOARDS**

A. When the Civil Service Board orders that a suspension, demotion, or termination must be **overturned**, the original discipline notice and **all** copies will be removed from **all** files by FMB and sent to the City's Human Resources director.

(1) The Human Resources director will retain all overturned documentation in a separate file.

(2) The overturned discipline will not be used in any future disciplinary actions or any performance evaluations.

B. When the Civil Service Board orders a suspension, demotion, or termination must be **modified**, the original discipline notice and **all** copies will be removed from **all** files by FMB and sent to the City's Human Resources director.

(1) An amended discipline notice will be returned by the Human Resources director for retention in the employee's file/s.

(2) Only the modified discipline can be used in any future disciplinary actions or any performance evaluations.

| | **DISCIPLINE POLICY AND REVIEW BOARDS** | **Operations Order**<br>**2.1.00** |
|---|---|---|
| | **PHOENIX POLICE DEPARTMENT** | Rev. 05/29/25 | PAGE 17 |

| Last Organizational Review: |
|---|
| |