**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dusten Mullen, et al., | No. CV-26-02911-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Matthew Giordano, et al., | |
| Defendants. | |

On May 4, 2026, this Court held an Order to Show Cause ("OSC") hearing as to why Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction should not be issued. After hearing arguments from Plaintiffs and Defendants, the Court denies Plaintiff's Motion for the following reasons.

## I.    BACKGROUND

Plaintiff's Complaint and Motion aver as follows. Sergent Dusten Mullen is a Phoenix Police Sergeant. On January 30, 2026, Sgt. Mullen—as a private citizen—went to counter protest an anti-ICE student protest in Chandler, Arizona near Hamilton High School where his children attended. (Doc. 1 at 3.) Sgt. Mullen was not on duty, not in uniform, and did not identify himself as a police officer. (*Id.*) He was dressed in a pro-Trump t-shirt and a face covering to conceal his identity. (Doc. 2 at 2.) At the protest, Sgt. Mullen was confronted by the student protestors and assaulted. (*Id.*) Sgt. Mullen reported the assault to Chandler officers at the protest. (*Id.*) When he attempted to walk away as directed by Chandler officers, multiple students followed him, and one threw water

at him.  (*Id.*)  Chandler police ultimately escorted Sgt. Mullen away from the protestors in a patrol car, at which time he provided his true and lawful name for their assault report.  (*Id.*)

That same day, approximately ninety minutes after the encounter, Sgt. Mullen notified his Phoenix Police supervisor that he was assaulted at the protest.  (Doc. 1 at 4.)  The Phoenix Police Department ("PPD") allowed Sgt. Mullen to remain on active duty and full assignment for approximately two-and-a-half months following the January 30, 2026 incident.  (*Id.*)

Pursuant to PPD's Misconduct Investigations Operations Order 2.2.00, all alleged officer misconduct "will be thoroughly investigated."  (Doc. 1-2 at 12 (PPD Operations Order 2.2.00).)   The investigation process generally includes an initiation of a Draft Internal Investigation Report, interview of complainants and witnesses, information gathering, completion of the Draft report, an Investigative Review Process ("IRP"), and completion of the Final Internal Investigative Report.  (*Id.* at 16.)  During the IRP, a meeting is scheduled where the affected employee, PSB investigator, and employee's chain of command "attempt to seek agreement regarding the specific allegations and findings of the investigation" before the PSB completes the Final Internal Investigative Report.  (*Id.* at 27.)

On February 11, 2026, PPD's Professional Standards Bureau ("PSB") interviewed Sgt. Mullen's supervisor.  (Doc. 2 at 3.)  PSB then interviewed Sgt. Mullen on March 3, 2026.  (*Id.*)  Following these interviews, PSB informed Lieutenant Brian Thatcher that the investigation was originally intended to be classified in a manner that would result in discipline less than termination.  (Doc. 1-2 at 9 (Declaration of Lt. Brian Thatcher).)  Single instances of Class I or Class II violations do not warrant termination.  (Doc. 1-2 at 37, 39 (PPD Operations Order 2.1.01).)   Class III violations, however, "are so serious and malicious in nature" they may warrant immediate termination or referral to the Police Chief for a *Loudermill* hearing.  "If a Loudermill Hearing is conducted, an IRP **will not** be conducted."  (Doc. 1-2 at 52 (PPD Operations Order 2.1.00) (emphasis in original).)

Examples of Class III violations include: bribery, knowingly submitting a false police report, illegal use of drugs, operating a city vehicle while intoxicated, soliciting prostitution, and intentional use of deadly force not within PPD policy. (Doc. 1-2 at 42–43 (Operations Order 2.1.01).)

On April 8, 2026, the media reported on the January 30th protest. (Doc. 2 at 3.) The next day, Phoenix City Councilwoman Anna Hernadez made public comments on the investigation, criticizing Sgt. Mullen's off-duty conduct and questioned his continued employment in her district. (Doc. 1 at 5, 8.) On April 10, 2026, PPD Chief of Police Matthew Giordano issued a public media statement that the incident was under investigation, would conclude soon, and he would make a decision after a "thorough and fair assessment of the facts." (Doc. 1-2 at 30 (PPD Media Advisory Statement from Chief Giordano).) That same day, Sgt. Mullen was placed on administrative leave/at-home assignment. (*Id.*; Doc. 1 at 5.)

On April 17, 2026, PSB set up a follow-up interview with Sgt. Mullen for April 21, 2026, but canceled it on the morning of April 20, 2026. (Doc. 2 at 3.) That afternoon, Lt. Thatcher "provided additional exonerating or mitigating materials to PSB, including Sgt. Mullen's cellphone video capturing all of his verbal statements at the protest and evidence corroborating a 7-minute phone call with Sgt. Mullen's supervisor within 90 minutes of the assault." (Doc. 1 at 5.)

PPD then elevated the incident to a Class III violation. (*Id.* at 7.) A *Loudermill* hearing was scheduled for May 4th at 9:00 a.m.[1] (*Id.* at 7; Doc. 14 at 2.) Because of this designation and scheduled hearing, Sgt. Mullen would not be entitled to an IPR. (Doc. 1 at 8.) Plaintiffs state that PPD intends to terminate Sgt. Mullen at the pending *Loudermill* hearing. (*Id.* at 9.)

