Steven J. Serbalik, Bar No. 028191
**STEVEN J. SERBALIK, P.L.C.**
4925 E. Desert Cove Ave Unit 116
Scottsdale, Arizona 85254
Telephone:  (480) 269-1529
steveserbalik@gmail.com
*Attorney for Plaintiffs Dusten Mullen and the*
*Arizona Conference of Police and Sheriffs, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dusten Mullen and the Arizona Conference of Police and Sheriffs ("AZCOPS")<br><br>Plaintiffs,<br><br>v.<br><br>Matthew Giordano, in his official capacity as Chief of Police of the Phoenix Police Department, the City of Phoenix, a municipal corporation, and Anna Hernandez, in her official capacity as Phoenix City Councilmember, District 7,<br><br>Defendants. | NO. 2:26-CV-02911-SMB<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**(To Preserve Status Quo – Administrative Leave with Pay)**<br><br>**(Evidentiary Hearing Requested)** |

Plaintiffs Dusten Mullen and the Arizona Conference of Police and Sheriffs ("AZCOPS") respectfully move this Court, pursuant to Federal Rule of Civil Procedure 65, for a Temporary Restraining Order and Preliminary Injunction.

**I. INTRODUCTION**

On May 5, 2026, this Court denied Plaintiffs' initial Motion for TRO/PI, expressly finding that any harm was "speculative" because no termination had yet occurred. (Doc. 31 at 6.) That premise no longer exists. On May 14, 2026, Sgt. Mullen was formally notified that he will be terminated after a process that ignored the evidence presented at

the *Loudermill* hearing. Plaintiffs now seek narrow relief that simply preserves the status quo — continued administrative leave with pay — until this Court can adjudicate the merits of whether Sgt. Mullen is being disciplined based upon protected First Amendment activity.

## II. FACTUAL BACKGROUND

Following this Court's May 5 Order, the City moved quickly to reschedule the *Loudermill* hearing. On May 7, 2026, the City contacted Plaintiffs and advised that — notwithstanding the City's longstanding policies and practices of providing five business days' notice for *Loudermill* hearings — the rescheduled hearing would occur the very next day, May 8. Only after PPSLA advised that Lt. Brian Thatcher (the assigned PPSLA representative) would be out of state did the City agree to reschedule the hearing for May 11, 2026 - the following business day.

On May 11, 2026, a *Loudermill* hearing was held before Chief Giordano, Executive Assistant Chief Orender, Assistant Chief Benza, Assistant City Attorney Alisa Blandford, and Tobin Daley from Human Resources. Sergeant Mullen was present at the hearing. Sgt. Mullen presented a two-hour comprehensive slide presentation addressing the merits of the two sustained allegations.[1] The presentation included extensive documentation citing factual inaccuracies in the PSB report, selective quoting, omissions of exculpatory evidence, and previously undisclosed information.

Critically, Sgt. Mullen's cellphone video — which captures the entirety of the incident — was provided to PSB on April 20, 2026. Despite possessing this video for nearly a month before the *Loudermill* hearing, the City declined to fully analyze it or match it against the Chandler PD pole-cam video and other body-worn camera footage. Had PSB done so, the video would have demonstrated that:

- Sgt. Mullen was not free to leave at any time — he was, at all pertinent times, surrounded and/or followed by the crowd;
- Sgt. Mullen was assaulted on multiple occasions; and

---

[1] See Sealed Exhibit A - Loudermill presentation slide-show

- The statement about "planning on being assaulted" was made only after Sgt. Mullen himself was the victim of an assault and a Chandler police officer refused to intervene or promptly take a police report.

Despite this extensive evidence and argument being presented at the *Loudermill* hearing, the City made no modifications whatsoever to the PSB investigation. On May 14, 2026, Sgt. Mullen was notified of his termination. The *Loudermill* proceeding was therefore not a sufficient or meaningful pre-termination opportunity, as the City ignored the information presented and left the flawed investigation unchanged.

