Justin S. Pierce (State Bar #022646)
Stephen B. Coleman (State Bar #021715)
Alexandra N. Cayton (State Bar #038580)
**PIERCE COLEMAN PLLC**
17851 North 85th Street, Suite 175
Scottsdale, AZ 85255
Tel. (602) 772-5506
Justin@PierceColeman.com
Steve@PierceColeman.com
Alex@PierceColeman.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Dusten Mullen, individually and the Arizona Conference of Police and Sheriffs ("AZCOPS"), an Arizona nonprofit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Matthew Giordano, in his official capacity as Chief of Police of the Phoenix Police Department, the City of Phoenix, a municipal corporation, and Anna Hernandez, in her official capacity as Phoenix City Council member, District 7,<br><br>Defendants. | Case No: 2:26-cv-02911-SMB<br><br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") is nothing more than a poorly disguised request for reconsideration of the Court's prior denial of injunctive relief. [Doc. 31]  Previously, this Court rejected Plaintiffs' attempt to halt the disciplinary process, concluding that "Plaintiffs fail to clearly show that PSB's investigation was incomplete or defunct"; "[T]he Court is not convinced that PSB did not adequately analyze the materials provided by Lt. Thatcher";

1

"[T]he Court finds that PBS's classification of Sgt. Mullen's conduct as a Class III violation is not clearly unreasonable at this time"; and "Plaintiffs have failed to show that Sgt. Mullen has been or will likely be subject to irreparable harm in the absence of preliminary relief." [*Id.* at pgs. 6–8]  Undeterred by the Court's sound reasoning, Plaintiffs have doubled down by asking for more drastic measures, including the reinstatement of Plaintiff Dusten Mullen's ("Mullen") employment for the pendency of this lawsuit.  For the reasons set forth below, Plaintiffs' request is meritless, and the Court should deny Plaintiffs' Motion.

## ANALYSIS

A preliminary injunction is an "extraordinary and drastic remedy" that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.  *Munaf v. Geren*, 553 U.S. 674, 689 (2008).  A request for injunctive relief should be denied unless a plaintiff can establish the following:  "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest." *Nouveau Riche Corp. v. Tree*, No. CV08-1627-PHX-JAT, 2008 WL 5381513, at *4 (D. Ariz. Dec. 23, 2008).  Here, all four factors weigh against injunctive relief.

### I.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS.

#### A. Plaintiffs' First Amendment Claims Are Fatally Flawed.

First Amendment claims are extraordinarily fact-intensive.  In the Ninth Circuit, courts evaluate First Amendment challenges using the following five-step inquiry:  (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the government employer had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.  *Eng v. Cooley*, 552 F.3d

1062, 1070 (9th Cir. 2009).  In evaluating whether an employee's speech is on a matter of public concern, courts look to the "content, form and context of a given statement, as revealed by the whole record.[]"  *Connick v. Myers*, 461 U.S. 149, 147–48 (1983).  Of these factors, content is "the greatest single factor."  *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009).

Here, Mullen was terminated for conduct unrelated to any alleged protected speech. As a sworn peace officer, Mullen took an oath to uphold and enforce the law.  [*See* Doc. 1 at ¶ 5]  Instead, he confronted adolescents, while masked and armed, and took actions deliberately intended to provoke or engender crime, not prevent it.  [*See id.* ¶ 13; Doc. 2 at pg. 2]  Such behavior, which is confirmed by video evidence, is antithetical to the core values of the City of Phoenix Police Department ("Phoenix PD") and incompatible with the expectations of a law enforcement officer.

It is also worth noting that even speech on a matter of public concern can lose its protection when it is accompanied by disruptive or inappropriate conduct.  *Connick*, 461 U.S. at 152 ("Furthermore, we do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.").  For instance, a protester cannot vandalize a business in order to send a political message.  Similarly, Mullen was not permitted to provoke a crime, regardless of his views on immigration enforcement.

