**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dusten Mullen, et al., | No. CV-26-02911-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Matthew Giordano, et al., | |
| Defendants. | |

On May 18, 2026, this Court held oral argument on Plaintiffs' second Motion for Temporary Restraining Order and Motion for Preliminary Injunction (Doc. 32). After taking the case under advisement, the Court hereby **denies** Plaintiffs' Motion for the reasons below. The Court, however, **grants** Plaintiffs' pending Motion to Seal (Doc. 42) and Defendants' unopposed Motion for Extension of Time (Doc. 45).

## I.    BACKGROUND

On May 4, 2026, this Court held an Order to Show Cause ("OSC") hearing as to why Plaintiffs' first Motion for Temporary Restraining Order and Motion for Preliminary Injunction should not be issued. The next day, the Court denied Plaintiffs' Motions, in part, because a *Loudermill* hearing had not yet occurred, so any discipline or termination was speculative. (Doc. 31.) A *Loudermill* hearing was held on May 11. (Doc. 32 at 2.) On May 14, Defendants notified Sgt. Mullen of his termination. (*Id.* at 3.) That same day, Plaintiffs filed their second Motion for Temporary Restraining Order and Motion for Preliminary Injunction, requesting reinstatement of Sgt. Mullen to paid administrative

leave and prohibiting any public announcement of the termination. (Doc. 32 at 7.) Later that day, Defendants issued a public announcement of Sgt. Mullen's termination. (Doc. 35-1 at 4.)

On May 18, the Court held oral argument on Plaintiffs' Motions. All parties were represented and in attendance. The Court took the matter under advisement and now issues this Order.

## II.    LEGAL STANDARD

A plaintiff seeking a TRO or preliminary injunction must show: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tip in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[1] Alternatively, a plaintiff may satisfy a sliding scale variant of this test—the serious questions test. *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024). This test, however, is not applicable where a plaintiff seeks a mandatory injunction. *Doe v. Snyder*, 28 F.4th 103, 111 n.4 (9th Cir. 2022) (explaining that where a mandatory injunction is sought "weakness in a plaintiff's showing of harm cannot be offset by a stronger showing on the merits of the underlying legal claim"); *United Farm Workers v. U.S. Dep't of Lab.*, No. 1:25-CV-1614 KES EGC, 2026 WL 1345918, at *10 (E.D. Cal. May 14, 2026) (citing cases).

A plaintiff seeking a mandatory injunction must demonstrate that the facts and law clearly favor injunctive relief. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citation modified). This is a high standard. *Snyder*, 28 F.4th at 111. Consequently, mandatory injunctive relief is "not granted unless extreme or very serious damage will result." *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980).

## III.    DISCUSSION

Plaintiffs again seek a mandatory injunction. They ask the Court to order

---

[1] "The legal standards for obtaining a temporary restraining order are essentially identical to those for obtaining a preliminary injunction." *Williams v. Petras*, No. 2:19-CV-0605 KJM DB P, 2021 WL 960962, at *1 (E.D. Cal. Mar. 15, 2021), *report and recommendation adopted*, 2021 WL 2806964 (E.D. Cal. July 2, 2021).

Defendants to reinstate Sgt. Mullen and place him on paid administrative leave.  Plaintiffs, therefore, must demonstrate that the law and facts clearly entitle them to injunctive relief, and face extreme or very serious damage if relief is not granted.  The merits of Plaintiffs' case are strong.  But the Court finds that Plaintiffs again fail to articulate imminent irreparable injury warranting the preliminary injunctive relief they seek.

### A.  Likelihood of Success

Plaintiffs' Complaint asserts a First Amendment retaliation claim and a Fourteenth Amendment Procedural Due Process claim pursuant to 42 U.S.C. § 1983.  (Doc. 1 at 9–11.) Plaintiffs must demonstrate a likelihood of success on the merits of at least one of these claims.  *See League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 765 n.3 (9th Cir. 2014).

The Ninth Circuit has distilled *Pickering v. Board of Education*, 391 U.S. 563 (1968) into a five-step inquiry to determine whether a government employer retaliated against a public employee in violation of the First Amendment:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Burch v. City of Chubbuck*, 146 F.4th 822, 832 (9th Cir. 2025) (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)).  The plaintiff bears the burden as to the first three steps. *Id.*  Steps one and two "form the lodestar question of whether the plaintiff's speech is protected under the First Amendment." *Id.*  At step three, the plaintiff must demonstrate retaliatory intent.  If the plaintiff makes out a prima facie case of First Amendment retaliation, the burden shifts to the government to demonstrate steps four and five. *Id.* "Only if the government fails *both* the fourth and fifth steps does the plaintiff establish a First Amendment violation." *Id.* (emphasis in original).

