Steven J. Serbalik, Bar No. 028191
**STEVEN J. SERBALIK, P.L.C.**
4925 E. Desert Cove Ave Unit 116
Scottsdale, Arizona 85254
Telephone: (480) 269-1529
steveserbalik@gmail.com
*Attorney for Dusten Mullen and the Arizona Conference of Police and Sheriffs, Inc*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Dusten Mullen, individually and the Arizona Conference of Police and Sheriffs ("AZCOPS"), an Arizona nonprofit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Matthew Giordano, in his individual capacity as Chief of Police of the Phoenix Police Department; Ed Zuercher, in his individual capacity as City Manager of Phoneix; Dennis Orender, in his individual capacity as Executive Assistant Chief of Police of the Phoenix Police Department; the City of Phoenix, a municipal corporation, and Anna Hernandez, in her individual capacity as Phoenix City Council member, District 7,<br><br>Defendants. | Case No. 2:26-cv-02911-SMB<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT** |

Plaintiffs Dusten Mullen and the Arizona Conference of Police and Sheriffs ("AZCOPS") (collectively "Plaintiffs") file the response in opposition to Defendants' City of Phoenix (the "City"), Matthew Giordano ("Giordano"), Ed Zuercher ("Zuercher"), Dennis Orender ("Orender") and Anna Hernandez ("Hernandez") (collectively, "Defendants") Motion to Dismiss Plaintiffs' Amended Complaint.

## INTRODUCTION

On May 21, 2026, this Court denied Plaintiffs' second Motion for Temporary Restraining Order and Preliminary Injunction but expressly found a strong likelihood of success on the core First Amendment retaliation claim. (Doc. 46 at 14). Plaintiffs now face a Motion to Dismiss that attempts to relitigate facts this Court has already viewed favorably and that relies on extrinsic evidence to undermine the Amended Complaint's well-pleaded allegations.

Plaintiffs submit this Response in Opposition to Defendants' Motion to Dismiss the Amended Complaint ("MTD"). The Amended Complaint ("AC") contains detailed, specific factual allegations that more than satisfy the plausibility standard under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Defendants' arguments ignore these facts, mischaracterize controlling law, and improperly rely on extrinsic evidence.

Defendants improperly rely on extrinsic evidence — a Declaration of Commander Fortune (MTD Ex. 1) — to "contextualize" the April 10, 2026 ENS message that Plaintiffs allege demonstrates predetermination. (*See* MTD at 1). This declaration is not attached to, incorporated by reference in, or integral to the Amended Complaint. Consideration of it requires conversion of the Motion to one for summary judgment under Fed. R. Civ. P. 12(d). (*See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)). Plaintiffs respectfully request that the Court disregard the Declaration or, in the alternative, convert the Motion and deny it (or defer ruling) because Plaintiffs have not had the opportunity to conduct discovery on the issues the Declaration purports to address. In any event, even without the Declaration, the AC's detailed factual allegations regarding the ENS timing, the complete lack of changes after the May 11 Loudermill, and the rushed reclassification are more than sufficient to state plausible claims.

Plaintiffs conferred with Defendants' counsel once and voluntarily filed the Amended Complaint to address certain issues raised in the original Motion to Dismiss. This resulted in an even more extensive MTD again attacking the claims as "threadbare."

Plaintiffs believe the pleading is sufficient. Plaintiffs have additional facts that could be added regarding the actions and decision-making of the individually named defendants, but such detailed factual allegations are not required at the pleading stage. The AC meets and exceeds the notice pleading standard.

Under *Twombly*, a complaint need only contain "enough facts to state a claim to relief that is plausible on its face." (550 U.S. at 555). It does not require "detailed factual allegations," nor must it prove the plaintiff's case at the pleading stage. (*Iqbal*, 556 U.S. at 678). The AC meets and exceeds this standard. Plaintiffs respectfully request that the Court deny the MTD in its entirety so this matter can proceed on the merits.

