Justin S. Pierce (State Bar #022646)
Stephen B. Coleman (State Bar #021715)
Alexandra N. Cayton (State Bar #038580)
**PIERCE COLEMAN PLLC**
17851 North 85th Street, Suite 175
Scottsdale, AZ 85255
Tel. (602) 772-5506
Fax (877) 772-1025
Justin@PierceColeman.com
Steve@PierceColeman.com
Alex@PierceColeman.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Dusten Mullen, individually and the Arizona Conference of Police and Sheriffs ("AZCOPS"), an Arizona nonprofit corporation,

Plaintiffs,

v.

Matthew Giordano, in his individual capacity, as Chief of Police of the Phoenix Police Department; Ed Zuercher, in his individual capacity, as City Manager of Phoenix; Dennis Orender, in his individual capacity, as Executive Assistant Chief of Police of the Phoenix Police Department; the City of Phoenix, a municipal corporation, and Anna Hernandez, in her individual capacity, as Phoenix City Council member, District 7,

Defendants.

Case No: 2:26-cv-02911-SMB

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs' Response confirms that the Amended Complaint cannot survive dismissal. Rather than meaningfully address the arguments and authority set forth in Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion"), Plaintiffs' Response ignores multiple arguments; attempts to rely on conclusory allegations masquerading as purported "disputed facts"; cites to irrelevant portions of the Court's preliminary injunction ruling—which did not address the specific legal deficiencies raised in the Motion; and impermissibly suggests that discovery will supply the factual support their pleading lacks.[1] *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) ("Our case law does not permit plaintiffs to rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery."). Plaintiffs' Response fails to show how their Amended Complaint satisfies the plausibility standard articulated in *Twombly* and *Iqbal*.

Plaintiffs' insistence that they have sufficiently alleged the elements of a First Amendment retaliation claim also misses the mark. Although Defendants dispute the merits of that claim, the Motion does not seek dismissal on that basis. Plaintiffs devote much of their Response to refuting merit-based arguments Defendants never made, while largely ignoring the actual grounds for dismissal raised in the Motion. For example, Plaintiffs do not substantively address Defendants' arguments that they have failed to plausibly establish *Monell* liability or integral participation by the individuals. Defendants respectfully request that the Court grant their Motion and dismiss this action in its entirety.[2]

---

[1] Plaintiffs' objection to Commander Fortune's declaration does not rescue their Amended Complaint from dismissal. Defendants attached the declaration solely because, during oral argument on May 18, 2026, Defendants represented that they would provide the Court with a sworn statement. The declaration was included to fulfill that representation—not because it bears on the merits of Defendants' Rule 12(b)(6) arguments. Indeed, the declaration is not necessary to resolve any issue raised in the Motion. Accordingly, Defendants agree with Plaintiffs that the Court can disregard the declaration for purposes of deciding the Motion.

[2] Plaintiffs incorrectly assert that the parties conferred once. In fact, the parties conferred before Plaintiffs filed their Amended Complaint and again before Defendants filed the

## ANALYSIS

### I. PLAINTIFFS' RESPONSE HAS NOT CURED THEIR FAILURE TO PLAUSIBLY ESTABLISH *MONELL* LIABILITY.

Plaintiffs have not plausibly alleged any *Monell* liability theory. As to practice or custom, Plaintiffs' Response relies exclusively on allegations concerning the City's alleged treatment of *Mullen*. [Doc. 61, p. 8] The City's alleged differential treatment of a single employee (*i.e.*, Mullen) cannot plausibly establish a widespread pattern of alleged constitutional violations required for a practice-or-custom claim. In fact, the Ninth Circuit affirmed an Oregon District Court's ruling on this issue:

> Plaintiff alleges a single strategy/scheme/conspiracy to depress property values and inhibit property sales … which occurred over a period of several years and involved several employees of Defendant. Although this strategy/scheme/conspiracy did not occur on a single day or with a single employee, it is equivalent to a single incident because it depends on a single coordinated plan. Additionally, while the TAC does not affirmatively allege that Plaintiff was the sole target of the plan, Plaintiff makes no allegations that any other property owners were the victim of this strategy/scheme/conspiracy. Thus, the inverse condemnation claim asserts a single plan targeting a single individual. This is inconsistent with the facts required to establish a widespread, pervasive custom under *Monell.*

*Emmert v. Clackamas Cnty.*, No. 03:13-CV-01317-YY, 2017 WL 1946321, at *9 (D. Or. 2017), *aff'd*, 765 F. App'x 229 (9th Cir. 2019). Given that Plaintiffs allege a single claim, involving a single individual, Plaintiffs cannot establish a practice or custom theory.