Plaintiffs filed a Complaint alleging that Sgt. Mullen's pending termination is based on an incomplete and defective investigation in retaliation for Sgt. Mullen's protected

---

[1] The Court's Order to Show Cause hearing was scheduled the same day at 9:30 a.m. The Court granted Plaintiffs' Emergency Temporary Restraining Order, precluding Defendants from holding a *Loudermill* hearing prior to the OSC hearing. (Doc. 18.)

off-duty speech and expressive activity on matters of public concern as a result of misleading media coverage and political pressure from an elected official.  (*Id.*)  The Complaint further alleges PSB did not "analyze **all** evidence in its possession—including materials submitted by Sgt. Mullen and Lt. Thatcher, as well as the complete body-worn camera footage received from Chandler PD—and to reflect that complete analysis in the investigation report, consistent with the Operations Orders and PSB's own past practices." (Doc. 1 at 8.)  Additionally, Plaintiffs allege that Sgt. Mullen's proposed termination "was made at the request or behest of Councilwoman Hernandez, in violation of Phoenix City Code § 2-49, which prohibits City Council members from directing or requesting the appointment or removal of administrative employees." (*Id.* at 8–9.)

Accordingly, Plaintiffs' Complaint asserts the following six claims: (1) First Amendment Retaliation pursuant to 42 U.S.C. § 1983 against Chief Giordano and the City; (2) Fourteenth Amendment Procedural Due Process Violation pursuant to § 1983 against all Defendants; (3) First Amendment Retaliation/Chilling Effect pursuant to § 1983 against all Defendants; (4) Violation of Phoenix City Charter/Code § 2-49 against Councilwoman Hernandez and the City; (5) Violation the Arizona Peace Officers' Bill of Rights A.R.S. § 38-1101 *et seq.* against Chief Giordano and the City; and (6) Violation of the Arizona Constitutions Free Speech Clause against all Defendants.  (Doc. 1 at 9–12.)

Along with their Complaint, Plaintiffs simultaneously filed a Motion for Temporary Restraining Order and/or Preliminary Injunction.  (Doc. 2.)  Plaintiffs primarily move for an "Order that Sgt. Mullen receive the full Investigative Review Process (IRP) under Operations Order 2.2.00—as would have occurred under normal Department practice before media coverage and pressure from elected officials—before any final disciplinary decision or *Loudermill* hearing." (*Id.* at 7.)  In the alternative, Plaintiffs request the Court: (1) enjoin any termination or future *Loudermill* hearing until the PSB conduct a thorough evaluation, analyzing all evidence in its possession (including all materials submitted by Lt. Thatcher, the complete body-worn camera footage received from Chandler PD, and Chandler PD's public statement that Sgt. Mullen "did not commit any crimes"); (2) order

PSB to complete a full and accurate investigative report reflecting that analysis; and (3) do so consistent with the requirements of Operations Orders 2.2.00 and 2.1.00 and PSB's past practice." (*Id.*)

On May 4, 2026, the Court held an OSC hearing as to why it should not grant Plaintiffs' TRO. All parties were represented and in attendance. The Court took the matter under advisement and now issues this Order.

## II.   LEGAL STANDARD

A plaintiff seeking a TRO or preliminary injunction must show: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tip in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[2] There are two forms of preliminary injunctions: a prohibitory and a mandatory. The first seeks to maintain the status quo while the latter orders a responsible party to take action. *Haute Plank Inc. v. Grato S.L. LLC*, No. CV-25-04436-PHX-JZB, 2026 WL 672906, at *5 (D. Ariz. Mar. 10, 2026) (citing *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)). "[A] mandatory injunction goes well beyond simply maintaining the status quo *pendente lite* and is particularly disfavored." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citation modified). "The district court should deny such relief unless the facts and law clearly favor the moving party." *Id.* (citation modified). In other words, mandatory injunctions are not issued in doubtful cases. *Id.*

## III.   DISCUSSION

Plaintiffs seek a mandatory injunction, primarily asking the Court to order PSB to conduct a full IRP before any final disciplinary decision or *Loudermill* hearing. Alternatively, Plaintiffs seek a mandatory injunction asking the Court to order PSB to conduct and certify a thorough investigation of all evidence in its possession. Accordingly, Plaintiffs must demonstrate that the facts and law clearly favor their motion.

---

[2] "The legal standards for obtaining a temporary restraining order are essentially identical to those for obtaining a preliminary injunction." *Williams v. Petras*, No. 2:19-CV-0605 KJM DB P, 2021 WL 960962, at *1 (E.D. Cal. Mar. 15, 2021), *report and recommendation adopted*, 2021 WL 2806964 (E.D. Cal. July 2, 2021).

Plaintiffs' claims rely primarily on two alleged harms: (1) Sgt. Mullen's pending termination; and (2) PSB's incomplete investigation.  However, it is entirely speculative that Sgt. Mullen faces imminent termination.  "Irreparable harm requires a showing of harm that is real, imminent, and significant, not just speculative or potential."  *Good Meat Project v. GOOD Meat, Inc.*, 716 F. Supp. 3d 783, 804 (N.D. Cal. 2024) (citation modified).