In its Response to Plaintiffs' original Motion (Doc. 20 at 2–7, 15–16), the City represented that "no decision had yet been made" and that the thorough and fair review process would involve consideration of the information presented during the *Loudermill* hearing. The City's refusal to make any changes after the May 11 hearing demonstrates that this representation was not accurate.

The Court's May 5 Order contained a material factual inaccuracy, stating that Sgt. Mullen was sustained for "providing false information in an internal investigation." The actual sustained allegation was "untruthful verbal report by omission to his supervisor." This misstatement is significant. The City has never cited any specific policy or classification criterion — beyond the vague catch-all phrase "violates basic Department values" — that would support a Class III classification. Lt. Bewley's testimony before this Court was clear: prior to media coverage and intervention by Councilwoman Hernandez, this matter was not classified in a manner that would have resulted in termination.

Moreover, Sergeant Mullen was not sustained for any false or misleading statement made during an administrative or criminal investigation. The statements he made to his supervisor did not occur as part of any criminal or internal investigation. (*See* Exhibit B. Second Declaration of Lt. Brian Thatcher ¶ 7.)

Even if this Court were to conclude that some discipline might be appropriate for certain statements, Plaintiffs' evidence — as well as Lt. Bewley's live testimony — demonstrates that the aggravation to Class III/termination level is based upon Sgt.

Mullen's protected First Amendment activity. Lt. Bewley testified that this classification decision was made outside of PSB. Lt. Bewley also testified that he requested additional time to analyze the evidence in this case - and that request was denied. Additionally, Lt. Thatcher's extensive experience representing Phoenix Police officers facing discipline confirms that when PPSLA representatives provide evidence that an investigation is flawed or missing key information, the City will normally make changes, additions, or corrections. It is unprecedented in Lt. Thatcher's experience for an investigation of this magnitude, with this many factual errors or omissions, to remain completely unchanged after representatives provide specific citations to evidence making it clear that the investigative report is flawed. (Ex. B - Second Declaration of Lt. Brian Thatcher ¶ 8.)

The investigation has been widely covered by the media. Lt. Thatcher has received multiple phone calls from AZCOPS members inquiring about the matter and waiting on updates regarding whether Sergeant Mullen's rights will be respected. (*Id. at* ¶ 9.) If AZCOPS members know that lawful counter-protesting can result in termination — even though this is not prohibited by any PPD policy — and that such a termination would be unreviewable on constitutional grounds, it has a significant chilling effect. Members could not freely express themselves off-duty at protests or counter-protests, as they would face unreviewable termination based upon vague policies that these activities "violate department values" or the "oath of office" without any discernible standards. Announcing a termination, knowing that it has the likelihood of irreparably damaging a member's ability to be with and provide for their family, is significant. (*Id. at* ¶ 10.)

Sergeant Mullen has a family that includes minor children. This matter and the ongoing media coverage have already resulted in additional proceedings in family court, based extensively on the media coverage regarding his counter-protest activity. The termination and continued public stigmatization will almost certainly impact child custody and parenting-time issues. The widespread media coverage has made it difficult, if not impossible, for him to achieve other employment unless and until his reputation is cleared. (Ex. C - Declaration of Dusten Mullen ¶¶ 3–7.)

## III. LEGAL STANDARD

The standards for a TRO and preliminary injunction are identical. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because the requested relief maintains the status quo (administrative leave with pay), it is a prohibitory rather than mandatory injunction and is not disfavored.