Given the undisputed evidence, Defendants are likely to prevail on Plaintiffs' First Amendment claims on three grounds: (1) the City did not terminate Mullen based on any protected speech; (2) the City can establish that it would have made the same decision in the absence of any alleged counter-protest by Mullen; and (3) the disruptive impact of Mullen's conduct tilts the *Pickering* balance in favor of the City.

Although it is not necessary to conduct a balancing test, given that the City did not terminate Mullen based on his speech, the *Pickering* analysis would weigh heavily in the City's favor even if Plaintiff could establish that his speech caused his termination.  As the

United States Supreme Court has held, government employers are empowered to regulate speech that is disruptive to the management of personnel and internal affairs. *See, e.g., Connick*, 461 U.S. at 146–148. Thus, as part of the analysis of a First Amendment claim, courts perform a balancing test to determine whether the interest of the government employer "in promoting the efficiency of the public services it performs through its employees" outweighs the employee's interests, as a citizen, "in commenting upon matters of public concern." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Relevant considerations in this balancing test are "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987); *see also Brewster v. Board of Educ.*, 149 F.3d 971, 979 (9th Cir. 1998) (the government has "wide discretion and control over the management of [] personnel and internal affairs [including] the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch."). The *Pickering* balance is a question of law to be resolved by the Court. *Connick*, 461 U.S. at 148 n.7.

When applying the *Pickering* balance, courts give substantial deference to a governmental entity's judgment in making personnel decisions concerning police officers. *Aguilera v. Baca*, 510 F.3d 1161, 1171 (9th Cir. 2007) ("Law enforcement agencies are entitled to deference, within reason, in the execution of policies and administrative practices that are designed to preserve and maintain security, confidentiality, internal order, and esprit de corps among their employees."); *Cochran v. City of Los Angeles*, 222 F.3d 1195, 1201 (9th Cir. 2000) ("Discipline and esprit de corps are vital to [a police department's] functioning. Given that 'a wide degree of deference to the employer's judgment is appropriate' when 'close working relationships are essential to fulfilling public responsibilities,' the balance of interests tips in favor of the City."); *Kannisto v.*

*City and County of San Francisco*, 541 F.2d 841, 843 (9th Cir. 1976) (same).  Setting aside the fact that Mullen was terminated for his conduct, any alleged speech lost its protection based on the *Pickering* analysis.

According to Mullen, he went to the high school as a counter-protestor to the anti-ICE students.  [Doc. 1 at ¶ 13; Doc. 2 at pg. 2 ]  However, that characterization presents an overly narrow account of the incident and omits the circumstances and subsequent events that gave rise to the City's decision to terminate Mullen's employment.

Police Officers are held to the highest level of professionalism and integrity.  Equally important is that the Phoenix PD has a positive, trusting relationship with the public in order to provide effective law enforcement services.  Furthermore, it is critical for police officers to trust their colleagues, as they may need to rely on one another for backup in potentially life-threatening situations.  Against this backdrop, Mullen's conduct on January 30, 2026 and the events that followed, can reasonably be expected to undermine the trust of the general public with the Phoenix PD and create friction between police officers and members of the public who wish to peacefully express their political views.  Based on these concerns alone, the Court should conclude that the *Pickering* balance weighs strongly in favor of Defendants.

Even though reasonable predictions of disruption are sufficient for Defendants to prevail, the Court need not rely solely on the mere possibility that Mullen's behavior could cause public mistrust and discredit to the Phoenix PD.  Indeed, Mullen's actions resulted in a cascade of negative publicity, which included the following headlines:

- April 7, 2026:  **'Let them all assault me': Records show armed, off-duty Phoenix cop's plan at student anti-ICE walkout** https://www.fox10phoenix.com/news/let-them-all-assault-me-records-show-armed-off-duty-phoenix-cops-plan-student-anti-ice-walkout.

- April 7, 2026: **Phoenix Police Sergeant Allegedly Planned To Let Students 'Assault' Him At Anti-ICE Walkout To Justify Mass Arrests**    https://www.ibtimes.co.uk/phoenix-police-sergeant-student-protest-investigation-1790488.