The Court first determines whether Plaintiffs' can make out a prima facie case of First Amendment retaliation.  Then, after finding in the affirmative, it turns to Defendants'

shifting burden.

*1. Sgt. Mullen Was Engaged in Protected Activity*

First, Plaintiffs can show Sgt. Mullen acted as a private citizen engaged in First Amendment protected activity.  Although Sgt. Mullen initially went to Hamilton High School to check on his son, he stayed to counter protest the anti-ICE student protest.  Sgt. Mullen was off duty, not in uniform, and did not identify himself as a police officer.  (Doc. 1 at 3.)  Phoenix PD's internal investigation acknowledges that Sgt. Mullen was engaging as a counter-protestor.  (Doc. 28-1 at 2.)  Chandler PD officers at the scene also considered Sgt. Mullen to be a counter-protestor.  (Doc. 20 at 3.)

Additionally, Sgt. Mullen wore a face covering and a T-shirt that said, "Trump 2024."  (Doc. 28-1 at 2.)  "The choice to wear clothing as a symbol of an opinion or cause is undoubtedly protected under the First Amendment if the message is likely to be understood by those intended to view it."  *Canady v. Bossier Par. Sch. Bd.*, 240 F.3d 437, 441 (5th Cir. 2001); s*ee also Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505-06 (1987) (holding that a black arm band protesting war was protected speech).  There is no question the anti-ICE student protestors understood Sgt. Mullen's Trump T-shirt to express a message favoring immigration enforcement given their vehement cursing and yelling at him.

Moreover, "there is a First Amendment right to film matters of public interest." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203 (9th Cir. 2018) (citation modified).  "This includes the right to record law enforcement officers engaged in the exercise of their official duties in public places."  *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018).  Sgt. Mullen filmed much of his interactions with the officers and student protestors for his safety and to document the events.  (Doc. 28-1 at 19.)

*2. Officers' Conduct At A Protest Are Matters of Public Concern*

Second, Plaintiffs can show that Sgt. Mullen filmed matters of public concern.  "Speech involves a matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the community."  *Burch*, 146 F.4th at 833

(citation modified).  "It is only when it is clear the information would be of no relevance to the public's evaluation of the performance of governmental agencies that such speech does not address a matter of public concern."  *Id.* (citation modified).  "As a matter of law, the competency of the police force is surely a matter of great public concern."  *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009) (citation modified).  Accordingly, Sgt. Mullen's recording of police activity alone is sufficient to trigger First Amendment protections. *Hyland v. Wonder*, 972 F.2d 1129, 1137 (9th Cir. 1992) ("If some part of the communication addresses an issue of public concern, the First Amendment's protections are triggered even though other aspects of the communication do not qualify as a public concern.").  Additionally, Sgt. Mullen's symbolic message of his opinion on immigration enforcement is also clearly a comment on a salient, political issue.  *See Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 777 (9th Cir. 2022) (explaining that an employee's Make America Great Again hat was viewed "as a comment on issues such as immigration, racism, and bigotry, which are all matters of public concern").

> *3. Evidence Supports Plaintiffs' Claim That Sgt. Mullen Was Terminated For Engaging In First Amendment Protected Activity*

Third, Plaintiffs can show that Sgt. Mullen's protected activity was a substantial or motivating factor in the adverse employment action.  "A public employee can make this showing by demonstrating, among other things, a proximity in time between the protected speech and the adverse employment action(s)."  *Burch*, 146 F.4th at 838 (citation modified).

The student protest occurred on January 30, 2026.  (Doc. 31 at 1.)  The Phoenix Police Department's Professional Standards Bureau ("PSB") interviewed Sgt. Mullen's supervisor on February 11, and Sgt. Mullen on March 3.  (*Id.* at 2.)  Following these interviews, PSB informed Lieutenant Brian Thatcher that any discipline would not result in termination.  (*Id.*)  Lt. Bewley, the primary PSB investigator assigned to Sgt. Mullen's case, testified at the OSC hearing that a Class II violation was intended at that time—not a Class III.  Lt. Bewley's final investigative report only sustained one allegation against Sgt.

Mullen and left the other unresolved.