**Disputed Characterizations in the MTD and Individual Defendants' Involvement**

Defendants repeatedly assert that Sgt. Mullen was baiting children into assaulting him (*See e.g.* MTD at 1, 12; Doc. 50-1 at pp. 69-70). Plaintiffs strongly disagree with this characterization, and the Court has already recognized that Sgt. Mullen contextualized the comment through video evidence showing the sequence of events. (Doc. 46 at 11.) That video evidence was either not adequately reviewed because of the rushed investigation or was wholly ignored by the investigators. The AC and the Loudermill presentation make clear that Mullen's statements occurred only after he was the victim of multiple assaults, reported those assaults to Chandler officers, and sought intervention while surrounded by the crowd. These are disputed factual issues that cannot be resolved against Plaintiffs at the pleading stage.

The AC also contains specific allegations of each named individual defendant's involvement in the First Amendment retaliation. Councilwoman Hernandez publicly and privately pressed for Sgt. Mullen's termination. (AC ¶¶ 49-54). Defendants Zuercher, Giordano, and Orender then rushed the disciplinary process and effected termination based upon protected speech, taking actions inconsistent with how normal PSB investigations are handled. (AC ¶¶ 57-68).

Particularly as to Defendant Zuercher, the AC attaches an email (Doc. 50-1 at p. 64) in which Zuercher expressly states that he "support[s] the steps that the Chief is

taking." When viewed in the light most favorable to Plaintiffs, this statement demonstrates that the City Manager not only knew about the termination and the rushed process but affirmatively supported the unconstitutional actions. Combined with the other well-pleaded allegations in the AC — including the abrupt reclassification only after media coverage and political pressure, the denial of additional time to review evidence, and the complete failure to make any changes after a detailed Loudermill presentation — these facts are more than sufficient to state plausible claims against Zuercher and to survive a motion to dismiss.

**STATEMENT OF FACTS**

On January 30, 2026, Sgt. Dusten Mullen, while off duty and not in uniform, went to the area near Hamilton High School in Chandler, Arizona because his children attend the school and he was concerned that one of them might be participating in or affected by a student walkout protesting Immigration and Customs Enforcement (ICE) (Doc. 50-1 p. 69, Ex. H). He wore a pro-Trump t-shirt and a face covering to conceal his identity. (*See id.*). He was lawfully carrying a personally owned handgun and extra magazines as a non-prohibited possessor under Arizona law. (*See* AC ¶ 17). He did not identify himself as a Phoenix police officer or City employee at any time. (AC ¶ 15).

While lawfully present as a private citizen, Sgt. Mullen was confronted by anti-ICE protestors engaged in unlawful activity, including multiple assaults upon him. (AC ¶¶ 15–19). Chandler Police officers on scene recognized that Sgt. Mullen was lawfully engaged in counter-protesting. (AC ¶ 15). Sgt. Mullen reported to Chandler officers that he was the victim of assault and requested that the assaultive behavior stop and that the individuals who assaulted him be held accountable. (*See* AC ¶ 19). Chandler Police confirmed that Sgt. Mullen was the victim of assault, arrested the individual who threw a water bottle at him, and ultimately escorted him from the scene in a patrol car after he provided his true name for the assault report (Doc. 50-1 p. 70 (Ex. H to the AC)) Chandler PD publicly stated that the "masked individual" (Mullen) "did not commit any crimes." (AC ¶ 15).

Sgt. Mullen made a timely notification to his supervisor approximately 90 minutes

after the assault. (AC ¶ 19). The supervisor was interviewed by PSB on February 11, 2026 and confirmed the timely notification, including details about Mullen's attire, attendance at the protest, and that he had been assaulted. (AC ¶ 23.)

The initial PSB investigation did not contemplate termination-level discipline. (AC ¶ 23). Lt. Bryon Bewley (the primary investigator) and others understood the matter would be classified at a lower level (e.g., Class I or II), entitling Mullen to the standard Investigative Review Process ("IRP") under Operations Order 2.2.00. (AC ¶ 34, 47). Prior to media coverage, PSB investigators communicated that the investigation was not heading toward termination. (AC ¶¶ 31–35).

After media coverage began on or about April 8, 2026, and after Councilwoman Anna Hernandez publicly called for Sgt. Mullen's removal on Fox10 and other outlets and directly contacted Chief Giordano advocating for termination, the investigation was abruptly reclassified as a Class III violation eligible for termination. (AC ¶¶ 23, 27, 35-46, 50-52, 60). This reclassification occurred only after external political pressure. (AC ¶ 38). PSB investigators, including Lt. Bewley, were denied additional time to review evidence (including complete body-worn camera footage and materials submitted by Mullen and Lt. Thatcher on April 20, 2026). (AC ¶ 36). The investigation was rushed and re-written by another lieutenant without Bewley's full involvement. (AC ¶¶ 37).