Plaintiffs' final-policymaker theory fares no better. The City Council (the "Council"), not Giordano or Zuercher, is the City's final policymaker with respect to matters involving the First Amendment. [*See* Doc. 60, p. 6–8] Plaintiffs argue that Giordano qualifies as a final policymaker because he issues City of Phoenix Police Department ("PPD") Operations Orders. However, the authority to promulgate PPD policies is not the same as the authority to establish *final* municipal policy for the challenged action (*i.e.*, First Amendment retaliation) *on behalf of the City*. *See Barlow v. Town of Colorado City*, No. CV-23-08506-PCT-SMB, 2024 WL 1639142, at *6 (D. Ariz. 2024), *aff'd*, No. 24-3118, 2025 WL 1404944 (9th Cir. 2025) ("Mere exercise of

---

Motion. Indeed, as part of the second conferral, Defendants provided Plaintiffs' counsel with a copy of the Motion several days before it was filed.

discretion in exercising specific functions does not establish municipal liability."). The Council adopted policies prohibiting terminations based on political affiliation, demonstrating that it—not Giordano or Zuercher—is the final policymaker on that subject. [Doc. 60, p. 6–8]

Plaintiffs' attempt to distinguish *Gillette v. Delmore* is unavailing. There, the plaintiff alleged that the fire chief had "final authority with respect to disciplining fire fighters and had been delegated de facto authority to establish personnel policy with the Fire Department." 979 F.2d 1342, 1349 (9th Cir. 1992). Likewise, Plaintiffs allege that Giordano has authority to discipline employees and establish PPD policies. However, the Ninth Circuit held in *Gillette* that such authority did not make the chief a final policymaker because the city charter and ordinances vested final authority over employment policy in the city manager and council. *Id.* at 1350. The same reasoning applies here. Even if Giordano has authority to discipline employees and issue PPD policies, that does not make him the City's final policymaker with respect to alleged First Amendment violations. The Council is the City's final policymaker on First Amendment matters.[3]

With respect to Plaintiffs' procedural due process claim, the District of Arizona has already held that City Manager Zuercher, not the PPD Police Chief, is the final policymaker for unappealable disciplinary matters.[4] *Collins v. City of Phoenix,* No. CV-23-01440-PHX-DLR, 2024 WL 4528165, at *6 (D. Ariz. 2024) ("And as a matter of law,

---

[3] Plaintiffs do not respond to Defendants' argument that they have failed to plausibly establish liability for failure-to-train, which may be deemed a waiver of that issue. *See Green v. Ariz. Bd. of Regents*, No. CV-18-04665-PHX-SPL, 2020 WL 2512759, at *4 (D. Ariz. 2020) ("Failure to respond to an argument set forth in a motion to dismiss constitutes waiver of the issue by the party opposing the motion and is an adequate basis for granting the motion to dismiss.").

[4] The circumstances here, however, are materially different from those in *Collins*, which only involved a due process claim, not First Amendment retaliation. *Collins* does not alter the conclusion that for purposes of Plaintiffs' First Amendment retaliation claim, the Council—not the City Manager—is the final policymaker. But even assuming, *arguendo*, that the City Manager were the final policymaker for both claims, Plaintiffs' Amended Complaint still fails because it lacks sufficient facts to plausibly establish ratification or delegation by Zuercher.

Williams [the former PPD Police Chief] is not a final policymaker; she was merely delegated the power to make certain employment decisions in the police department.”). Therefore, for Plaintiffs’ Section 1983 claims to survive dismissal, they must plausibly allege that Zuercher ratified the challenged conduct or delegated his final policymaking authority to Giordano, whose alleged unlawful decision constituted the City’s final, unreviewable policy on the matter. They have done neither.