Here, Class III violations can warrant demotion, suspension, *or* termination. Defendants consistently hold that any discipline or termination (if any) is speculative because the *Loudermill* hearing has not yet occurred.  (Doc. 20 at 16.)  At this hearing, Sgt. Mullen will have the opportunity to present his side of the story prior to a disciplinary decision.  As of now, there is no indication of what discipline, if any, will be issued. Therefore, at best, Plaintiffs articulate the possibility of termination.  But "plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction."  *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) (emphasis in original) (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).  Accordingly, the Court may not grant Plaintiffs' TRO on the possibility of termination.

Next, Plaintiffs fail to clearly show that PSB's investigation was incomplete or defunct.  They primarily complain that PSB has not adequately analyzed the materials provided by Lt. Thatcher, refused to provide complete body-worn camera footage, and has bypassed the IRP by classifying Sgt. Mullen's misconduct as a Class III violation.  (Doc. 2 at 3.)  Plaintiffs fail to provide facts that clearly demonstrate these allegations.

First, Lt. Thatcher's declares that he provided exonerating and mitigating materials to PSB, which "included Sgt. Mullen's cellphone video that captured all of his verbal statements while interacting with the protestors and other evidence corroborating that Sgt. Mullen had a 7-minute phone call with an appropriate supervisor within 90 minutes of Sgt. Mullen being the victim of an assault that resulted in the Chandler Police arrest of a protestor."  (Doc. 1-2 at 9 (Declaration of Lt. Brian Thatcher).)  However, Lt. Thatcher can

only testify that "[t]o the best of my knowledge, PSB has not adequately analyzed the additional materials I provided on April 20, 2026." (*Id.* at 10.)   This claim is not substantiated by the evidence provided to the Court.   With approval of the Court, Defendants filed under seal PSB's internal investigation report, which cites and analyzes the cell phone footage provided by Lt. Thatcher. (Doc. 20 at 15; Doc. 22.)   This footage was used to analyze Sgt. Mullen's interactions with protestors, the assault on Sgt. Mullen, and discredit allegations from other protestors at the scene regarding Sgt. Mullen's behavior. Additionally, at the hearing, Lt. Bewley testified that he did review the additional materials.   Accordingly, the Court is not convinced that PSB did not adequately analyze the materials provided by Lt. Thatcher.

Next, Lt. Thatcher declares PSB provided him a "limited portion of the body-worn camera footage." (Doc. 1-2 at 9.)   Even if true, the Court is dubious of any apparent prejudice because Plaintiffs—in their primary and alternative relief request—do not ask the Court to mandate PSB disclose any further body-worn camera footage.   Moreover, Lt. Thatcher declares that the body-worn camera footage provided sufficiently exonerates Sgt. Mullen of any claim that he engaged in "incitement of the protestors, use [of] inappropriate language, or utter[ed] fighting words." (*Id.*)   Accordingly, there appears no irreparable harm from the alleged limited disclosure of body-worn camera footage.

Finally, Lt. Thatcher declares that labeling Sgt. Mullen's "off-duty protest or counter-protest activity as a Class III violation" is "highly unusual and excessive" based on his training and experience. (*Id.*)   Therefore, Plaintiffs contend that PBS heightened the classification as a ploy to bypass the regular IRP.   To demonstrate this point, Plaintiffs must show that a Class III violation is clearly unreasonable here.   If so, then the subsequent *Loudermill* hearing is unwarranted and would not necessitate bypassing the IRP.   The Court finds Plaintiffs cannot clearly make this showing.

Class III violations include "[g]iving false, incomplete, misleading statements, or willful omissions during an investigation," and  (Doc. 1-2 at 42 (Operations Order 2.1.01).)   Additionally, the guidelines for Class III violations contemplate an "employee's actions

[which] violated the oath of office or basic Department values." (*Id.* at 44.) Defendants aver that "this disciplinary proceeding focuses on Plaintiff's [unprofessional] conduct during the protest and his untruthful verbal report by omission to his supervisor following the protest." The PBS internal investigation extensively discusses its findings as to Sgt. Mullen's allegedly unprofessional conduct and untruthful statements. Therefore, the Court finds that PBS's classification of Sgt. Mullen's conduct as a Class III violation is not clearly unreasonable at this time.

Accordingly, Plaintiffs have failed to show that Sgt. Mullen has been or will likely be subject to irreparable harm in the absence of preliminary relief. Thus, the Court need not address the remaining preliminary injunction elements. *See Cntr. for Food Safety*, 636 F.3d at 1174 (explaining that it need not address the other elements of the preliminary injunction standard because plaintiffs failed to show that they are likely to suffer irreparable harm).

## IV.     CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED denying** Plaintiffs Temporary Restraining Order (Doc. 2) and vacating this Court's Order granting Plaintiff's Emergency Motion (Doc. 18).

Dated this 5th day of May, 2026.

Honorable Susan M. Brnovich
United States District Judge

- 8 -