## IV. LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs are likely to succeed on their First Amendment retaliation claim. Even assuming some discipline could be warranted for certain statements, the evidence shows the aggravation to termination-level discipline was driven by protected off-duty expressive activity (counter-protesting on a matter of public concern) and statements made in response to being assaulted while surrounded. The City's refusal to adjust the classification or correct the PSB report after the May 11 *Loudermill* hearing — despite the presentation of extensive evidence demonstrating flaws in the investigation — further supports a finding of viewpoint discrimination and retaliation. The Arizona Supreme Court's decision in *McMichael-Gombar v. Phoenix Civil Service Board,* 538 P.3d 1032, 1034 (Ariz. 2023) makes clear that the Civil Service Board cannot hear constitutional claims — facial or as-applied. Therefore, once termination is final, Sgt. Mullen is precluded from raising any concerns related to how his First Amendment rights are being violated in any administrative appeal. The only forum in which he can vindicate those rights is federal court.

Plaintiffs are also likely to succeed on their procedural due process and stigma-plus claims - as for the reasons stated below, Sgt. Mullen is facing consequences far beyond a standard termination proceeding.

## V. IRREPARABLE HARM

Harm is no longer speculative. Sgt. Mullen has been notified of his termination. Chief Giordano has publicly committed to announcing this employment decision. The combination of termination and imminent public announcement  - combined with the

effect of prior public statements by the City of Phoenix tying this termination to stigmatizing reasons - constitutes classic irreparable harm under the stigma-plus doctrine. *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972); *Ulrich v. City and Cnty. of San Francisco,* 308 F. 3d 968, 982 (9th Cir. 2002).

The investigation has been widely covered by the media. Lt. Thatcher has received multiple phone calls from AZCOPS members inquiring about the matter and waiting on updates regarding whether Sergeant Mullen's rights will be respected. If AZCOPS members know that lawful counter-protesting can result in termination — even though this is not prohibited by any PPD policy — and that such a termination would be unreviewable on constitutional grounds, it has a significant chilling effect. Members could not freely express themselves off-duty at protests or counter-protests, as they would face unreviewable termination based upon vague policies that these activities "violate department values" or the "oath of office" without any discernible standards. Announcing a termination, knowing that it has the likelihood of irreparably damaging a member's ability to be with and provide for their family, is significant. (Ex. B - Second Declaration of Lt. Brian Thatcher ¶ 10.)

Sergeant Mullen has a family that includes minor children. The loss of his employment and the ongoing media coverage have already resulted in additional proceedings in family court, based extensively on the media coverage regarding his counter-protest activity. The termination and continued public stigmatization will almost certainly impact child custody and parenting-time issues. The widespread media coverage has made it difficult, if not impossible, for him to achieve other employment unless and until his reputation is cleared. (Ex. C - Declaration of Dusten Mullen ¶¶ 3–7.)

## VI. BALANCE OF EQUITIES AND PUBLIC INTEREST

The balance of equities strongly favors Plaintiffs. Maintaining administrative leave with pay imposes no meaningful burden on the City. In contrast, allowing termination to take effect causes immediate, ongoing, and irreparable harm. The public interest favors ensuring that constitutional rights are protected and that public employers do not terminate

employees on the basis of uncorrected, factually flawed investigations influenced by protected speech.

## VII. REQUESTED RELIEF

Plaintiffs respectfully request that the Court:

- Immediately issue a Temporary Restraining Order restoring Sgt. Mullen to paid administrative leave and prohibiting any public announcement of the termination pending further order of the Court.
- Grant a Preliminary Injunction ordering the same relief until the Court can adjudicate the merits of Plaintiffs' First Amendment retaliation claim.
- Set an expedited hearing on the preliminary injunction.
- Grant such other relief as the Court deems just and proper.

A proposed form of order is submitted herewith.

RESPECTFULLY SUBMITTED this 14th day of May, 2026.

**STEVEN J SERBALIK, P.L.C.**

By:   /s/Steven J. Serbalik

Steven J. Serbalik
4925 E. Desert Cove Ave #116
Scottsdale, Arizona 85254
*Attorney for Plaintiffs Dusten Mullen and the Arizona Conference of Police and Sheriffs ("AZCOPS")*

## CERTIFICATE OF SERVICE

I hereby certify that the Defendants were served with a copy of this Motion via ECF.

/s/ Steven J Serbalik