- April 17, 2026 :  **Bodycam video shows Mullen talking about plans to get student protesters arrested** https://www.fox10phoenix.com/news/bodycam-video-shows-mullen-talking-about-plans-get-student-protesters-arrested.

- April 19, 2026: **Body camera video shows Phoenix Sgt. at high school protest, wanted students to assault him**  Video shows the off-duty officer telling Chandler PD his goal was to get kids in jail if they wanted to break the law. https://www.abc15.com/news/local-news/investigations/body-camera-video-shows-phoenix-sgt-at-high-school-protest-wanted-students-to-assault-him.

- May 14, 2026: **Phoenix fires off-duty cop who tried to bait student protesters**  Sgt. Dusten Mullen showed up armed and masked at an anti-ICE student protest in January." https://www.phoenixnewtimes.com/news/phoenix-fires-off-duty-cop-bait-student-protesters-40666784/.

As the Ninth Circuit has expressly recognized, police officers are charged with preserving the integrity and image of the department, and therefore, conduct that results in public denigration of the agency loses its protection.  *See Dible v. City of Chandler*, 515 F.3d 918, 928–29 (9th Cir. 2008) ("In any event, the interest of the City in maintaining the effective and efficient operation of the police department is particularly strong. It would not seem to require an astute moral philosopher or a brilliant social scientist to discern the fact that Ronald Dible's activities, when known to the public, would be 'detrimental to the mission and functions of the employer.' And although the government's justification cannot be mere speculation, it is entitled to rely on 'reasonable predictions of disruption.'") (internal citations omitted).  These precise circumstances exist here, as demonstrated by the media's negative response.

In sum, Mullen's conduct is worthy of little or no constitutional protection.  In contrast, Defendants' interests are strong enough not just to tip the balance in their favor, but to break the scale.

### B. Plaintiffs' Due Process Claims Are Flawed as a Matter of Law.

As an initial matter, Mullen cannot, as a matter of law, seek relief based on alleged

6

defects with the internal investigation.  A Section 1983 claim based upon procedural due process has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  In the employment context, due process requires that a tenured employee receive notice of the proposed grounds for discipline and an opportunity to be heard.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544–45 (1985).  In other words, the right to pre-termination due process is not triggered until there is a proposed deprivation of a protected right; otherwise, the employee's property interest in continued employment is not implicated. Accordingly, courts have rejected due process claims challenging an employer's investigation of an employee's misconduct, rather than the procedures used in connection with the actual deprivation.   *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 523 (10th Cir. 1998) ("[T]he fact that University administrators conducted an investigation without Professor Tonkovich's knowledge does not implicate procedural due process because he ultimately received notice of the charges and a meaningful opportunity to respond in the hearing. . . ."); *Cadorna v. City & County of Denver*, No. 04CV01067-REBCBS, 2006 WL 1659064, at *2 (D. Colo. June 8, 2006) ("Although plaintiff describes his pre-termination due process claims as involving defendant's allegedly faulty and biased investigation of the charges against him, such allegations do not implicate constitutional due process rights."); *Ramirez-De Leon v. Mujica-Cotto*, 345 F. Supp. 2d 174, 188 (D.P.R. 2004) ("[I]nvestigations conducted by administrative agencies, even when they may lead to criminal prosecutions, do not trigger due process rights[;] there must also be an adjudication.") (citation omitted).

Indeed, this Court has agreed that "allegations of a biased pre-termination investigation do not implicate constitutional due process rights." *McClarty v. Tolleson*, No. CV-16-00065-PHX-DJH at p. 10 (D. Ariz. Sep. 16, 2016).  Although the City disputes Plaintiffs' criticism of the investigation process, even an ill-conceived, inadequate, or

poorly conducted investigation cannot form the basis of a due process claim.