Then, on April 8, the media reported on the protest. (*Id.* at 3.) On April 9, Phoenix City Councilwoman Anna Hernadez made public comments on the investigation, criticizing Sgt. Mullen's off-duty conduct and questioned his continued employment in her district. (Doc. 1 at 5, 8.) Lt. Bewley testified that the next day, he was told to change the report from a Class II to a Class III violation. That same day, Phoenix Police Department Chief of Police Matthew Giordano issued a public media statement that the incident was under investigation, and he would make a decision after a "thorough and fair assessment of the facts." (Doc. 1-2 at 30 (PPD Media Advisory Statement from Chief Giordano).) However, Lt. Bewley testified that, following Councilwoman Hernandez's statements, the investigation was rushed. Lt. Bewley asked for more time to complete this investigation but was denied. He was also directed to change one of the allegations from unresolved to sustained, and testified this decision was not based on any factual findings or additional evidence.

PSB then scheduled a follow-up interview with Sgt. Mullen but canceled it. (Doc. 31 at 3.) On April 20, Lt. Thatcher "provided additional exonerating or mitigating materials to PSB, including Sgt. Mullen's cellphone video capturing all of his verbal statements at the protest and evidence corroborating a 7-minute phone call with Sgt. Mullen's supervisor within 90 minutes of the assault." (Doc. 1 at 5.) Lt. Bewley testified that he did not have adequate time to review all this new information and double-check if the report was accurate, so he asked for additional time. Again, the request was denied. He testified this denial was unprecedented based on his experience in PSB.

The new investigative report was finalized on April 27, wherein PSB sustained the two allegations against Sgt. Mullen, found a Class III violation, and ordered a *Loudermill* hearing. (Doc. 28-1 at 2–29.) That same day, Chief Giordano issued Sgt. Mullen a Notice to attend a *Loudermill* Hearing on May 4, at 9:00 a.m. Later that day, Sgt. Mullen filed his Complaint and first Motion for Temporary Restraining order and Preliminary Injunction. (Docs. 1, 2.)

On April 28, this Court ordered Defendants to appear for an OSC hearing on May 4 at 9:30 a.m.  (Doc. 9.)  Understandably, on April 29, Plaintiffs communicated with Defendants to resolve the conflicting OSC and *Loudermill* hearings by rescheduling the *Loudermill* hearing to the afternoon of May 4. (Doc. 14 at 2.)  Chief Giordano responded that he could probably hold the hearing on Friday May 1.  (*Id.*)  Plaintiffs responded that the City of Phoenix's Operation Orders require at least five business days' notice for *Loudermill* hearings, so Friday May 1 would not be permitted because Sgt. Mullen was served on Monday April 27.  (*Id.*)  Chief Giordano responded "too bad Friday will not work.  I am going to keep it scheduled for Monday morning.  Let me know if you prefer 0800 or 0900." (*Id.*)  Consequently, Plaintiffs sought emergency ex parte relief to enjoin any *Loudermill* hearing until after the OSC hearing because it was physically impossible for Plaintiffs' counsel and Sgt. Mullen's union representative to attend both the *Loudermill* hearing and this Court's OSC hearing.  (*Id.* at 3.)  The Court granted Plaintiffs' Motion. (Doc. 18.)

The Court denied Plaintiff's first TRO on May 5.  (Doc. 31.)  On May 7, Defendants contacted Plaintiffs advising them that the rescheduled *Loudermill* hearing would take place the next day on May 8.  (Doc. 32 at 2.)  Again, this contradicted the City's longstanding policy of providing five business days' notice.  Because Lt. Thatcher, Sgt. Mullen's union representative, was out of state that day, the City agreed to reschedule the hearing for May 11—the following business day.  (*Id.*)  The *Loudermill* hearing was held on May 11, and Sgt. Mullen was terminated May 14.  (*Id.* at 2–3.)

The above timeline evidences a rushed and conclusory investigation—instigated by Councilwoman Hernandez's public disapproval of Sgt. Mullen's attendance at the student protest—with the intent of terminating Sgt. Mullen as quickly as possible.  Accordingly, Plaintiffs can clearly show Sgt. Mullen's First Amendment protected activity was a substantial or motivating factor in his termination.  *See Coszalter v. City of Salem*, 320 F.3d 968, 970 (9th Cir. 2003) ("[W]hen adverse employment actions are taken between three and eight months after the plaintiffs' protected speech, a reasonable jury could infer that

retaliation is a substantial or motivating factor.").