At the May 11, 2026 Loudermill hearing, Plaintiffs presented a detailed two-hour submission that included synced cellphone and pole-cam video evidence contradicting key PSB findings, Chandler officer statements confirming Mullen was the victim and a lawful counter-protester, Hamilton student witness accounts, and specific citations to material omissions in the PSB report. (AC ¶¶ 62–64). No changes whatsoever were made to the investigation or sustained findings. (AC ¶ 63).

Chief Giordano had already issued an ENS message on April 10, 2026—weeks before the Loudermill—using language strongly suggesting termination was predetermined ("when an employee's conduct is so serious that continued employment might no longer be viable"). (AC ¶ 59; *see also* Doc. 35-1 p. 6 (Ex. F)). The original April

10 ENS did not contain the later-added footnote that Defendants now claim was a "template error." (AC ¶¶ 59–60.)

On May 14, 2026, Sgt. Mullen was formally terminated (Doc. 50-1 p. 67 (Ex. H). The termination has caused concrete, irreparable harm, including severe reputational damage, media-fueled family court proceedings involving his minor children, loss of consortium and enjoyment of family life, and a chilling effect on other AZCOPS members regarding off-duty First Amendment activity. (AC ¶¶ 79–82.)

Arizona Supreme Court precedent in *McMichael-Gombar v. Phoenix Civil Service Board*, 538 P.3d 1032 (Ariz. 2023), confirms that the Civil Service Board cannot adjudicate facial or as-applied constitutional challenges. (AC ¶ 67). The only adequate forum for these claims is federal court under § 1983.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in the light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

As detailed above, Defendants' reliance on the extrinsic Declaration of Commander Fortune requires conversion under Rule 12(d) if considered. *See Khoja*, 899 F.3d at 998. Plaintiffs request the Court disregard it or convert and deny the motion.

## ARGUMENT

### I. Plaintiffs Have Stated Plausible Monell Claims Against the City (and Individual Policymakers)

Monell liability attaches in multiple ways: (1) an unconstitutional official policy or custom; (2) a final policymaker's ratification of unconstitutional conduct; or (3) a final policymaker's own unconstitutional decision or policy. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-83

(1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122-23, 127 (1988).

The AC alleges all three theories. The City's argument that only the City Council can be a final policymaker for First Amendment matters is incorrect and contradicted by the Phoenix City Charter and actual practice. Chief Giordano is expressly authorized to promulgate Operations Orders — standing policies of the Phoenix Police Department — without City Manager or City Council approval or ratification. *See* Phoenix City Code (PCC) §2-219.a "There shall be a Police Department, headed by a [Police Chief]. He shall…establish training programs…[and]…establish rules and departmental policies…" These Operations Orders are the Police Departments "rules" as contemplated by PCC §2-219.a, and are the primary policies governing officer conduct, discipline classification, and off-duty behavior. Giordano's authority to issue, interpret, and enforce these policies makes him a final policymaker for purposes of Monell liability in this context. *See Barone v. City of Springfield*, 902 F.3d 1091, 1107-9 (9th Cir. 2018).

Defendants' reliance on *Gillette v. City of Eugene* is misplaced. First, the ruling in *Gillette* took place after a jury trial. Second, the plaintiff in *Gillette* did not provide any evidence that the fire chief had final policymaking authority—e.g., policymaking authority had been delegated or the decision ratified by the City Manager. *See* 979 F.2d 1342, 1348 (9th Cir. 1992) (noting there was no evidence the City Manager made a deliberate choice to endorse the Fire Chief's decision and the basis for it). Where final policymaking authority over employee discipline is delegated, the City would be liable under Monell. *See Barone*, 902 F.3d at 1108-9 (recognizing police chief authority in operational and policy matters, including employee discipline, and creating a triable issue on delegation from the City Manager). The Amended Complaint makes sufficient factual allegations to survive a Motion to Dismiss and proceed to discovery on the degree to which decision-making authority was delegated in this matter.