Plaintiffs attempt to establish ratification by claiming that Zuercher stated in an e-mail that he supports “the steps the Chief is taking.” [Doc. 61, p. 8] However, ratification requires more than generalized support for a subordinate’s decision or a failure to overrule it. Rather, a final policymaker must make a “deliberate choice” among alternatives and knowingly approve both the subordinate’s decision *and the unconstitutional basis for it*. *Gillette* is instructive regarding the shortcomings of Plaintiffs’ allegations:

> Gillette contends that the City Manager, by not countermanding the Fire Chief’s final decision to terminate Gillette and by not objecting to the hiring of counsel to represent the City in the arbitration of Gillette’s grievance, ratified the Fire Chief’s decision and thereby effectively made employment policy. Gillette relies primarily on the statement in *Praprotnik* that ‘[i]f the authorized policymakers approve a subordinate’s decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.’ … [however,] Gillette’s evidence is not sufficient under *Pembaur* or *Praprotnik* to establish section 1983 liability based on the City Manager’s alleged acquiescence in Gillette’s termination.

*See Gillette*, 979 F.2d at 1347–48. Here, Plaintiffs allege no facts plausibly showing that Zuercher knew of Giordano’s alleged retaliatory motive or deliberately chose to approve it. At most, the Amended Complaint alleges that Zuercher acquiesced in Giordano’s decisions. Mere acquiescence in, or failure to countermand, a subordinate’s discretionary decision does not plausibly demonstrate ratification. *See id*. Were it otherwise, *Monell*’s stringent requirements would impermissibly collapse into respondeat superior liability.

Finally, Plaintiffs have not plausibly established that Zuercher delegated his final policymaking authority to Giordano. Plaintiffs’ reliance on *Barone v. City of Springfield* is misguided. 902 F.3d 1091, 1109 (9th Cir. 2018). *Barone* did not address the critical

issue presented here—whether a City official's employment decisions can constitute final municipal policy when those decisions are subject to meaningful administrative review. As discussed in Defendants' Motion, an official is not a final policymaker when their decisions are reviewable. *See Chung v. Cnty. of Santa Clara*, 614 F. Supp. 3d 709, 727 (N.D. Cal. 2022) (district attorney was not a final policymaker where his personnel decisions were appealable to the county's personnel board). In fact, the District of Arizona has already held that a City of Phoenix Department Director who terminated an employee "was not delegated final policymaking authority because his termination of Plaintiff was subject to review and approval by both Zuercher and the Civil Service Board." *Day v. City of Phoenix*, No. CV-22-00177-PHX-DGC, 2023 WL 7018044, at *3 (D. Ariz. 2023), *aff'd*, No. 23-3751, 2025 WL 2028295 (9th Cir. 2025).[5]

Here, Giordano's decision to terminate Mullen was appealable to the City's Civil Service Board (the "Board"), and Mullen appealed his termination. [Doc. 60, p. 7 nl.4, 74–75] Therefore, Giordano does not make the final determination regarding Mullen's employment status, as the Board could vote to overturn Mullen's termination. [*Id.*] That fact alone defeats Plaintiffs' argument that Giordano was a final policymaker. Plaintiffs have not plausibly established any theory of *Monell* liability, and thus, their Section 1983 claims against the City fall short.

## II. PLAINTIFFS HAVE NOT STATED A PLAUSIBLE PROCEDURAL DUE PROCESS CLAIM.

Mullen received all the process that the Constitution requires. Pretermination due process requires notice and an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544–45 (1985). Plaintiffs concede that Mullen received notice of the grounds for discipline and a two-hour Loudermill hearing at which he was

[5] Although *Day* involved a First Amendment retaliation claim, the parties agreed that Zuercher was the final policymaker, and the Court therefore had no occasion to consider whether Council was the City's final policymaker with respect to First Amendment matters. 2023 WL 7018044, at *3. Accordingly, *Day* does not resolve that issue. Defendants maintain that, with respect to First Amendment retaliation claims, the Council, not Zuercher, is the City's final policymaker.

represented by counsel and presented extensive evidence. Thus, Plaintiffs' "sham" pretermination hearing theory does not state a claim. [Doc. 61, p. 10] A pretermination hearing need not resolve the propriety of the discharge; it is only an "initial check against mistaken decisions[.]" *Cleveland*, 470 U.S. at 545. The fact that the City did not alter its findings after the hearing shows that Mullen's presentation did not persuade Giordano, not that no meaningful hearing occurred. Due process guarantees an opportunity to be heard, not a particular result.