Mullen's dissatisfaction with the outcome of his *Loudermill* hearing is likewise insufficient to support a viable due process claim.  At the pre-disciplinary phase, due process only requires that an employee with a property right in continued employment be provided "a pretermination opportunity to respond, coupled with post-termination administrative procedures." *Loudermill*, 470 U.S. at 547–48.  Thus, to satisfy due process, the Ninth Circuit has held that an employee need only be given "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Brewster*, 149 F.3d at 986.  Requiring more than this would infringe on the City's interest in quickly removing an unsatisfactory employee. *See, e.g.*, *Gilbert v. Homar*, 520 U.S. 924, 932 (1997).  The undisputed evidence demonstrates that the City complied with the requirements of due process.

Plaintiffs concede that Mullen was given notice of the proposed grounds for discipline, that he attended a *Loudermill* hearing, that he was represented by counsel, that multiple City representatives were in attendance, and that he "presented a two-hour comprehensive slide presentation addressing the merits of the two sustained allegations[.]" [Doc. 32 at pg. 2]  At most, Plaintiffs' quibble is with the outcome of the *Loudermill* hearing.  However, if an employee's disagreement with a disciplinary action were enough to state a due process claim, employers would face a Catch-22 of rescinding the proposed discipline or facing a federal lawsuit.  Obviously, this is an untenable proposition, as confirmed by controlling case law.

The Ninth Circuit has also held that due process does not require a neutral decisionmaker at the pre-deprivation stage, so long as the employee is afforded an impartial post-termination hearing. *Walker v. Berkeley*, 951 F.2d 182, 184 (9th Cir. 1991).  Here, Mullen has not yet exhausted his post-termination appeal, so he cannot challenge the adequacy of his *Loudermill* hearing.[1]

---

[1] Chief Giordano issued an ENS (Employment Notification System) announcement on May 14 regarding Mullen's termination. However, it is the City's understanding that the

**II.    PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM.**

A party seeking an injunction must show a possibility of irreparable injury that is not remediable by damages. *Nouveau Riche*, 2008 WL 5381513, at *4.   Assuming for argument's sake that Plaintiffs had any likelihood of success on the merits, the Motion should still fail based on Plaintiffs' inability to satisfy this requirement.

Mullen is not entitled to injunctive relief because his termination is remediable by monetary damages.  The Supreme Court's decision in *Sampson v. Murray* is directly on point.  415 U.S. 61 (1974).  There, a public employee sought to enjoin her termination pending the outcome of her appeal to the Civil Service Commission. *Id.* at 63.  She argued that injunctive relief was appropriate because her prospective discharge would cause her embarrassment and loss of income. *Id.* at 66.   The court disagreed, explaining that: "The key word in this consideration is irreparable.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id*. at 90.  The court further noted that there is a longstanding precedent against granting injunctions in employment disputes in all but the most extraordinary cases, stating:

> We recognize that cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be

document's date was inadvertently carried over from a template and therefore incorrectly reflected April 10. This clerical oversight has no impact on Plaintiffs' claims. In any event, even assuming arguendo that the Chief had prepared the document in advance, that would not affect the viability of Plaintiffs' claims. *See O'Neill v. Baker*, 210 F.3d 41, 49 (1st Cir. 2000) ("Second, although McDermott acknowledges that she made the decision to terminate O'Neill and drafted the termination letter prior to the hearing, her testimony is uncontested that she would have 'reconsidered whether there was just cause to discharge [O'Neill]' if O'Neill had offered 'compelling reasons indicating that the contemplated discharge was unwarranted.' There is no constitutional infirmity because the planned termination was subject to revision if O'Neill was able to contest the validity of the grounds for termination. Instituting termination proceedings and preparing the necessary documentation in advance of the final pre-termination hearing are not deprivations of due process rights.").

found. Such extraordinary cases are hard to define in advance of their occurrence. We have held that an insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual.

*Id*. at 91, n. 68.  Here, Mullen has not articulated any circumstances that would depart from the ordinary termination case, much less made the extraordinary showing necessary to justify a preliminary injunction.[2]

As a further reason to deny the Motion, Mullen has the opportunity to appeal the decision to an independent Civil Service Board for a *de novo* review.  [*See* Ex. F to Doc. 1 at pg. 16]  If he prevails, the termination will be reversed and he may recover any lost wages.  And if he is dissatisfied with the outcome of the appeal, he can seek special action review to determine if the Civil Service Board's decision was arbitrary, contrary to the law, or involved an abuse of discretion.  *Woerth v. City of Flagstaff*, 167 Ariz. 412 (Ariz. Ct. App. 1990).  Simply put, Mullen has options for seeking recourse.  There are constitutional safeguards in place to protect his interests, which provides yet another basis to deny his request for injunctive relief.  For this additional reason, his request for injunctive relief is flawed.