*4. A Reasonable Jury Could Find That Defendants' Justification For Treating Sgt. Mullen Differently Than The General Public Is Inadequate, And That Sgt. Mullen's Protected Activity Was The But For Cause Of His Termination*

Because Plaintiffs can make a prima facia case of First Amendment retaliation, the burden shifts to Defendants to demonstrate: "that it had an adequate justification for treating the employee differently from any other member of the general public, or alternatively, that it would have reached the same adverse employment decision even in the absence of the protected speech." *Burch*, 146 F.4th at 833 (citation modified). Defendants must demonstrate they are likely to succeed at one of these steps to overcome Plaintiffs' prima facie showing. *Id.*; *see also Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 478 (9th Cir. 2022) (commenting on the "inherent tension" wherein a plaintiff seeking a preliminary injunction based on First Amendment grounds bears the burden of showing likely success on the merits "and yet within that merits determination the government bears the burden of justifying" its actions).

a.  Defendants' Justifications Are Inadequate

At this step, "the ultimate question is whether the government's legitimate administrative interests outweigh the employee's right to engage in the expressive activity at issue." *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1138 (9th Cir. 2025). In making this determination, courts consider: "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

"[T]he Ninth Circuit has recognized the special need for police departments to avoid disruption to provide public safety." *Moser v. Las Vegas Metro. Police Dep't*, 984 F.3d 900, 908 (9th Cir. 2021). A government can evidence the applicability of this interest "by

showing a reasonable prediction of disruption." *Id.* at 908–09 (citation modified). But "[w]hen determining whether the government's interests in avoiding disruption outweigh an employee's First Amendment interests, vigilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of employees' speech." *Damiano*, 140 F.4th at 1147 (citation modified).

At the outset, two factors weigh in Sgt. Mullen's favor. First, "[b]ecause speech about matters of public concern occupies the highest rung of the hierarchy of First Amendment values, an employer must make an even stronger showing of disruption when the speech at issue deals directly with issues of public concern." *Id.* at 1139 (citation modified). In other words, "[t]he more tightly the First Amendment embraces the speech the more vigorous a showing of disruption must be made." *Id.* (citation modified). As discussed earlier, the First Amendment plainly protects Sgt. Mullen's attendance at a protest, symbolic speech on immigration enforcement, and right to record officers' conduct. So, Defendants must present a vigorous showing of disruption. Second, "[t]he government is more likely to meet its burden when an employee's disruptive conduct takes place in the workplace, compared to when the same conduct occurs during the employee's free time away from the office." *Id.* (citation modified). Sgt. Mullen's allegedly disruptive conduct occurred while he was off duty, and thus the government is less likely to meet its burden here. With this in mind, the Court turns to Defendants' administrative interests.

Defendants predict that "Mullen's conduct on January 30, 2026 and the events that followed, can reasonably be expected to undermine the trust of the general public with the Phoenix PD and create friction between police officers and members of the public who wish to peacefully express their political views." (Doc. 40 at 5.) They assert that "these concerns alone" satisfy their burden. (*Id.*) It is true, a "wide degree of deference" is afforded to a police department's interests as an employer due to the public nature of its responsibilities. *See Cochran v. City of Los Angeles*, 222 F.3d 1195, 1201 (9th Cir. 2000) (quoting *Connick v. Myers*, 461 U.S. 138, 151–52 (1983)). However, "an employer must

provide some evidence for the court to evaluate whether the government's claims of disruption appear reasonable." *Moser*, 984 F.3d at 909; *id.* ("[T]he government cannot rely on mere speculation that an employee's speech will cause disruption.").

The sole evidentiary foundation for Defendants' predictions is the negative publicity following Sgt. Mullen's actions. (Doc. 40 at 5–6.) Defendants cite five headlines that concern Sgt. Mullen's conduct at the student anti-ICE protest and his subsequent termination. (*Id.*) Indeed, this evidence weighs in Defendants' favor. *Damiano*, 140 F.4th at 1146 ("[E]vidence that the media or broader community has taken an interest in the plaintiff's conduct may also weigh in favor of the government's assertion of disruption." (citation modified)). But "[e]ven where the employer provides evidence of a negative reaction to speech, courts require evidence that it will disrupt the workplace." *Moser*, 984 F.3d at 910. Defendants fail to offer any evidence, outside of speculation, that disruption has or will occur in the workplace.