The City's characterization of the Police Operations Orders as merely procedural is false — or at a minimum is a disputed factual issue that warrants discovery. Operations Order 2.1.01.5 contains substantive classification criteria (including vague "Class III"

factors such as conduct that "violated the oath of office or basic Department values") that directly determine whether an officer faces suspension, demotion, or termination. Operations Orders 4.7.00.2.E, 1.1.2.C(2), and 4.7.00.3.D impose substantive restrictions on off-duty conduct and speech. These Amended Complaint alleges that these policies were applied to Mullen's protected off-duty First Amendment activity (wearing a political t-shirt, counter-protesting on a matter of public concern) in a manner that disparately impacted disfavored viewpoints after political pressure from Councilwoman Hernandez. This is not neutral procedure; it is substantive policy that chills protected speech.

The AC further alleges a custom or practice of political interference in disciplinary matters and failure to train/supervise on First Amendment protections for off-duty speech. The April 10 ENS, the abrupt reclassification after Hernandez's intervention, the cancellation of the re-interview, and the complete failure to modify the investigation after a detailed Loudermill presentation (Doc. 50-1 at p. 64) all support ratification and custom theories. *See* AC ¶¶ 59-72. Furthermore, Zuercher made an express statement supporting "the steps that the Chief is taking" ratifies the decision. *See St. Louis v. Praprotnik*, 485 U.S. 112, 127 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be shareable to the municipality because their decision is final").

When viewed in the light most favorable to Plaintiffs, Zuercher's support demonstrates not only knowledge of the rushed and politicized process but affirmative endorsement of the unconstitutional actions. At minimum, facts as pled and the exhibits attached and incorporated into the Amended Complaint, when viewed in a light most favorable to Plaintiffs, create a triable issue regarding who possessed policymaking authority, and discovery is needed on internal communications, the scope of the Chief's and City Manager's policymaking authority, and the actual application of these Operations Orders.

Plaintiffs have plausibly alleged Monell liability. The MTD should be denied on this ground.

## II. Plaintiffs Have Stated Plausible First Amendment Retaliation Claims, Including Chilling Effect (Legal Framework and Application)

The First Amendment protects public employees from retaliation for speaking on matters of public concern. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). As this Court recognized in its May 21, 2026 Order, Plaintiffs have shown a strong likelihood of success on their First Amendment retaliation claim. (Doc. 46 at 14). Speech addresses a matter of public concern when it relates to "any matter of political, social, or other concern to the community." *See Connick v. Myers*, 461 U.S. 138, 146 (1983). Here, Sgt. Mullen's off-duty counter-protesting on immigration enforcement and ICE policies — a matter of intense national and local debate — plainly qualifies as protected speech on a matter of public concern. *See id.*

Courts then apply the Pickering balancing test, weighing the employee's interest in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Pickering*, 391 U.S. at 568; *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). The Ninth Circuit has applied this framework in cases involving Phoenix Police Department policies and off-duty speech. In *Hernandez v. City of Phoenix*, the court held that a Phoenix police sergeant's off-duty social media posts addressing matters of social and political concern (even controversial ones) constituted protected speech on matters of public concern. 43 F.4th 966, 978-79 (9th Cir. 2022). The court emphasized that speech does not lose protection merely because it is distasteful or because the employer dislikes the viewpoint, and it remanded for proper application of the Pickering balancing test rather than premature dismissal. *Id.* at 978–82.

The same principles apply here with even greater force. Mullen's speech was off-duty, anonymous (face covering and non-identifying attire), made as a private citizen concerned about his children's activities near their school, and did not involve any actual disruption to PPD operations. The MTD's attempt to characterize it as unprotected "conduct" is contradicted by the video evidence (which this Court has already noted

Mullen used to contextualize his statements) and Chandler PD's own public statement that Mullen "did not commit any crimes." *See* Doc. 46 at 11; AC ¶ 15. The government's interest in efficiency is not meaningfully advanced by punishing such speech, particularly when the only "disruption" alleged stems from the City's own incomplete or misleading public statements that amplified media coverage.