Plaintiffs' remaining grievances—reclassification as a Class III violation and bypassing of the Investigative Review Process ("IRP")—concern the investigation, not the deprivation of any protected property interest. As the Motion explained, due process attaches at the deprivation stage, and there is no constitutional right to any particular investigative procedure. [*See* Doc. 60, p. 10–11] Plaintiffs identify no authority to the contrary and do not meaningfully engage with the extensive authority cited in the Motion holding precisely that. Instead, they simply reassert that the investigation was improperly handled. But disagreement with an employer's investigative procedures does not state a due process claim. Plaintiffs' conclusory assertions are insufficient to avoid dismissal.

Finally, Plaintiffs are mistaken that the City's Civil Service Board lacks jurisdiction to adjudicate Mullen's First Amendment arguments. In fact, *McMichael-Gombar v. Phoenix Civ. Serv. Bd.*, stands for the opposite proposition. 538 P.3d 1032 (Ariz. 2023). There, a City police officer was disciplined for posting content that violated the City's social media policy. *Id.* at 1035. During her personnel appeal, the officer argued that the City's policy was unconstitutionally overbroad and, therefore, violated the First Amendment. *Id.* The court found that the Board lacked authority to *invalidate* the social media policy, reasoning as follows:

> [O]nly courts may declare laws and rules unconstitutional, either facially or as applied, and enjoin their application. Here, McMichael-Gombar sought to introduce evidence and argue that the Policy is overbroad and unconstitutional under the First Amendment. Although she did not seek a binding declaration, her request for relief from discipline on that basis effectively asked the Board to decide the constitutionality of the Policy and enjoin its application. And because the Board's decision is final and non-appealable if the Board decided

> the issue, the courts would have no opportunity to review that decision. The Board would have usurped the courts' constitutionally granted authority to decide the Policy's constitutionality … Our narrower interpretation of the Board's authority avoids this infringement on judicial authority.

*Id.* at 1039 (citations omitted). Nevertheless, the court held that the Board could consider whether the City's policies were applied unconstitutionally to the plaintiff, stating:

> McMichael-Gombar correctly points out that claimants routinely raise constitutional arguments in administrative proceedings. We reiterated in *Mills v. Arizona Board of Technical Registration* that agencies "may apply constitutional doctrines when resolving claims." An agency, however, can only apply those doctrines to issues it is authorized to resolve. Here, for example, because the Charter requires the Board to interpret personnel rules in an employee's appeal it may apply the First Amendment in discarding an interpretation that would violate an employee's rights when resolving that appeal.

*Id.* at 1038–39 (citations omitted). Here, Plaintiffs argue that the City has applied its disciplinary policies in a manner that infringes upon Mullen's First Amendment right to engage in protected speech. This matter presents the very issues that the *McMichael-Gombar* Court held fall within the Board's authority to resolve. Plaintiffs have not plausibly stated a procedural due process claim.

## III. PLAINTIFFS' RESPONSE SHOWS WHY QUALIFIED IMMUNITY BARS MULLEN'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS.

Plaintiffs do not carry their burden to overcome qualified immunity. To defeat immunity, Plaintiffs must show the violation of a right that was clearly established such that every reasonable official would have understood his conduct was unlawful in the situation he or she confronted. *Felarca v. Birgeneau*, 891 F.3d 809, 816 (9th Cir. 2018). Plaintiffs' Response identifies the First Amendment right only at the highest level of generality—a general right to be free from retaliation for protected speech. [Doc. 61, p. 9] However, clearly established law must be defined with specificity, and Plaintiffs must identify precedent placing the alleged unlawfulness of the challenged conduct beyond debate in the factual context presented here. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (finding that public officials "are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue."). They have not done so.

Because a public-employee speech claim turns on the fact-intensive, case-by-case *Pickering* balance, the Ninth Circuit has recognized that "the context-specific, fact-intensive nature of the *Pickering* inquiry will generally preclude the law regarding public-employee-speech claims from being sufficiently clearly established to defeat qualified immunity." *Moran v. State of Wash.*, 147 F.3d 839, 846 (9th Cir. 1998). Plaintiffs' own framing—that the application of the *Pickering* balance and the individual Defendants' intent present fact issues unsuitable for resolution on the pleadings—concedes that the governing law was not clearly established on these facts. [Doc. 61, p. 11] That concession entitles the individual Defendants to qualified immunity.