Finally, Plaintiffs are mistaken in arguing that the Civil Service Board lacks jurisdiction to adjudicate Mullen's First Amendment arguments.  In fact, the Arizona Supreme Court's decision in *McMichael-Gombar v. Phoenix Civ. Serv. Bd.*, stands for the opposite proposition.  538 P.3d 1032 (2023).  There, a City of Phoenix police officer was disciplined for posting content that violated the City's social media policy.  *Id.* at 1035.  During her personnel appeal, the officer argued that the City's policy was

---

[2] Although constitutional violations are often presumed to result in irreparable harm, this rule is not absolute. In *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, the Ninth Circuit acknowledged that courts must make a case-by-case determination of whether a plaintiff "would be entitled to such a presumption."  950 F.2d 1401, 1412 (9th Cir. 1991).  By illustration, the court cited to the Eleventh Circuit's refusal "to presume irreparable injury from allegations of equal protection violations when it found the primary damage that plaintiff asserted to be 'chiefly, if not completely, economic.'"  *Id*. at 1412, n.9.

10

unconstitutionally overbroad and, therefore, violated the First Amendment. *Id.* The court found that the Civil Service Board lacked authority to invalidate the social media policy, reasoning as follows:

> [O]nly courts may declare laws and rules unconstitutional, either facially or as applied, and enjoin their application. 253 Ariz. at 422–23 ¶ 20, 514 P.3d at 922–23. Here, McMichael-Gombar sought to introduce evidence and argue that the Policy is overbroad and unconstitutional under the First Amendment. Although she did not seek a binding declaration, her request for relief from discipline on that basis effectively asked the Board to decide the constitutionality of the Policy and enjoin its application. And because the Board's decision is final and non-appealable, *see* Phx. City Charter, ch. 25., § 3(3), if the Board decided the issue, the courts would have no opportunity to review that decision. The Board would have usurped the courts' constitutionally granted authority to decide the Policy's constitutionality. *See Mills*, 253 Ariz. at 422–23 ¶ 20, 514 P.3d at 922–23; *see also Moulton*, 205 Ariz. at 513 ¶ 20, 73 P.3d at 644 ("Only the courts have authority to take action that runs counter to the expressed will of the legislative body." (quoting *Estate of Bohn v. Waddell*, 174 Ariz. 239, 249, 848 P.2d 324, 334 (App. 1992)) (cleaned up)). Our narrower interpretation of the Board's authority avoids this infringement on judicial authority. *See State v. Brearcliffe*, 254 Ariz. 579, 585 ¶ 22, 525 P.3d 1085, 1091 (2023) (stating that when interpreting statutes and rules the courts "avoid interpretations that unnecessarily implicate constitutional concerns" (quoting *Scheehle v. Justices of the Sup. Ct.*, 211 Ariz. 282, 288 ¶ 16, 120 P.3d 1092, 1098 (2005))).

*Id.* at 1039. Nevertheless, the court held that the Civil Service Board had jurisdiction to consider whether the City's policies were applied unconstitutionally, stating:

> McMichael-Gombar correctly points out that claimants routinely raise constitutional arguments in administrative proceedings. We reiterated in *Mills v. Arizona Board of Technical Registration*, 253 Ariz. 415, 422 ¶ 19, 514 P.3d 915, 922 (2022), that agencies "may apply constitutional doctrines when resolving claims." An agency, however, can only apply those doctrines to issues it is authorized to resolve. *See Kendall*, 98 Ariz. at 334, 404 P.2d 414; *see also Moulton v. Napolitano*, 205 Ariz. 506, 513 ¶ 20, 73 P.3d 637, 644 (App. 2003) (finding that the revenue department had authority to apply constitutional doctrines in deciding whether a taxpayer received the proper tax credit because the legislature authorized it to consider "any legal theory, including a constitutional one"). Here, for example, because the Charter requires the Board to interpret personnel rules in an employee's appeal, *see* Phx. City Charter, ch. 25., § 3(5), it may apply the First Amendment in

discarding an interpretation that would violate an employee's rights when resolving that appeal.