In *Dible v. City of Chandler*, to which Defendants cite, multiple officers testified that news of Dible's website, which featured sexual photographs and videos of himself and his wife, interfered with the department's operations and denigrated the agency's reputation. 515 F.3d 918, 923, 928 (9th Cir. 2008). The *Dible* court found it was "not rank speculation" to also predict future disruption due to the graphic nature of the officer's conduct. *Id.* at 928. It explained that "it would not seem to require an astute moral philosopher or brilliant social scientist to discern" that "the sleazy activities of Ronald and Megan Dible" would be "detrimental to the mission and functions" of the police department, particularly in recruitment of female officers. *Id.* at 928 (citation modified). Unlike *Dible*, Defendants do not point to any actual disruption in the workplace. And because this case is so far removed from the sexual nature of *Dible*—with only evidence of negative publicity—the court cannot confidently predict future disruption. *See Damiano*, 140 F.4th at 1146–47 (holding that without "more specific and complete information" about the negative media stories, "we cannot properly determine how disruptive the media attention was to the District's operations or school environment").

Defendants had to demonstrate a vigorous showing of disruption to show a likelihood of success at this step.  They have failed to do so.  Accordingly, the Court turns to step five.

>    b.  <u>Defendants Fail To Show They Would Have Terminated Sgt. Mullen Even In The Absence Of His Protected Conduct</u>

Defendants "may avoid liability by showing that the employee's protected speech was not a but-for cause of the adverse employee action."  *Eng.*, 552 F.3d at 1072.  This inquiry is purely a question of fact.  *Id.*  Defendants argue that Sgt. Mullen was terminated, not for his speech, but because he "took actions deliberately intended to provoke or engender crime."  (Doc. 40 at 3.)  They contend this "is confirmed by video evidence."  (*Id.*)  The Court disagrees.

In oral argument on Plaintiffs' second TRO, Plaintiffs presented the only video evidence, so far, of the January 30 protest.  That video does not depict Sgt. Mullen instigating or provoking any students to assault him.  In fact, the video showed Sgt. Mullen asking students if they wanted to have a conversation.  Although in the video Sgt. Mullen tells a Chandler officer he planned to let students assault him, Plaintiffs have persuasively contextualized this statement.

Prior to his comment, a large group of student protestors, while cursing and shouting, surrounded and followed Sgt. Mullen.  At some point, a protestor throws water on Sgt. Mullen.  Sgt. Mullen then runs across the street to an officer on a motorcycle stopped at a traffic light and states he would like to report an assault.  The student protestors follow Sgt. Mullen to this officer, continuing to scream at him.  The officer immediately tells Sgt. Mullen to get on the sidewalk where the large group of students were yelling.  Sgt. Mullen says he cannot go on the sidewalk because of the students.  The officer then, eventually, gets off his motorcycle and leads Sgt. Mullen to a different area to take the report.  Sgt. Mullen then made his statement about letting the students assault him.  Thus, it appears Sgt. Mullen made this statement out of frustration with Chandler officers' minimal effort to intercede after students aggressively surrounded, followed, yelled, and

threw water on him.  This is buttressed by the fact that Sgt. Mullen never encouraged any students to assault him.  Accordingly, Defendants fail to demonstrate that the City of Phoenix terminated him for his conduct rather than his First Amendment right to be present at the protest.

Moreover, Lt. Bewley's testimony belies Defendants' assertion.  Prior to Councilwoman Hernandez's statements, Defendants did not intend to terminate Sgt. Mullen for his conduct at the protest.  It is only after these statements that Defendants directed Lt. Bewley to change his report to a Class III violation without any new factual findings.  Thus, public criticism seems to be the but-for cause of Sgt. Mullen's firing. Undoubtedly, if Sgt. Mullen had not been wearing a Trump T-shirt, mask, and lawful firearm at the protest he would not have warranted animosity from the student protestors and subsequent media attention.  Therefore, there is strong evidence to suggest Sgt. Mullen's symbolic messaging on immigration enforcement was the but-for cause of his termination.  Accordingly, Defendants fail to demonstrate that Sgt. Mullen's termination was inevitable in the absence of his protected activity.

Because Defendants fail both step four and five, Plaintiffs have demonstrated a likelihood of success on their First Amendment retaliation claim.

**B.  Irreparable Injury**

Nevertheless, Plaintiffs again fail to adequately allege irreparable injury warranting preliminary injunctive relief.