Retaliation for protected speech also creates an impermissible chilling effect on the speech rights of other employees. *See, e.g.*, *Connick v. Meyers*, 461 U.S. 138, 144-45 (1983) (recognizing that the threat of discipline or termination for exercising First Amendment rights deters others from speaking on matters of public concern). Here, the AC alleges — and the revised facts support — that AZCOPS members have expressed concern about their ability to engage in off-duty protest or counter-protest activity without facing similar politicized discipline. *See* AC ¶¶ 73-74. The rushed reclassification, Zuercher's supportive email, the failure to follow normal investigative processes, and the public termination announcement all amplify this chilling effect. This Court's finding of strong likelihood of success on the retaliation claim (Doc. 46) further supports that the balance under Pickering tips in Plaintiffs' favor at this stage. Plaintiffs have therefore stated plausible First Amendment retaliation claims, including the associated chilling effect on protected speech. The MTD should be denied.

## III. Plaintiffs Have Stated a Plausible Procedural Due Process Claim

The AC alleges that the Loudermill hearing was not meaningful because the decision to terminate was predetermined (evidenced by the April 10 ENS and zero changes after the hearing) and because there is no adequate post-deprivation remedy for constitutional claims under *McMichael-Gombar* (civil service board cannot hear facial or as-applied constitutional challenges). 538 P.3d at 1039-40; *see also Walls v. Central Contra Costa Transit Auth.*, 653 F.3d 963, 968 (9th Cir. 2011) (pre-termination hearing must provide a meaningful opportunity to invoke the decisionmaker's discretion).

Defendants' reliance on the investigation-phase distinction is misplaced where, as here, the process itself was a sham - all because the Defendants did not like Sgt. Mullen's

off-duty expressive conduct and engaged in public comments to that effect. The MTD should be denied.

## IV. Qualified Immunity Does Not Bar Claims Against Individual Defendants at This Stage

The right to be free from retaliation for protected First Amendment speech on matters of public concern was clearly established. *See Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Rankin v. McPherson*, 483 U.S. 378 (1987); *Hernandez v. City of Phoenix*, 43 F.4th 966 (9th Cir. 2022). The AC alleges specific facts showing viewpoint discrimination and political pressure targeting Mullen's off-duty protected activity, including Zuercher's express support for the Chief's steps. *See, e.g.*, AC ¶¶ 23, 29, 34-38, 50-51, 58-59, 71. Fact-intensive Pickering balancing and the question of whether the individual defendants were integral participants or acted with the requisite intent are not properly resolved on a motion to dismiss. Thus, the MTD should be denied as to the individual defendants.

## V. Plaintiffs Have Stated Plausible Vagueness and Overbreadth Claims as Applied

The Operations Orders cited in the AC are unconstitutionally vague as applied to Mullen's protected off-duty speech and expressive conduct. AC ¶¶ 39, 41, 85, 89. They lack sufficiently clear standards to prevent arbitrary enforcement against disfavored viewpoints. The City's argument that they are purely procedural ignores their substantive impact on discipline and speech rights. These are disputed issues that survive a motion to dismiss. The MTD should be denied on Count IV.

## VI. State-Law Claims Are Properly Before the Court

Plaintiffs' state-law claims (including under the Arizona Constitution Art. 2 § 6 and POBOR just-cause principles) are properly brought under supplemental jurisdiction. To the extent any standalone private right of action is disputed, the federal claims provide the anchor. The MTD should be denied or the claims permitted to proceed under supplemental jurisdiction.

## VII. Official-Capacity Claims Against Individual Defendants Are Duplicative but Do Not Warrant Dismissal of the Entire Action

Official-capacity claims against individual defendants are duplicative of claims against the City. To the extent that the Court finds that any official-capacity claims remain, Plaintiffs do not oppose dismissal of purely duplicative official-capacity claims while maintaining the claims against the City and the individuals in their personal capacities.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court:

1. Disregard or strike the Declaration of Commander Fortune (MTD Ex. 1) or, alternatively, convert the Motion to summary judgment and deny it (or grant a Rule 56(d) continuance);
2. Deny Defendants' Motion to Dismiss in its entirety; and
3. Grant such other and further relief as the Court deems just and proper, including an order directing the parties to proceed with discovery on the merits.

RESPECTFULLY SUBMITTED this 13th day of July, 2026.

**STEVEN J SERBALIK, P.L.C.**

By: /s/Steven J. Serbalik
Steven J. Serbalik
4925 E. Desert Cove Ave #116
Scottsdale, Arizona 85254
*Attorney for Plaintiffs Dusten Mullen and AZCOPS*

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing. A copy was also served via ECF on all counsel of record.

/s/ Steven J. Serbalik