## IV. PLAINTIFFS HAVE NOT PLAUSIBLY SHOWN THAT THE INDIVIDUAL DEFENDANTS INTEGRALLY PARTICIPATED IN ANY VIOLATIONS.

Plaintiffs contend that the Amended Complaint contains specific allegations about the individual Defendants' involvement in the alleged First Amended retaliation. Not so. Mere involvement in the investigatory or disciplinary process is not the same as "integral" participation in an alleged constitutional violation. *See Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022). A government official is an integral participant *only if* he or she (1) knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) set in motion a series of acts by others that he knew or reasonably should have known would cause the constitutional injury. *Id.* Plaintiffs' Response does not adequately explain how the alleged actions of Hernandez, Orender, or Zuercher satisfy either prong.

As to Hernandez, Plaintiffs argue only that she publicly and privately advocated for Mullen's termination. [Doc. 61, p. 3] Under City policy, a councilmember has no authority to discipline an employee. City Code Art. II, § 2-49. Plaintiffs identify no facts showing that Hernandez directed, made, or had any authority over the termination decision. Even if Plaintiffs' allegations that Hernandez publicly and privately advocated for Mullen's termination were sufficient to establish acquiescence (they are not),

Plaintiffs still fail to plausibly allege that Hernandez knew that Giordano's conduct was allegedly unlawful. *See Kirk v. City of Phoenix*, No. CV-23-00836-PHX-MTL, 2025 WL 1952677, at *5 (D. Ariz. 2025) ("To be 'integral participants,' officials must have at least the same level of intent as would be required if the official were directly to deprive the victim of his constitutional rights."). The allegations are equally consistent with the inference that Hernandez supported Mullen's termination for legitimate, non-retaliatory reasons, such as dishonesty. Plaintiffs' conclusory allegation that Hernandez acted for improper purposes is speculative and insufficient to survive a Rule 12(b)(6) motion.

As to Orender and Zuercher, Plaintiffs continue to rely on their alleged roles in the investigative process—not the alleged retaliatory termination that forms the basis of Plaintiffs' retaliation claim. [*See* Doc 61, p. 3] Plaintiffs allege no plausible facts showing that Orender or Zuercher participated in Giordano's decision to terminate Mullen or otherwise took part in the alleged constitutional deprivation. They also do not plausibly allege that either acted with the intent necessary to deprive Mullen of his constitutional rights. *See Kirk*, 2025 WL 1952677, at *5.

As for Zuercher specifically, in an attempt to establish acquiescence, Plaintiffs point to his alleged statement that he agreed with the Chief's handling of the matter. That allegation does not plausibly establish the knowing, deliberate participation in the alleged retaliatory termination required under the integral participation doctrine. At most, Plaintiffs allege generalized approval of the investigation—not participation in the allegedly unconstitutional employment decision. Thus, Plaintiffs' allegations against both Zuercher and Orender are conclusory and fail to state a plausible Section 1983 claim.

## V. PLAINTIFFS HAVE NOT STATED PLAUSIBLE VAGUENESS AND OVERBREADTH CHALLENGES TO THE PPD OPERATIONS ORDERS.

Plaintiffs conflate distinct Operations Orders and, in doing so, mischaracterize Defendants' arguments. Defendants did not argue that every cited Operations Order ("Ops Order") is immune from a vagueness challenge. Rather, Defendants make two separate arguments: (1) Ops Order 2.1.01.5 is a procedural policy and therefore is not

subject to a void-for-vagueness challenge, and even if it was not procedural, it is not unconstitutionally vague; and (2) the remaining challenged Ops Orders are subject to vagueness review but are not unconstitutionally vague as a matter of law.