*Id.* at 1038–39.  Here, Mullen is not arguing that a particular policy is unconstitutional. Instead, he argues that the City has applied its disciplinary policies in a manner that infringes upon his First Amendment right to engage in protected speech.  This matter presents the very issues that the *McMichael-Gombar* Court held fall within the Civil Service Board's authority to resolve.

Furthermore, Mullen's failure to exhaust the administrative process weighs *strongly* against a finding of irreparable harm.  *Sampson*, 415 U.S. at 84 (holding that trial courts must give serious weight to a public plaintiff's failure to exhaust administrative remedies when determining whether to grant an injunction involving personnel matter); *Gately v. Com. of Mass.*, 2 F.3d 1221, 1232 (1st Cir. 1993) ("[I]irreparable harm is subject to a sliding scale analysis, such that the showing of irreparable harm required of a plaintiff increases in the presence of factors, including the failure to exhaust administrative remedies, which cut against a court's traditional authority to issue equitable relief."); *Premachandra v. Mitts*, 509 F. Supp. 424, 428 (E.D. Mo. 1981) ("Of course, the failure to exhaust administrative remedies weighs heavily against the grant of a preliminary injunction.").

Mullen cannot sidestep the personnel appeal process, which is intended to provide an expedient resolution of disciplinary disputes.  If Mullen prevails at the Civil Service Board, Plaintiffs' request for judicial relief will be moot.

## III.  THE BALANCE OF HARDSHIPS AND ADVANCEMENT OF THE PUBLIC INTEREST WEIGHS IN DEFENDANTS' FAVOR.

It is well-settled that police departments have an overwhelming and compelling interest in managing their operations.  *See, e.g., Aguilera*, 510 F.3d at 1171.  The harm caused to an employer—especially a municipal police department charged with protecting citizens—if it cannot take appropriate disciplinary action in response to conduct that

disrupts order and breeds distrust in the community is extensive and highly consequential.

Furthermore, it is a misnomer to claim that the application seeks to preserve the status quo.  Not so.  Mullen has been terminated, so he is seeking a positive injunction requiring reinstatement to his employment, an extraordinary measure that is particularly disfavored by the courts.  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) ("A mandatory injunction 'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.' In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'") (internal citation and quotations omitted).  Here, the balance of hardships favors Defendants.  If Plaintiffs ultimately prevail, Mullen can be made whole with back pay.  On the other hand, if the City is required to place him on administrative leave for the pendency of this lawsuit, which may be two years based on data from judicial surveys, the City will be unable to recoup those funds, thereby resulting in the use of unrecoverable taxpayer funds to provide a windfall to a bad actor.  Furthermore, the Phoenix PD will suffer the ignominy of retaining an officer who has disgraced his badge by engaging in conduct that threatens to fracture the bonds of trust between the police and the community.

### **CONCLUSION**

Plaintiffs have not made the extraordinarily strong showing that a temporary restraining order and/or preliminary injunction is warranted.  Accordingly, Defendants respectfully request that the Court deny Plaintiffs' Motion.

//

//

//

//

//

13

RESPECTFULLY SUBMITTED this 15th day of May, 2026.

**PIERCE COLEMAN PLLC**

By /s/ *Stephen B. Coleman*
Justin S. Pierce
Stephen B. Coleman
Alexandra N. Cayton
17851 North 85th Street, Suite 175
Scottsdale, Arizona 85255
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2026 I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and caused a copy to be electronically transmitted via email and mailed to:

Steven J. Serbalik
steveserbalik@gmail.com
*Attorney for Plaintiffs*

By:  /s/ *Mary Walker*

14