Plaintiffs contend that Sgt. Mullen will be irreparably harmed by his termination and loss of income if the Court does not reinstate him on paid administrative leave.  (Doc. 32 at 5–6.)  Monetary damages, however, can compensate these injuries.  *Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 851 (9th Cir. 1985) ("[P]urely monetary injury is compensable, and thus not irreparable.").  "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).  Therefore, the Supreme Court has held that "the

temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Id.* Accordingly, Sgt. Mullen's termination, and subsequent loss of income, does not warrant preliminary injunctive relief.

Next, Plaintiffs' Motion alleges that Chief Giordano's upcoming announcement of Sgt. Mullen's termination, and prior public statements by the City of Phoenix, constitute classic irreparable harm under the stigma-plus doctrine. (Doc. 32 at 6.) Consequently, Plaintiffs' Motion requests the Court prohibit Defendants from making any public announcement of Sgt. Mullen's termination. (*Id.* at 7.) But Defendants announced Sgt. Mullen's termination the same day Plaintiffs filed their Motion. (Doc. 35 at 2.) Thus, Plaintiffs seek relief from events which have already concluded, and fail to articulate why issuing a preliminary injunction now would prevent any irreparable harm beyond the damage already done. "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *Schrier v. Univ. Of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005). Accordingly, the Court finds that it cannot grant preliminary injunctive relief for harm already caused by Defendants' allegedly stigmatizing statements.

Finally, Plaintiffs argue that Sgt. Mullen's termination will cause an ongoing chilling effect on other officer's First Amendment rights unless the Court reinstates him. The Ninth Circuit recognizes that "retaliatory action for protected activity carries with it the risk that employees may be deterred from engaging in legitimate conduct," and therefore may cause "possible irreparable harm far beyond economic loss." *Arcamuzi v. Cont'l Air Lines, Inc.*, 819 F.2d 935, 939 (9th Cir. 1987). Plaintiffs substantiate these concerns by stating, "Lt. Thatcher has received multiple phone calls from AZCOPS members inquiring about the matter and waiting on updates regarding whether Sergeant Mullen's rights will be respected." (Doc. 32 at 6.) Importantly, however, "there must be a sufficient causal connection between the alleged irreparable harm and the activity to be enjoined and showing that the requested injunction would forestall the irreparable harm qualifies as such a connection." *Hernandez v. Dzurenda,* No. 3:24-CV-00001-ART-CLB,

2025 WL 2374418, at *6 (D. Nev. Aug. 15, 2025) (quoting *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018)).  In other words, "there must be a showing that the chilling of the right to speak will be thawed by the entry of an interim injunction." *Blum v. Schlegel*, 830 F. Supp. 712, 724 (W.D.N.Y. 1993), *aff'd*, 18 F.3d 1005 (2d Cir. 1994) (citation modified).  Plaintiffs have not convinced the Court that temporarily placing Sgt. Mullen on paid administrative leave for the duration of this lawsuit would thaw any alleged chilling of other officer's right to speak.  Accordingly, the Court finds that preliminary injunctive relief is not warranted.

* * *

Plaintiffs have shown a strong likelihood of success on the merits of their First Amendment Retaliation claim.  However, the Court finds that Plaintiffs fail to articulate imminent irreparable harm warranting the preliminary injunctive relief they seek.  Accordingly, the Court need not address the remaining elements.  See *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) (explaining that it need not address the other elements of the preliminary injunction standard because plaintiffs failed to show that they are likely to suffer irreparable harm).

IV.    **MOTION TO SEAL AND UNOPPOSED MOTION FOR EXTENSION OF TIME**

Plaintiffs move to seal Document Exhibit G lodged at (Doc. 43) in support of Plaintiff's Reply (Doc. 41).  This is the transcript of the *Loudermill* hearing.  This document is not a public record and contains sensitive information.  The Court, therefore, grants Plaintiffs' request.  Defendants move for an extension up to and including May 26, 2026 to respond to Plaintiffs' Complaint.  The motion is unopposed.  The Court grants Defendants' Motion.

V.    **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED denying** Plaintiffs' second Motion for Temporary Restraining Order and Motion for Preliminary Injunction (Doc. 32).

**IT IS FURTHER ORDERED granting** Plaintiffs' Motion to Seal (Doc. 42).

**IT IS FURTHER ORDERED** directing the Clerk of Court to file under seal Plaintiffs' Exhibit G lodged at (Doc. 43).

**IT IS FURTHER ORDERED granting** Defendants' unopposed Motion for Extension of Time (Doc. 45).  Defendants shall have up to and including **May 26, 2026** to respond to Plaintiffs' Complaint.

Dated this 21st day of May, 2026.

Honorable Susan M. Brnovich
United States District Judge