First, contrary to Plaintiffs' assertion, Ops Order 2.1.01.5 is procedural and not subject to a vagueness challenge. The policy does not regulate or sanction conduct. Plaintiffs' own theory confirms this: they complain that the Class III classification deprived Mullen of the IRP. [*See* Doc. 61, p. 5, 11] That is a challenge directed at investigative procedures. Although the policy implicates certain conduct, it does so only to facilitate the investigative process. It does not establish the substantive standards of conduct that subject an employee to discipline. Moreover, as explained in Defendants' Motion, Ops Order 2.1.01.5 is not unconstitutionally vague, and Plaintiffs have failed to adequately rebut Defendants' arguments.

Even though Ops Orders 4.7.00.2.E, 1.1.2.C(2), and 4.7.00.3.D are subject to vagueness review, they are not unconstitutionally vague or overbroad as a matter of law. Plaintiffs' Response devotes only a few lines to this issue, offering no analysis and no authority explaining why the Ops Orders fail to provide constitutionally adequate notice. That omission is telling. The Supreme Court has long recognized that workplace standards need not catalog every conceivable form of prohibited conduct to satisfy due process. For example, in *Arnett v. Kennedy*, the Supreme Court upheld a statute authorizing discipline for "such cause as will promote the efficiency of the service," concluding that the standard provided constitutionally sufficient notice despite its broad application. 416 U.S. 134, 163 (1974). The policies challenged here—including requirements that officers maintain integrity, exercise sound judgment, and refrain from conduct that brings discredit or embarrassment upon the PPD—are at least as definite. [*See* Doc. 60, p. 22] A reasonable police officer, and certainly an experienced sergeant, would understand what those standards require. Plaintiffs cite no authority holding otherwise. Plaintiffs have not plausibly established that the Ops Orders are

unconstitutionally vague or overbroad. *See Johnson v. City of Phoenix*, No. CV-25-01300-PHX-SHD, 2026 WL 799281, at *11 (D. Ariz. 2026) (dismissing a vagueness challenge at the Rule 12(b)(6) stage where the complaint failed to plausibly allege constitutional vagueness).[6]

## VI. THE STATE CLAIMS ARE NOT PROPERLY BEFORE THE COURT.

Plaintiffs do not meaningfully defend their state-law claims. Instead, Plaintiffs respond only by asserting that this Court may exercise supplemental jurisdiction over those claims. That argument completely misses the mark. Supplemental jurisdiction addresses only the Court's authority to adjudicate state-law claims; it does not create a cause of action where none exists, confer a private right of action that the Arizona Legislature or Arizona courts have not recognized, or relieve Plaintiffs of their obligation to plead a legally cognizable claim. *Montana-Dakota Utilities Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 249 (1951) ("As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action. The Judicial Code, in vesting jurisdiction in the District Courts, does not create causes of action, but only confers jurisdiction to adjudicate those arising from other sources which satisfy its limiting provisions."). Here, Plaintiffs identify no authority establishing a private right of action under Section 2-49 of the City Code, the Peace Officers' Bill of Rights, or Article 2, Section 6 of the Arizona Constitution for damages. Those claims therefore fail as a matter of law. Furthermore, Plaintiffs do not respond to Defendants' separate argument that they have failed to plausibly plead a claim under Article 2, Section 6. Their failure to address that independent basis for dismissal constitutes a forfeiture of that claim. *See Green*, 2020 WL 2512759, at *4. Accordingly, Plaintiffs' state law claims are subject to dismissal.

---

[6] Plaintiffs are correct that the Board cannot adjudicate an unconstitutional vagueness or overbreadth challenge. [Doc. 61, p. 6] But that point is immaterial. Plaintiffs have asserted those claims in this action, and they are legally deficient as pled.

## CONCLUSION

For the reasons set forth in Defendants' Motion and above, Plaintiffs' claims are legally deficient. Accordingly, Defendants respectfully request that the Court grant their Motion and dismiss the Amended Complaint with prejudice.

RESPECTFULLY SUBMITTED this 20th day of July, 2026.

**PIERCE COLEMAN PLLC**

By /s/ Stephen B. Coleman
Justin S. Pierce
Stephen B. Coleman
Alexandra N. Cayton
17851 North 85th Street, Suite 175
Scottsdale, Arizona 85255
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2026, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and caused a copy to be electronically transmitted via email and mailed to:

Steven J. Serbalik
steveserbalik@gmail.com
*Attorney for Plaintiffs*

By: /s/ Mary Walker